**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JOSEPH MARINO | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 02-cv-4488 |
| KENT LINE INTERNATIONAL d/b/a | : | |
| VOYAGEUR SHIPPING LTD. | : | |
| and | : | |
| SLS, INC. d/b/a HOLT OVERSIGHT AND | : | |
| LOGISTICAL TECHNOLOGIES | : | |
| and | : | |
| INCHCAPE SHIPPING | : | |

## <u>ORDER</u>

AND NOW, this          day of            , 2003, upon consideration of the Motion for

Summary Judgment filed by defendant Inchcape Shipping and any response thereto, it is hereby

ORDERED that the Motion is GRANTED and Summary Judgment is hereby ENTERED in

favor of defendant Inchcape Shipping.

BY THE COURT:

_____
                                                                        J.

861449 v.1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

JOSEPH MARINO                                  :
                                               :     CIVIL ACTION
              v.                               :
                                               :     NO. 02-cv-4488
KENT LINE INTERNATIONAL d/b/a                  :
VOYAGEUR SHIPPING LTD.                         :
              and                              :
SLS, INC. d/b/a HOLT OVERSIGHT AND             :
LOGISTICAL TECHNOLOGIES                        :
              and                              :
INCHCAPE SHIPPING                              :


**<u>DEFENDANT INCHCAPE SHIPPING'S MOTION FOR SUMMARY JUDGMENT</u>**

      Pursuant to Fed.R.Civ.P. 56(b), defendant Inchcape Shipping ("Inchcape"), by its

attorneys, Rawle & Henderson, LLP, hereby move this Court to enter summary judgment in its

favor and, in support thereof, avers as follows:

      1.      Plaintiff is a longshoreman who was allegedly injured on June 23, 2000, while

working aboard the M/V KENT VOYAGEUR, a vessel owned by defendant Kent Line

International d/b/a/ Voyageur Shipping Ltd. ("Kent Line")  See Complaint attached as Exhibit

"A."  See also deposition of Joseph Marino, attached in relevant part as Exhibit "B", pages 15-

20.

      2.      Inchcape is the shoreside agent or ship's husbanding agent employed to manage

the shoreside business of Kent Line vessels while they are in the Port of Philadelphia.  The

861449 v.1

possession of the vessel and its management and operation remain with Kent Line through its direct employees and agents, the master and the crew.  Inchcape was acting under a standard form of general agency service agreement and was not an operating agent or owner pro hac vice of the KENT VOYAGEUR.  Additionally, Inchcape was at all times acting as agent for a disclosed principal.  See deposition of Capt. Crouse attached in relevant part as Exhibit "D," p. 195, 1. 2-5.

3.    Under these circumstances the general agent does not owe a duty of care to third persons with respect to the management and operation of the KENT VOYAGEUR by the master and crew of the vessel assigned to it by Kent Line. See Palardy v. American Hawaiian S.S. Co., 169 F.2d 619 (3rd Cir. 1948).

4.    Although the plaintiff's employer, the stevedore, was primarily responsible for the safety of the longshoremen, plaintiff filed this Complaint not only against the owners of the vessel, but against the owners' local agent, seeking to recover damages that are covered under the Longshore and Harborworkers' Compensation Act, 33 U.S.C. § 905(b).

5.    On the date in question, the M/V KENT VOYAGEUR was docked at the Trans Ocean Marine Terminal, in Gloucester City, New Jersey.  See Exhibit "B", p. 16, 1. 22.

6.    The vessel arrived in the port of Philadelphia with a cargo of steel products to be discharged by the longshore workers.  Id. at p. 20, 1. 7-10.

7.    Plaintiff was one of five workers hired to work in the gang to discharge the steel cargo.  See Exhibit "B", p. 16, 1. 20 – p. 17, 1.2.

2

8.     Plaintiff was an experienced longshore worker, having worked three years in this capacity on the waterfront. *Id.* at p. 16, 1. 13-16.

9.     Plaintiff and the other longshoremen started work aboard the M/V KENT VOYAGEUR on Thursday June 22, 2000. *See* Transocean Maritime Services, Inc. timesheets attached as Exhibit "C."

10.    Plaintiff was in a hold of the vessel in the midst of discharging the cargo, when he allegedly suffered an injury. See Exhibit "B" at p. 20, 1. 7-17.

11.    Inchcape Shipping served as the husbanding agent for the owner of the vessel while she was in the port of Philadelphia. See deposition of Capt. Crouse attached in relevant part as Exhibit "D," p. 195, 1. 2-5.

12.    Inchcape was at all times acting as an agent on behalf of a disclosed principal. *id.*; *see* also deposition of Inchcape boarding agent Shawn Allison attached in relevant parts as Exhibit "E," p. 13, 1. 22-24 to p. 14, p. 53, 1. 1-18, p. 63, 1. 11-21.  Therefore, Inchcape can not be held liable for any breach of duty by the vessel owners.  If Inchcape is not found to be an agent on behalf of a disclosed principal there is no evidence that any standard of care was breached by Inchcape.

13.    Plaintiff's action against Kent Line is governed by the standard of negligence which has evolved pursuant to judicial interpretation of § 5(b) of the 1972 Amendments to the LHWCA, 33 U.S.C. § 905(b).

14.    Congress enacted the 1972 Amendments to eliminate the shipowner's previous faultless liability to longshoremen based upon theories of unseaworthiness or a non-delegable

3

861449 v.1

duty to provide a safe place to work.  An agent of a vessel does not have a duty to provide a seaworthy vessel.  Plaintiff's employer, the stevedore, was responsible for providing plaintiff with a safe place to work.

15.     The specific duties of a vessel owner include the following: (1) the turnover duty", which includes a corollary "duty to warn;" (2) the "active participation duty"; and (3) the "intervention duty."  See Howlett v. Birkdale Shipping Co., S.A., 114 S.Ct. 2057, 2063, 512 U.S. 92, 98-99 (1994); Kirsch v. Plovidba, 971 F.2d 1026 (3d Cir. 1992); Derr v. Kawasaki Kisen K.K., 835 F.2d 490, 495-497 (3d Cir. 1987), cert. denied, 108 S.Ct. 1733, 486 U.S. 1007 (1988).

16.     The "turnover duty" and "duty to warn" govern a shipowner's conduct before cargo operations have begun.  See Howlett, 114 S. Ct. at 2063, 512 U.S. at 98; see also Kirsch, 971 F.2d at 1029.

17.     Under the "turnover duty," before turning over the ship or any portion of the ship to the stevedore, a vessel owner has a duty to exercise "ordinary care under the circumstances to have the ship and its equipment in such condition that an expert and experienced stevedore will be able by the exercise of reasonable care to carry on its cargo operations with reasonable safety."  Scindia Steam Navigation, Ltd. v. De Los Santos, 101 S.Ct. 1614, 1622, 451 U.S. 156, 167 (1981).

18.     The corollary "duty to warn" requires a vessel owner to warn the stevedore about "hidden dangers" on the vessel of which the shipowner has actual knowledge before the vessel is turned over to the stevedore.  See Derr, 835 F.2d at 493; Howlett, 512 U.S. at 98-99.

4

861449 v.1

19.     Under the "active participation duty," a vessel owner may be held liable if it fails to "exercise reasonable care to prevent injuries to longshoremen in areas that remain under the 'active control of the vessel.'"  Howlett, 114 S. Ct. at 2063, 512 U.S. at 98-99, quoting, Scindia, 101 S. Ct. at 1622, 451 U.S. at 167; See also Davis v. Portline Transportes Maritime, 16 F.3d 532 (3d Cir. 1994).

20.     Finally, a vessel owner may have a "duty to intervene" in the cargo operations of an independent stevedoring contractor if it has actual knowledge of a hazard and actual knowledge that it cannot rely upon the stevedore to avoid or eliminate the hazard.  See Scindia, 101 S.Ct. at 1626, 451 U.S. at 175-176; Derr, 835 F.2d at 496.

21.     There is no evidence that Inchcape was delegated any of the above duties or that it breached any of the above duties; if this Court determines that Inchcape did have a duty, it is plaintiff's burden to set forth disputed issues of material fact which establish that the vessel owner duties were delegated to it and that a breach of the duty occurred.  Plaintiff can not meet this burden.

WHEREFORE, defendant Inchcape Shipping requests that this Court enter summary judgment in its favor and that plaintiff's Complaint be dismissed as to it.

RAWLE & HENDERSON LLP


By:_____
          Ann-Michele G. Higgins, Esquire
          The Widener Bldg., 16th Floor
          One S. Penn Square
          Philadelphia, PA 19107

5

(215) 575-4200
Attorney for Defendant,
Inchcape Shipping

DATED:  August 25, 2003

861449 v.1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOSEPH MARINO                         :
                                      :    CIVIL ACTION
        v.                            :
                                      :    NO. 02-cv-4488
KENT LINE INTERNATIONAL d/b/a         :
VOYAGEUR SHIPPING LTD.                :
        and                           :
SLS, INC. d/b/a HOLT OVERSIGHT AND    :
LOGISTICAL TECHNOLOGIES               :
        and                           :
INCHCAPE SHIPPING                     :

**DEFENDANT INCHCAPE SHIPPING'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

## I.    SUMMARY JUDGMENT STANDARD

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file ... show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed R. Civ. P. 56(c). Applying this rule, the Supreme Court delineated the standard applicable to motions for summary judgment in what has been termed "its summary judgment trilogy." Celotex Corp. v. Catrett, 106 S. Ct. 2548, 477 U.S. 317 (1986); Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 477 U.S. 242 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Co., 106 S. Ct. 1348, 475 U.S. 574 (1986). In Celotex, the Court said:

> In our view, the plain language of Rule 56(c) <u>mandates</u> the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

106 S. Ct. at 2553, 477 U.S. at 322-23  (emphasis added).  This language was rephrased in

<u>Liberty Lobby</u> when the Court stated "[the summary judgment] standard mirrors the standard for

a directed verdict . . . which is that the trial judge <u>must</u> direct a verdict if under the governing

law, there can be but one reasonable conclusion as to the verdict."  106 S. Ct. at 2511, 477 U.S.

at 243.

The mandatory language of these decisions expresses the Supreme Court's

viewpoint that summary judgment is <u>not</u> a harsh sanction to be avoided.  In fact, the Supreme

Court stated the "summary judgment procedure is properly regarded not as a disfavored

procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are

designed 'to secure the just, speedy and inexpensive determination of every action.'"  <u>Celotex</u>,

106 S. Ct. at 2555, 477 U.S. at 325 <u>quoting</u> Fed. R. Civ. P. 11.  "One of the principle purposes of

the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses,

and we think it should be interpreted in a way to accomplish this purpose."  <u>Id.</u> at 2553, 477 U.S.

at 323.  Consequently, "a party resisting a motion for summary judgment must come forward

with more than speculation in order to raise a material issue of fact."  <u>Keystone Data Systems,</u>

<u>Inc. v. James F. Wild, Inc.</u>, 549 F. Supp. 790, 792 (E.D. Pa. 1982); <u>see also</u> <u>Gans v. Mundy</u>, 762

2

F.2d 338, 343 (3d Cir. 1985), cert. denied 106 S. Ct. 537, 474 U.S. 1010 (1985); Zimmer Paper

Products, Inc. v. Berger & Montague, P.C., 758 F.2d 86, 94 (3d Cir. 1985), cert. denied, 106 S.

Ct. 228, 474 U.S. 902 (1985).  "Therefore, while the moving party bears the initial burden of

informing the court of the basis for its motion, and identifying those portions of the record which

demonstrate the absence of a genuine issue of material fact, Rule 56(c) requires the entry of

summary judgment 'against a party who fails to make a showing sufficient to establish the

existence of an element essential to that party's case, and on which that party will bear the

burden of proof at trial.'"  Davis v. Kambara Kisen Co. Ltd., 1990 A.M.C. 2825, 2826 (E.D. Pa.

1990), quoting Celotex, 106 S.Ct. at 2553, 477 U.S. 317.

        In this case, plaintiff bears the burden of establishing that Inchcape had a duty of

care toward plaintiff.  If this court does determine that Inchcape had a duty of care, it should be

plaintiff's burden to prove that Inchcape breached a duty of care under §905(b) of the LHWCA,

33 U.S.C. §905(b).  However, as discussed below, plaintiff cannot carry this burden.

A.    **THE VARIOUS DUTIES AT ISSUE**

1.    **A shoreside agent does not owe a duty to longshoremen**

        Inchcape is the shoreside local agent or ship's husband employed to manage the

shoreside business of Kent Line vessels while they are in the Port of Philadelphia.  The

possession of the vessel and its management and operation remain with Kent Line through its

direct employee and agent, the master.  Inchcape was acting under a standard form of general

agency service agreement and was not an operating agent or owner pro hac vice of the KENT

VOYAGEUR.  See deposition of Capt. Crouse attached in relevant part as Exhibit "D," p. 195,

3

861449 v.1

1. 2-5.  Under these circumstances the general agent, Inchcape, does not owe a duty of care to third persons with respect to the management and operation of the KENT VOYAGEUR by the master and crew of the vessel assigned to it by Kent Line. See Palardy v. American Hawaiian S.S. Co., 169 F.2d 619 (3rd Cir. 1948).  In Palardy, the trial judge directed a verdict for the defendant holding that a general agent for a vessel owner is not an operating agent or owner pro hac vice of the vessel and does not owe a duty of care to third persons with respect to the management and operation by the master and crew.  The Third Circuit Court of Appeals in reviewing the case explained the relationship of the agent as follows:

> As we have had occasion to point out in two other cases decided this day, *Aird v. Weyerhaeuser Steamship Company*, 169 F.2d 606, and *Gaynor v. Agwilines, Inc.*, 169 F.2d 612, a general agent for the United States, such as American-Hawaiian Steamship Company, acting under the standard form of general agency service agreement in use during the period in question is not an operating agent or owner pro hac vice of the vessel assigned to it but rather is a shoreside agent or ship's husband employed to manage the business of the vessel.

Based on the type of relationship the Third Circuit Court of Appeals upheld the directed verdict and held "[u]nder these circumstances the general agent does not owe a duty of care to third persons with respect to the management and operation by the Master and crew of the vessel assigned to it by the government.  Id. at 620 citing Caldaroki v. Eckert, 1947, 332, U.S. 155, 159, 67 S.Ct. 1569, 91 L.Ed. 1968.  Here the same type of agency relationship is in place.  Inchcape is a husbanding agent and there is no evidence that it is an operating agent or owner pro hac vice. Therefore, Inchcape owed no duty of care toward third parties aboard the vessel. The Supreme Court has held that a vessel owner does not have a duty to supervise or inspect the cargo

4

operations of an independent stevedore and, generally, a vessel owner cannot be held liable for

hazards that arise during the course of the cargo operations, although the Court did leave open

the possibility that a vessel owner may have a "duty to intervene" under very limited

circumstances.  See Carpenter v. Universal Star Shipping S.A., 924 F.2d 1539 (9th Cir. 1991),

cert. denied, 506 U.S. 955 (1992) (no duty to intervene unless the hazard involves the ship's

gear).  If the vessel owner has such limited duties, and it is actually managing the vessel, if the

vessel's agent owed any duty of care it would be an even lesser standard than that of a vessel

owner.  Based on the facts developed to date, plaintiff could never prove that Inchcape breached

such a limited duty.

### 2.    The Longshore and Harbor Worker's Compensation Act

Plaintiff's action against the defendants is governed by the standard of negligence

that has evolved pursuant to judicial interpretation of §5(b) of the 1972 Amendments to the

LHWCA, 33 U.S.C. §905(b).  The history and purpose of the 1972 Amendments has been

detailed by the United States Supreme Court in Scindia Steam Navigation, Ltd. v. De Los

Santos, 101 S. Ct. 1614, 451 U.S. 156 (1981) and more recently in Howlett v. Birkdale Shipping

Co., S.A., 114 S.Ct. 2057, 512 U.S. 92 (1994).  Briefly summarized, Congress enacted the 1972

Amendments to eliminate the shipowner's previous faultless liability to longshoremen based

upon theories of unseaworthiness or a non-delegable duty to provide a safe place to work.

"Congress believed that it was fairer, and fully consistent with the goal of promoting safety, for

the vessel's liability 'to be predicated on negligence, rather than the no-fault concept of

5

seaworthiness.'" <u>Derr v. Kawasaki Kisen K.K.</u>, 835 F.2d 490, 492 (3d Cir. 1987), <u>cert</u>. <u>denied</u>, 108 S. Ct. 1733, 486 U.S. 1007 (1988), <u>quoting</u> H.R. Rep. No. 1441, 2d Cong. 2d Sass. (1972), reprinted in 1972 U.S. Code Cong. & Admin. News 4698, 4703.  "The design of these changes was to shift more of the responsibility for compensating injured longshoremen to the party best able to prevent injuries:  the stevedore-employer.  Subjecting vessels to suit for injuries that could be anticipated and prevented by a competent stevedore would threaten to upset the balance Congress was careful to strike in enacting the 1972 Amendments."  <u>Howlett</u>, 512 U.S. at 97 (citations omitted).

    Although Congress made it clear that shipowners shall only be held liable for their "own negligence," it did not specify the acts or omissions that would constitute negligence. Instead, Congress left that issue to "be resolved through the application of accepted principles of tort law and the ordinary process of litigation -  just as they are in cases involving alleged negligence by land based third parties."  <u>Id.</u>

    After the 1972 Amendments became law, the lower federal courts reached varying conclusions regarding the construction and application of § 905(b).  In <u>Scindia</u>, therefore, the United States Supreme Court defined the duties that a vessel owner owes to longshoremen who board a vessel to perform cargo operations. <u>Scindia Steam Navigation Co. v. De Loss Santos</u>, 451 U.S.156, 175-76 (1981).  In doing so, the Supreme Court drew a distinction between the duties owed before the vessel is turned over to the stevedore for cargo operations and the vessel owner's obligations after cargo operations have begun.  In addition, the Supreme

6

Court drew a clear distinction between hazards related to cargo work and hazards arising from

defects in the ship or its equipment.

The Supreme Court held that, before cargo operations begin, a vessel owner owes

to the stevedore and its longshoremen-employees a duty of "due care" to have the "ship and its

equipment" in a reasonably safe condition and a corollary "duty to warn" about hidden hazards

that would not be obvious to or anticipated by a reasonably competent stevedore:

> This duty extends at least to exercising ordinary care under the
> circumstances to have the ship and its equipment in such condition
> that an expert and experienced stevedore will be able by the
> exercise of reasonable care to carry on its cargo operations with
> reasonable safety to persons and property, and to warning the
> stevedore of any hazards on the ship or with respect to its
> equipment that are known to the vessel or should be known to it in
> the exercise of reasonable care, that would likely be encountered
> by the stevedore in the course of his cargo operations and that are
> not known by the stevedore and would not be obvious to or
> anticipated by him if reasonably competent in the performance of
> his work.  The shipowner thus has a duty with respect to the
> condition of the ship's gear, equipment, tools, and work space to be
> used in the stevedoring operations; and if he fails at least to warn
> the stevedore of hidden danger which would have been known to
> him in the exercise of reasonable care, he has breached his duty
> and is liable if his negligence causes injury to a longshoreman.

Id. at 166-67 (citations omitted).  The duties established in this passage have been termed the

"turnover duty" and the "duty to warn."  As noted, they define the shipowner's conduct before

cargo operations have begun.

In Scindia, the Supreme Court also defined a vessel owner's duty of care after the

vessel has been turned over to the stevedore for cargo operations:

> We are of the view that absent contract provision, positive
> law, or custom to the contrary ... the shipowner has no general duty

7

>by way of supervision or inspection to exercise reasonable care to discover dangerous conditions that develop within the confines of the cargo operations that are assigned to the stevedore. The necessary consequence is that the shipowner is not liable to the longshoremen for injuries caused by dangers unknown to the owner and about which he had no duty to inform himself. This conclusion is plainly consistent with the congressional intent to foreclose the faultless liability of the shipowner based on a theory of unseaworthiness or nondelegable duty. The shipowner, within limits, *is* entitled to rely on the stevedore, and owes no duty to the longshoremen to inspect or supervise the cargo operations.
>
> . . . .
>
>Yet it is quite possible, it seems to us, that Seattle's judgment in this respect was so obviously improvident that Scindia, if it knew of the defect and that Seattle was continuing to use it, should have realized the winch presented an unreasonable risk of harm to the longshoremen, and that in such circumstances it had a duty to intervene and repair the ship's winch. The same would be true if the defect existed from the outset and Scindia must be deemed to have been aware of is condition.

Id. at 168-69, 172, 175-76. In Scindia, therefore, the Supreme Court held that a vessel owner does not have a duty to supervise or inspect the cargo operations of an independent stevedore and, generally, a vessel owner cannot be held liable for hazards that arise during the course of the cargo operations, although the Court did leave open the possibility that a vessel owner may have a "duty to intervene" under very limited circumstances. See Carpenter v. Universal Star Shipping S.A., 924 F.2d 1539 (9th Cir. 1991), cert. denied, 506 U.S. 955 (1992) (no duty to intervene unless the hazard involves the ship's gear). Finally, the Supreme Court stated that a "vessel may be liable if it actively involves itself in the cargo operations and negligently injures a longshoreman or if it fails to exercise due care to avoid exposing longshoremen to harm from hazards they may encounter in areas, or from equipment, under the active control of the vessel during the stevedoring operation." Id. at 167 (emphasis added).

8

Overall, four duties were recognized by the Supreme Court in the <u>Scindia</u> decision: (1) the "turnover duty" which includes a corollary "duty to warn," (2) the "duty to intervene" and (3) the "active participation duty." These duties were crafted based on an analysis of the roles played by the stevedore and the vessel owner, the expertise of each and the goal of promoting safety. In doing so, the Supreme Court drew a sharp distinction between hazards that fall within the scope of the stevedore's work and other types of hazards. Based on the above, it can be seen that the Supreme Court holds the stevedore employer primarily responsible for the longshoremen's safety. The vessel owner has very limited and specific duties. A husbanding agent such as Inchcape has no general duty, additionally, there is no evidence that Inchcape assumed any of the vessel duties. Therefore, summary judgment should be granted in Inchcape's favor.

## II.  <u>ARGUMENT</u>

In plaintiff's Complaint, longshoreman Marino claims injury while engaged in the discharge of the M/V KENT VOYAGEUR on June 23, 2000. He was not injured by any part of the vessel or in an area controlled by the vessel owner. Plaintiff instituted suit against (Kent Line International d/b/a Voyageur Shipping), owners of the M/V KENT VOYAGEUR, and Inchcape Shipping Services. In plaintiff's Complaint, he avers that Inchcape is a Steamship Agency for its principal, Kent Line. This allegation was admitted by the movant. In a count of negligence against Inchcape, plaintiff avers that Inchcape assumed the seaworthiness of the vessel, and that Inchcape was negligent or careless in that it failed to adequately oversee the removal of the cargo, and somehow breached a duty to warn stevedores [sic] of the dangerous nature of the cargo and so forth.

9

Inchcape was established that at no time did the owners delegate the seaworthiness of the vessel to Inchcape. Further, testimony from a representative of the discharging stevedore was established that at no time was Inchcape responsible or did it interfere with the discharge of the cargo from the vessel. Finally, Inchcape, through submission of its own testimony, was established that it had no duty and therefore was not negligent in failing to warn Mr. Marino of the duties attendant with his job description. Therefore, summary judgment is appropriate.

At plaintiff's deposition, plaintiff could testify only that he believed that Inchcape was responsible for somehow contracting with the cargo interests that would have loaded the cargo on board the vessel. Exhibit "B," p. 68, 1. 6-15. As a practical matter, the call of a vessel such as the M/V KENT VOYAGEUR into the port of Philadelphia is a regular occurrence. In this case, a cargo receiver wanted to obtain steel for its business. It therefore contracted with the shipper to make arrangements for the trade. This is evidenced by the bill of lading where the cargo interests are referred to as the shipper and the receiver. In this case, the shipper then made arrangements with the carrier, Kent Line as owner of the M/V KENT VOYAGEUR, to have the cargo shipped on board the vessel and to be carried from the load port to the port of discharge, the Port of Philadelphia at Gloucester, New Jersey. As vessel's owned by Kent Line which travel to many far and away places, it is not the practice for the owners to have an office in each port city. Rather, they procure the services of an agent to act on its behalf processing the paperwork and communicating with the Captain and assisting the Captain with any needs while the vessel is in the port of Philadelphia. In this case, Kent Lines appointed Inchcape Shipping to act as its local husbanding agent while the vessel was in the port of Philadelphia. In that regard, the Master would inform Inchcape when he expected his vessel to arrive. Inchcape would act as

10

a communicator, and passed information on to regulatory agencies, such as the U.S. Coast Guard and Customs, and also to the business entities that would be involved.  These entities would include the discharging stevedore, to advise when the ship would be available to commence discharge.  It might also assist with having groceries, or stores, delivered on board the vessel.  It is important to note that Inchcape would not determine what time discharge of the vessel would occur, but merely acts as a communicator and facilitator to make sure the parties have the appropriate information to conclude their business transaction.

When the vessel arrives in port, there are always regulatory agencies waiting to greet the Captain.  The agent attends on board at this stage, and assists the Master in any needs that might come up.  Thereafter, the agent may check in with the Master every day or so, or address more particular concerns if issues arise.  At no time during this period do the owners delegate or abrogate any of their responsibilities regarding the seaworthiness of the vessel to a husbanding agent.  Concurrently, the discharging stevedore would be interested only in that any representative on board the vessel stay out of the way of cargo operations, so as not to interfere or indeed be injured.  Such was the case here, and Inchcape performed only the services for which it was retained, namely to act as an agent for a disclosed principal to assist the vessel while in port.

Based on the above, it is clear that Inchcape did not owe any general duty of care to plaintiff.  Additionally, there is no evidence that Inchcape delegated any duty of care that it might have owed to plaintiff and Inchcape.  Finally, there is no evidence that any of the vessel owner duties were ever breached.

11

861449 v.1

RAWLE & HENDERSON LLP

By:_____
       Ann-Michele G. Higgins, Esquire
       The Widener Bldg., 16th Floor
       One S. Penn Square
       Philadelphia, PA 19107
       (215) 575-4200
       Attorney for Defendant,
       Inchcape Shipping

DATED:  August 25, 2003

12

861449 v.1

## CERTIFICATE OF SERVICE

I do hereby certify that a true and correct copy of defendant Inchcape Shipping's Motion for Summary Judgment, was sent via U.S. first class mail, postage pre-paid to the following counsel and/or parties of record:

Thomas More Holland, Esquire
Law Offices of Thomas More Holland
1522 Locust Street
Grace Hall
Philadelphia, PA 19102
**Attorney for Plaintiff**

A. Robert Degen, Esquire
Fox, Rothschild, O'Brien & Frankel
2000 Market Street, Tenth Floor
Philadelphia, PA 19103-3291

Faustino Mattioni, Esquire
Mattioni, Ltd.
399 Market Street, 2nd floor
Philadelphia, PA 19106-2138

RAWLE & HENDERSON LLP

By:_____
     Anne A. Cave

     The Widener Building
     One South Penn Square
     Philadelphia, PA  19107
     (2l5) 575-4200

DATED:   August 25, 2003

861449 v.1

## <u>CERTIFICATE OF SERVICE</u>

I do hereby certify that a true and correct copy of defendant Inchcape Shipping's Memorandum of Law, was sent via U.S. first class mail, postage pre-paid to the following counsel and/or parties of record:

Thomas More Holland, Esquire
Law Offices of Thomas More Holland
1522 Locust Street
Grace Hall
Philadelphia, PA 19102
**<u>Attorney for Plaintiff</u>**

A. Robert Degen, Esquire
Fox, Rothschild, O'Brien & Frankel
2000 Market Street, Tenth Floor
Philadelphia, PA 19103-3291

Faustino Mattioni, Esquire
Mattioni, Ltd.
399 Market Street, 2nd floor
Philadelphia, PA 19106-2138

RAWLE & HENDERSON LLP

By:_____
      Anne A. Cave

The Widener Building
One South Penn Square
Philadelphia, PA  19107
(2l5) 575-4200

DATED:  August 25, 2003

0743070.01

861449 v.1