**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JOSEPH MARINO | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| KENT LINE INTERNATIONAL, et al. | : | Civil Action No.  02-CV-4488 |
| | : | |
| Defendants. | : | |

**REPLY OF KENT LINE INTERNATIONAL AND VOYAGEUR**
**SHIPPING LIMITED IN OPPOSITION TO PLAINTIFF'S SUMMARY JUDGMENT**

The granting of Summary Judgment pursuant to Rule F.R.C.P. 56(c) is mandatory against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case and on which the party will burden of proof at trial.  Celotex v. Catrett 106 S.Ct. 2548, 2553 (1986) remanded 826 F.2d 33 (D.C. Cir. 1987) cert. denied 484 U.S. 1066 (1988).  Under Section 905(b) of the Longshoreman Harbor Worker's Compensation Act, an injured person covered by the Act may only bring an action against the vessel based upon negligence.  33 U.S.C. § 905(b).  Plaintiff's allegations of negligence against the vessel consist of three arguments:

1.    That the vessel listed and that a steel beam shifted and injured plaintiff;

2.    That the Master failed to adequate supervise the loading of the cargo; and

3.    That the crew failed to adequately inspect the cargo during the voyage and warned plaintiff of an unsafe condition in the stow.

The last two arguments, are completely foreclosed by the relevant case law.

A key element of negligence is the finding of a duty owed by the defendant to the plaintiff. <u>Stagl v. Delta Airlines, Inc.</u>, 117 F.3d 76, 79 (2d Cir. 1997). This element is routinely applied in maritime cases. <u>Petitt v. Celebrity Cruises, Inc.</u>, 153 F. Supp. 2d 240, 2001 WL 303810 at 10 (SDNY 2001). The cases subsequent to <u>Scindia, Ltd. v. Delos Santos</u>, 451 U.S. 156 (1981) have fleshed out the limits of the ship owners duty to longshoremen. The Third Circuit, in <u>Derr v. Kawasaki Kissen KK</u>, 835 F.2d 490 (3d Cir. 1987) <u>cert</u>. <u>denied</u> 486 U.S. 1007 (1988) has already held that "the ship owner has no duty to supervise or inspect <u>cargo loaded or unloaded</u> by stevedores therefore it may not be held liable for injuries arising out of the stevedores failure to perform his job property. <u>Id</u>. at 493 (emphasis added). Insofar as the ship owners duty to warn about the condition of the cargo is concerned, the Supreme Court in <u>Howlett v. Berkdale Shipping Co. SA</u>, 114 S.Ct. 2057 (1994) held that the vessel's turnover duty to warn of latent defects in the cargo area is a narrow one. It attaches only to latent hazards. That is, hazards that are not known to the stevedore and that would be neither obvious nor anticipated by a skilled stevedore in the competent performance of his work … furthermore, the duty encompasses only those hazards that are known to the vessel or should be known in the exercise of reasonable care. <u>Howlett</u>, 114 S.Ct. at 2067 <u>quoting</u> <u>Scindia</u>, 451 U.S. at 167. The court then held specifically, that "the exercise of reasonable care <u>does not require the shipowner … to inspect the completed stow</u>" id. (emphasis added) The report of plaintiff's expert, David Cole is replete with assertions that the Master and crew are responsible for the safe and proper loading of cargo onboard their vessel. That the Master is responsible for the sea worthiness of his vessel and the safety of those on board during the voyage, goes without saying. However, that is a duty to the vessel and to the crew. The Supreme Court has already spoken and indicated that there is no such duty with respect to a longshoreman such as plaintiff. Plaintiff argues that

Kent Lines' internal safety management documents create a separate duty on the part of the vessel and that this duty therefore runs to the benefit of longshoremen.  In <u>Derr v. Kawasaki KK</u>, 835 F.2d 490 (3d Cir. 1987), plaintiff elicited similar testimony from an expert regarding the role of the vessel's crew in loading and discharging of cargo.  The Court dismissed this argument stating:

> Even if it were true that a vessel customarily observed the loading of cargo, it is understandable in light of its potential liability for certain damaged cargo.  <u>See</u> <u>Tulane Note</u>, Supra 1433, we agree with the District Court that such observation cannot be used to reimpose the general duty to supervise a stevedore.  Nor can such observation be vaulted into the type of active involvement and control that would trigger the ship's liability.

Similarly, in several cases plaintiff's have pointed to charter party terms which require that the cargo be loaded under the Master's supervision and owner's responsibility.  In <u>Carpenter v. Universal Star Shipping</u>, 924 F.2d 1539 (9th Cir. 1991), the Ninth Circuit addressed this situation and held "such clauses or obligations, do not inure to the benefit of longshoremen.  <u>Id</u>. at 1545.  An exception may be a contract between the <u>vessel owner and stevedore</u> in which the vessel owner assumes additional duties.  <u>Scindia</u>, 451 U.S. at 176 n. 23, 101 S. Ct. 1626.  There is no such contract in evidence in the present case.

In <u>Celestine v. Lykes Brothers Steamship Co., Inc.</u>, 729 F.Supp. 691 (N.D.C. 1989).  The plaintiff urged that the turnover duty under <u>Scindia</u> was broadened by terms of a contract between the vessel owners and operators which to required cargo to be loaded, stowed and trimmed under the Master's Supervision a responsibility.  The Court in <u>Celestine</u> nevertheless held that there was no genuine issue of material fact raised by the existence of such a contract or custom.  <u>Id</u>. at 694.  In <u>La Martina v. Pan Ocean Shipping</u>, 85 F.Supp. 878 (Md. 1992) plaintiff argued the existence of a custom created a factual basis for taking the case outside of <u>Scindia</u>.  In that case, plaintiff was injured when he slipped on oil on the deck of an automobile carrier.

Plaintiff argued that crew members kept themselves apprised of the condition of the deck as discharged progressed and took steps to remedy slippery spots.  The Court declined to hold that such a custom would take the case outside of <u>Scindia</u> stating:

> The flaw with plaintiff's argument is their assumption a custom generated a duty to supervise or inspect somehow operates to transfer a duty to the ship owner to eradicate dangers reasonably known to or managed by the stevedore.

<u>Id</u>. at 880, 881.

Internal memoranda or directives from the owner to the crew regarding the safe loading of its ships do not run in favor of a stevedore and to hold otherwise would eviscerate <u>Scindia</u> and effectively roll back the clock to the time of <u>Seas Shipping Co. v. Sieracki</u>, 328 U.S. 85, 66 S.Ct. 872 (1946) which gave Longshoremen the benefit of a warranty of sea worthiness.

Plaintiff's remaining argument that the vessel is somehow negligent because it listed, possible during ballasting[1], presumably relates to the active operations duty.  Denial of Summary Judgment is proper only when plaintiff's can present evidence demonstrating the existence of negligence of the movant.  <u>Cannida v. Central Gulf Shipping Corp.</u>, 452 F.2d 949 (3d Cir. 1971); <u>Sanarelli v. BP America, et al.</u>, 913 F.Supp. 324 (M.D. Pa. 1996).  The party opposing a Motion for Summary Judgment must set forth <u>specific facts</u> showing a genuine issue for trial.  The non-movant may not rest upon <u>mere allegations</u> or denials in its pleadings.  <u>Sound Shipbuilding Corp. v. Bethlehem Steel Co.</u>, 533 F.2d 96 (3d Cir. 1996) <u>cert</u>. <u>denied</u> 429 U.S. 860, 50 L.Ed.2d 137, 97 S.Ct. 161 (1976).  The party opposing Motion for Summary Judgment must come forward with <u>evidence rather than mere speculation</u> in order to raise a material issue of fact.  <u>Gans v. Mundy</u>, 762 F.2d 338, 343 (3d Cir. 1985) <u>cert</u>. <u>denied</u> 474 U.S. 1010 (1985).  In the present case,

---

[1] Ballasting is the process of taking an heavy material, in this case water, low in the vessel to monitor proper stability.  <u>Blacks Law Dictionary</u> West Company (1968).

plaintiff has come forward with no facts or evidence that would be admissible in court to indicate any negligent activity on the part of the KENT VOYAGEUR.  The best that can be said is that plaintiff believes that the ship listed.  He has offered no evidence of any activities on the ship – negligent or otherwise- that may have caused the list.  Any "evidence" that plaintiff has is purely speculative hearsay that does not have any of the hallmarks of reliability.

Plaintiff admitted that he had no knowledge of the condition of the ballast on the ship at the time of the incident.  Exhibit A – Marino Deposition, page 27.  Similarly, Marino testified that he had gotten information from his bosses as to "why a ship would list like that."  Id. at 51.  Even so, he had no recollection specifically discussing the KENT VOYAGEUR with any of his bosses.  Id.

Plaintiff cites Miller v. Royal Netherlands Steamship Company, 508 F.2d 1103 (5th Cir. 1975) for the proposition that the cause of the list is something to be determined by the finder of fact.  However, in that case, there was **evidence** that the list was in fact caused by ballasting and moreover, **evidence** that the ballasting had been improperly conducted by the vessel.  This was supported by the expert opinion of a naval architect.  The court found (1) that employees of the vessel owner observed the list prior to the accident; (2) there was both insufficient and inaccurate data used by the Captain to calculate the ship's stability prior to the accident; (3) that the Captain failed to calculate the port-starboard distribution of cargo prior to the accident; (4) that improper sounding procedures were used to check the ballast (5) that there was excess of ballast on the vessel's starboard side and importantly, (6) that plaintiff's expert consulting engineer and Naval architect, based on the record of cargo and ballast distribution, supported plaintiff's contention that the vessel was negligently overloaded on the starboard side resulting in the list.

Despite being provided with the vessel's deck log, general arrangement plan, ballast operation record, ballast sounding book, the vessel's particulars, stability calculations for the voyage upon departure of Antwerp, departure New Haven and departure Philadelphia, Exhibit B – Crouse Exhibit 10, plaintiff has not cited any facts indicating fault on the part of the vessel in connection with the ballasting.  The report prepared by David Cole and attached to plaintiff's Response is silent as to any analysis of the ballasting operation or the stability of the vessel.  Any argument that the vessel improperly conducted ballasting operations is based purely on speculation, which cannot raise a material issue of fact.  Gans v. Mundy, supra.  On the contrary, the only evidence concerning the stability of the vessel, and the ballasting operation was provided by Captain Kevin Crouse who testified that ballasting was not an operation that would cause any sudden movement of the vessel.  Exhibit "C" – at page 180 – 181.  Moreover, Crouse testified that the vessel was in a stable condition as indicated by her stability records.  Exhibit "C" at page 178, 179.  Finally, Captain Crouse testified that cargo operations alone could account for a minor list of no more than $1.157°$ based on the assumption that all three cranes simultaneously swung over the side of the vessel each having a draft weight 16 tons.  Exhibit "C" at 188 – 190.[2]  The reference to "no shifting" by Captain Crouse means exactly the opposite as that taken by plaintiff.  The shifting referred to does not equate to listing but rather, indicates the absence of any transverse shift in ballast that might have caused the vessel to list.

Finally, plaintiff argues that there should be some adverse inference because of the failure to produce the Master and Chief Mate for deposition.  The Court has ordered that Kent Line will be precluded from introducing testimony of the Chief Mate and Master at trial if they were not

---

[2]  In his Brief in Opposition to Summary Judgment at page 8, the plaintiff appears to argue that Captain Crouse's testimony concerning ballasting at page 107:12-108-1 somehow relates to the vessel listing.  On the contrary, the shifting referred to involves the transverse movement of weight from one side of the vessel to the other.  See DeKerchov International Maritime Dictionary v. De Van Nostrand  Company, Inc. 1948.

produced for deposition.  Kent Line has advised the Court and as Captain Crouse has testified,
neither the former Master nor Chief Mate are any longer employed by Kent Line.  Captain
Crouse testified, that the former Master, Captain Ian Biggs, is a harbor pilot employed by
Atlantic Pilotage Authority in Canada.  Moreover, although requested by Kent Line to attend a
deposition, he refused to do so.  Exhibit C at page 60-62.

The Chief Mate, also is no longer employed by Kent Line.  Exhibit C at page 245.  While
we appreciate that Kent Line cannot offer the testimony of Captain Biggs or the Chief Mate at
time of trial because of the failure to provide them for deposition, nevertheless, they are no
longer employed by Kent Line and, are not within the control of Kent Line.  For this reason,
there should be no adverse inference drawn from the failure to produce them for deposition.
Since neither Captain Briggs nor the Chief Mate are employed by Defendants, there is no basis
to compel defendants to produce them for deposition.  Petty john v. Goodyear Tire and Rubber
Co. 1992 WL 168085 (E.D. Pa.).  There is accordingly no basis for the court to draw on adverse
inference from defendants' inability to make the former captain or Chief Mate available for
deposition.  In Governali v. American Tempering Inc., 1988 WL 3843 (E.D. Pa.)  the court
refused to instruct the jury on the "missing witness" rule that permits the jury to draw on adverse
inference for failure of a party to call a knowledgeable witness.  The court held that since the
witness was no longer employed by the defendant or under their control, there could be no
"missing witness" instruction.

## CONCLUSION

Plaintiff has argued that the vessel should have come forward with evidence that cargo
may have shifted during the voyage.  However, there is no evidence to contradict the fact that
stevedores through Captain Sammons and through James McLaughlin and George Ulmer, were

well aware of the condition of the cargo prior to discharge.  Captain Sammons specifically

observed cargo that was tripped or had shifted in stow before the discharge began.  There is

simply no additional evidence that could have been provided by the vessel to supplement this

information.  As stated by the Third Circuit in Derr v. Kawasaki Kissen KK, 835 F.2d 2190 (3d

Cir. 1987) cert. denied U.S. 45 (1988).  There is "no warning that the ship [can give that would

add]" to the knowledge of a competent stevedore."  Derr at 835.  With respect to the issue of

ballast, plaintiff has been provided with documents from which it could be determined the state

of the ballasting on the vessel during her stay in Philadelphia.  Plaintiff was provided with

stability calculations, cargo stowage plan, stevedore's working reports indicating the amount of

cargo discharged, ballast operation records, and ballast sounding books, all of which indicate the

condition of the cargo and ballast on board the vessel.  Plaintiff has offered no evidence that

there was anything improper in the ballasting of the vessel or the stability of the vessel.  Contrary

to Miller, there is no evidence that the vessel was listing prior to discharge or that there was any

imbalance on the weight of the vessel.  If this were a fact, it could have been derived from the

records.  The report of plaintiff's expert, David Cole is notably silent with respect to any opinion

concerning the ballasting or stability of the vessel.  The only evidence is plaintiff's testimony

that the vessel listed.  There is an absolute absence of any evidence as to the reason why the

vessel may have listed.  This is not a case of res ipsa loquitor given the testimony of Captain

Crouse that listing of the vessel could also have been caused by the discharging operation itself.

For these reasons, the Motion of Kent Line and Voyageur Shipping must be granted.

_____

A. Robert Degen, Esquire/I.D. No. 19336
FOX ROTHSCHILD LLP
2000 Market Street, Tenth Floor
Philadelphia, PA  19103-3291
(215) 299-2766

Attorneys for Defendant,
KENT LINE INTERNATIONAL, LTD.
VOYAGEUR SHIPPING LTD.


Dated:  September 2, 2003

## <u>CERTIFICATE OF SERVICE</u>

I, A. Robert Degen, Esquire, hereby certify that the foregoing was served on this _____ day

of September, 2003, via Hand Delivery, upon the following:

Thomas More Holland, Esquire
Law Offices of Thomas More Holland
Grace Hall
1522 Locust Street
Philadelphia, PA 19102

**Attorney for Plaintiff**
**Joseph Marino**

Anne Michelle Higgins, Esquire
Rawle & Henderson
Widener Building
1 South Penn Square
Philadelphia, PA 19107

**Attorney for Defendant**
**Inchcape Shipping**

Faustino Mattioni, Esquire
Mattioni, Ltd.
399 Market Street
2nd Floor
Philadelphia, PA 19106

**Attorney for SLS, Inc.**

_____
A. ROBERT DEGEN, ESQUIRE

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____
                                                        :
JOSEPH MARINO                                  :          CIVIL ACTION
                              Plaintiff,        :
            vi.                                          :
                                                        :
KENT LINE INTERNATIONAL, et al.       :          Civil Action No.  02-CV-4488
                                                        :
                          Defendants.           :
_____:


**ORDER**


        AND NOW, this ___ day of _____, 2003, upon consideration of Defendants

Kent Line International Ltd. and Voyageur Shipping Ltd.'s Reply of Kent Line International and

Voyageur Shipping Limited in Opposition to Plaintiff's Summary Judgment and any response

thereto by Plaintiff, it is hereby

        ORDERED and DECREED that said motion is **GRANTED**.

                              BY THE COURT:


                              _____
                                                                                                J