IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSEPH MARINO | : | CIVIL ACTION |
| Plaintiff | : | NO. 02-4488 |
| v. | : | |
| SLS, INC. d/b/a HOLT OVERSIGHT AND LOGISTICAL TECHNOLOGIES, ET AL. | : | |
| Defendants | : | |

**REPLY OF DEFENDANTS SLS, INC. d/b/a HOLT OVERSIGHT AND LOGISTICAL TECHNOLOGIES AND TRANS OCEAN MARITIME SERVICES, INC. TO PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

Defendants SLS, Inc. d/b/a Holt Oversight and Logistical Technologies and Trans Ocean Maritime Services, Inc. address Plaintiff's Brief in Opposition to their Motion for Summary Judgment *in seriatim*:

**DEFENDANT TRANS OCEAN**

Plaintiff asserts that the issue of whether Trans Ocean, Plaintiff's employer, may be exempted from the exclusivity provision of the L.H.W.C.A. is dictated by both Federal Admiralty Law and New Jersey State Law under the New Jersey Workers' Compensation Act, N.J. Stat. 34:15-1, *et. seq.*[1] As such, Plaintiff argues that the holding in <u>Laidlow v. Hariton Machinery Company, Inc., et</u>

---

[1] Plaintiff cites the "saving to suitors" clause, 28 U.S.C. sect. 1333(1), which provides federal admiralty and maritime jurisdiction to the federal courts but reserves plaintiffs' "remedies to which they are otherwise entitled" as support for his argument of concurrent jurisdiction (See Plaintiff's brief, p. 10, n. 3). As early as 1918 the U.S. Supreme Court held that this clause does not mean that defendant's liability should be measured by state common law instead of federal maritime law standards, but that courts are bound to apply federal admiralty law where admiralty law controls (*i.e.*, where the injury occurs on navigable waters and has a relationship to traditional

al., 170 N.J. 602, 790 A.2d. 884 (S.Ct. N.J. 2002), ap. dis., 171 N.J. 334, 793 A.2d 714 (2002), controls.  Plaintiff's position is misplaced.

While concurrent jurisdiction with the State of New Jersey may apply in a situation where there is an overlap with state remedies (Sunship, Inc. v. Pennsylvania, 447 U.S. 715, 720, 65 L.Ed. 2d 458, 100 S.Ct. 2432 (1980)), that situation does not exist in this case.  In 1994, the definition of "employee" in §34:15-36 of the New Jersey Workers' Compensation Act was amended to eliminate from coverage employees, such as Plaintiff, eligible under the L.H.W.C.A.  As stated by the New Jersey Court of Appeals in Street v. Universal Maritime, et al., 300 N.J. Super 578, 693 A.2d. 535 (1977):

> Prior to adoption of the Amendment, there was concurrent jurisdiction under the Federal and State Act requiring compensation of maritime workers for job related injuries.  See Sunship, Inc. v. Pennsylvania, 447 U.S. 715, 100 Supreme Court 2432, 65 L.Ed.2d. 458 (1988).  As a result of the Amendment, a New Jersey maritime employee is limited to seeking compensation under the Federal Act.

300 N.J. Super. 578, at 580.

Thus, inasmuch as the Laidlow case may alter the federal law on point, it has no application.  On the other hand, even assuming that it did apply, it would do nothing to ameliorate both the

---

maritime activity).  Executive Jet Aviation, Inc. v. City of Cleveland, 409 U.S. 249 (1973)): Chelentis v. Luckenbach S.S. Co., 247 U.S. 372, 38 S.Ct. 501 (1918); Southern Pacific Ry. Co. v. Jensen, 244 U.S. 205 (1917).  Thus, all courts will apply their own procedural rules, but if the matter is otherwise cognizable by Admiralty, the state court (or federal court even if only diversity jurisdiction has been asserted) *must apply the federal maritime substantive law,* whether or not admiralty jurisdiction has been asserted.  Jensen, *supra*.  See also: Carlisle Packing Co. v. Sandanger, 259 U.S. 255 (1922); Preston v. Frantz, 11 F. 3d 357 (2nd Cir. 1994); Carey v. Bahama Cruise Lines, 864 F.2d 201 (1st Cir. 1988); Hodes v. S.N.C. Achille Lauro, 858 F.2d 905, 1988 A.M.C. 2829 (3rd Cir. 1988), cert. den. 490 U.S. 1001; Scudero v. Todd Shipyards Corp., 385 P.2d 551, 1964 A.M.C. 403 (1963); Van Deursen v. Dunlap Towing Co., 562 P.2d 666, 1977 A.M.C. 870 (1977); Finn Gjertsen v. Mawson & Mason, Inc., 1988 A.M.C. 1384, 522 N.Y.S. 2d 891 (N.Y.C.Ct. Appell. Div. 1988) (L.H.W.C.A. action).

procedural and substantive deficiencies of Plaintiff's claim. Plaintiff's count against Trans Ocean is that it committed "gross negligence" and, as such, that this abrogates the immunity provision L.H.W.C.A. §905(b) thereby allowing him to sue his employer directly. Laidlow reiterates the same requirement as that in the federal case law, that one must plead an "intentional tort."[2] Plaintiff has not done that. Further, Plaintiff has done nothing by way of response to Defendant's Motion and supporting exhibits to demonstrate any factual basis whatsoever which would support a claim that Trans Ocean intentionally acted to harm him.

### BORROWED SERVANT DOCTRINE AND STATUS OF DEFENDANT JOSEPH LEVY'S EMPLOYMENT WITH HOLT

Although acknowledging the application of federal admiralty law in his argument with regard to Trans Ocean, Plaintiff next switches position and asserts that with regard to the borrowed servant doctrine, *only* state, not federal, law applies. This position is incorrect. Federal maritime rather than state law applies, since the situs of the injury was on a ship on navigable waters and the alleged negligence bears a significant relation to maritime activity. See cases cited, n. 1, p. 1-2 of this brief; see also: Jones & Lauglin Steel Corp. v Pfeifer, 462 U.S. 523, 547, 1983 A.M.C. 1881, 1900, 76

---

[2] See 790 A.2d at 887, citing N.J.S.A. 34:15: 8 requiring the commission of an "intentional tort" in order to circumvent the employer immunity to suit provided under the Act. The Laidlow Court merely modified what is required to prove an intentional tort for purposes of the New Jersey Workers Compensation statute. It should also be pointed out that the Laidlow case involved facts which clearly pointed to intentional, wrongful conduct on the part of the Defendant employer: over a twelve year period, disconnecting a safety device which if in operation would have prevented Plaintiff's hand from being caught in a rolling mill; only engaging the device when OSHA inspectors came to the plant; a number of "close calls" prior to Plaintiff's serious injury; no response to Plaintiff's multiple requests to his supervisor to activate the guard; and, the employers' admission that it removed the guard for "speed and convenience." *Id.*, at pp.887-889. The Court concluded that these facts, and "...the guilty knowledge of AMI as revealed by its deliberate and systematic deception of OSHA [demonstrate] that AMI knew that it was substantially certain that the removal of the safety guard would result eventually in injury to one of its employees." *Id.*, 897-898.

L.Ed.2d 768, 103 S.Ct. 2541 (1983); <u>Webster v. M/V MOOLCHAND</u>, 1986 A.M.C. 2854, 286-61,730 F.2d 1035 (5th Cir. 1984); <u>Helaire v.Mobile Oil Co.</u>, 1984 A.M.C. 820, 837, 709 F. 2d 1031 (5th Cir. 1983); <u>Finn Gjertsen v. Mawson & Mawson, Inc.</u>, 1988 A.M.C. 1384, 522 N.Y.S.2d 891 (N.Y. S.Ct., Appell. Div. 1988).

Likewise, the case law is uncontradicted that when a Court is faced with determining the extent of coverage under a federal statute such as the L.H.W.C.A., federal law applies. <u>Griffith v. Wheeling-Pittsburgh Steel Corp.</u>, 1980 A.M.C. 833, 610 F.2d 116 (3rd Cir. 1979); <u>Hurst v. Triad Shipping Co.</u>, 554 F.2d 1237 (3rd Cir. 1977), cert. den., 434 U.S. 861, 98 S.Ct. 188, 54 L.Ed. 2d 134 (1977); <u>Rex v. CIA. Pervana de Vapores, S.A.</u>, 493 F.Supp. 459 (E.D. Pa. 1980, rev'd and rem. on other grds., 660 F.2d 61 (3rd Cir. 1981). This includes, specifically, the determination of borrowed servant status in a L.H.W.C.A. tort action. <u>Gaudet v. Exxon Corp.</u>, 1978 A.M.C. 591, 597, 562 F.2d 351, 357 (5th Cir. 197), cert. den., 436 U.S. 913, 1978 A.M.C. 1895 (1978); <u>Canty, et al. v. A. Bottacchi, et al.</u>, 1994 A.M.C. 2152, 2155-56, (S.D. Fl. 1994).

Under the Federal Law cited in Defendants' Memorandum of Law in Support of their Motion for Summary Judgment, it is clear that Mr. Levy was a borrowed servant of Trans Ocean at the time of the incident. Plaintiff has done nothing by way of argument or by way of exhibits to his Response to contradict these undisputed facts and law. What is more, the New Jersey law cited by Plaintiff effectively mirrors the applicable federal law in its focus on whether the borrowing employer was responsible for the borrowed employees working conditions, and whether the employment was of such a duration that the borrowed employee could be assumed to

have acquiesced in the risks of the new employment.[3]

Finally, Plaintiff simply asserts, again with no factual or legal foundation, that "the same argument would pertain to Defendant Maureen Levy" and that he did not depose Maureen Levy because of Holt's "failure to provide" her address (Plaintiff's brief, p. 14). As stated in Joseph and Maureen Levys' Response to Plaintiff's Motion for Entry of Default Judgment, the facts are undisputed that Maureen Levy has nothing to do with this litigation. She was never assigned to Trans Ocean. She had nothing to do with discharge activities. Her duties were in the environmental/regulatory area. All these things were testified to by her father, Joseph. Furthermore, her addressed and telephone number were accessible through directory assistance, the white pages, and the internet. See Ex. "B" to Levys' Response to Plaintiff's Motion for Entry of Default Judgment.

**LIABILITY OF HOLT**

Plaintiff does nothing to address Defendants' Motion, Memorandum, and Exhibits, which point to uncontradicted facts on the record demonstrating that Holt committed no acts of

---

[3] Plaintiff served a Supplemental brief in Opposition on September 10, referencing Joseph Levy's deposition transcript and pointing out what Defendants have previously brought to the attention of the Court in their Memorandum, that Mr. Levy was paid by Holt (see Defendants' Memorandum, p. 14). As stated in Defendants' Memorandum, this is the only factor of the 10 that the courts look to which militates against a finding that Mr. Levy is a borrowed servant of Trans Ocean. And, as further stated in Defendants' Memorandum, in light of the fact that Holt billed Trans Ocean for Mr. Levy's services, this factor actually supports a borrowed servant finding (p. 14, Defendants' Memorandum of Law). Likewise, Plaintiff incorrectly asserts that Mr. Levy's statement at p. 16 of his deposition that "I was not employed by Trans Ocean Maritime Services" constitutes a "party admission." To the contrary, this is simply a statement of fact which underlines his status as a borrowed servant of Trans Ocean. As stated in Defendants' Motion and Memorandum, Mr. Levy testified that although employed by Holt (which provided consulting services to Trans Ocean), he was assigned by Holt to Trans Ocean where he worked in the capacity of General Manager (Ex. "C" to Defendants Motion for Summary Judgment, Levy dep. pp.18-22).

negligence and that it is undisputed that there is no causal connection between anything Holt did or did not do and the Plaintiff's claimed injuries. Instead, Plaintiff in his brief in Opposition simply states:

> Defendant Holt is vicariously liable for the tortuous of its agents/employees: Joseph Levy and Maureen Levy (*sic*). This liability is also direct liability based upon Exhibits H, I & K.

Exhibit "H" is a copy of a memo from Dick W. Klompe of Kent Line to Joe Levy in his capacity as General Manager at Trans Ocean regarding the cargo and discharge itinerary of the voyage at issue. Plaintiff asserts, through Exhibit "I," the Affidavit of his liability expert David E. Cole dated September 5, 2003, that Mr. Klompe's statement in Ex. "H" that 16 of the CR coils stowed in the #1 forward have a weight in excess of the ship crane's capacity and should be unloaded using the shore crane, is demonstrative of Holt's negligence. Plaintiff's theory now appears to be that the vessel was stuck in the mud at the bottom of the river and when the unloading of the heavier steel coils from the #1 hold was accomplished through use of the shore crane, the release of this cargo caused a "heeling movement" of the ship as it came free of the muck. Specifically, Mr. Cole states:

> ...Mr. Crouse gave no consideration of the fact that the vessel may have been positioned on the river bottom during the off loading operations; and that consequently the vessel was freed from being stuck in the muck at the water's bottom after the unloading began when the unloading process changed from the dock cranes to the vessel cranes.
>
> In other words, the switching from the shore cranes to the vessel cranes which is documented in the record ship log 6/23/00; KL084 - caused what is known as heeling movement. Specifically this phrase heeling moment (*sic*) means that the vessel would list as the weight is moved outboard from the center line.

See Plaintiff's Ex. "H," Affidavit of David E. Cole, dated September 5, 2003, para. 11-12.

This new theory as to the vessel's purported listing, like Plaintiff's previous one,[4] is completely lacking of any supporting facts. It is classical speculation. It defies all evidence of record. There is not the slightest suggestion in the record that the ship was "stuck in the muck" on the river bottom. The vessel log, the general arrangement plan, the ballast records, the vessel's particulars, and the stability calculations all demonstrate that no listing or "heeling" of the vessel occurred as alleged by Plaintiff. Instead, Captain Crouse testified that the vessel was in stable condition, as indicated by the stability records, and that cargo operations alone could account for a list of no more that 1.157 degrees, based on the "worst case scenario" of all three ship's cranes being simultaneously swung over the side of the vessel, each having a draft weight of 16 tons (see Ex. "C" to Co-Defendant Kent Line's Reply brief, pp. 178-79, 188-190).[5]

Indeed, the positive evidence concretely shows that Plaintiff's new theory lacks all credibility. According to the Port Log for June 23, 2000, at 0645 the stevedores boarded the vessel, and at 0656 resumed discharge from the no. 1 hold with a shore crane, and no. 2 and 3 with the ship's crane. At 0740 they discontinued use of the shore crane in no. 1 and began using the ship's crane at no. 1 (Ex. "A" attached hereto, M/V KENT VOYAGEUR Cargo Operations Log (Port Log) entry for 6/23/03; Crouse dep., p. 188, Crouse Ex. 4, 19, Ex. "C" to Kent Line's

---

[4] Apparently Plaintiff is abandoning his previous theory, as testified to by him during deposition, that the ship listed as a result of the release of ballast during unloading. Not only is this theory devoid of any foundational facts, but Mr. Cole's affidavit is improper insofar as it constitutes the submission of a new expert report with new conclusions well beyond the cutoff date for submission of Plaintiff's expert reports.

[5] Note that Mr. Cole asserts at para. 10 of his Affidavit that Mr. Crouse "ignored facts of record" in his stability calculations, citing an email of 6/24/00 with David Reid concerning tidal conditions. This has no bearing on the issues of this case, since this concerned discharge at Novolog's facility in Fairless Hills, Pennsylvania, subsequent to the discharge at issue.

Reply brief). According to Plaintiff, his injury and the purported list occurred at approximately 8:30 a.m. (Ex. "D" to Defendants' Motion for Summary Judgment, p. 20). Plaintiff's theory that the movement in the ship occurred when the ship was "freed from being stuck in the muck at the water's bottom when the unloading process changed from the dock cranes to the vessel cranes" (Cole Affidavit, Plaintiff Ex."I," para. 11) is thus patently devoid of merit since the movement Plaintiff's speculates about could only have occurred nearly an hour before his injury.

Finally, even assuming that there was any credibility at all to Plaintiff's new theory, which there is not, Plaintiff fails to address how Holt would bear any direct liability, or "vicarious liability" through Mr. Levy's actions, since there is nothing on record which shows any causal nexus between any acts or omissions of Holt or Mr. Levy and the theoretical listing of the ship which allegedly lead to Plaintiff's injuries.

### RULE 11 SANCTIONS

Defendants' acknowledge that the Request for Rule 11 Sanctions should be submitted to Plaintiff by way of separate Motion, and as such withdraw that request from the instant motion, without prejudice.

### CONCLUSION

It is respectfully submitted that moving Defendants have met their burden of showing that no genuine issue of material fact exists as to their entitlement to summary judgment in this case, and that Plaintiff has not fulfilled his responsive duty by presenting actual evidence of such an issue which must

be resolved at trial. Instead Plaintiff cites inapplicable case law, and has either not responded at all, or relies on conclusory allegations which are contradicted by the evidence of record.

For the reasons set forth above and in Defendants' Motion, Memorandum of Law, and exhibits, Defendants request this Court grant their Motion for Summary Judgment and dismiss all claims against them, and award reasonable costs and attorneys fees.

Respectfully Submitted.

MATTIONI, LTD.

_____
Faust Mattioni, Esquire
Paul A. Kettunen, Esquire
399 Market Street, 2nd Floor
Philadelphia, PA 19106
(215) 629-1600

Dated: September 15, 2003