LAW OFFICES OF THOMAS MORE HOLLAND
BY: **THOMAS MORE HOLLAND**
IDENTIFICATION NO.:  43517
1522 LOCUST STREET
GRACE HALL
PHILADELPHIA, PA 19102
(215) 592-8080

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **JOSEPH MARINO** § <br>     **Plaintiff,** § <br>     v. § <br> § <br> **KENT LINE INTERNATIONAL** § <br> d/b/a  **VOYAGEUR SHIPPING LTD., et al.** § <br>     **Defendants.** § <br> § | **CIVIL ACTION NO: 02-CV-4488** |

***PLAINTIFF'S SUPPLEMENTAL ARGUMENT  III  IN OPPOSITION TO DEFENDANT KENT LINE'S  MOTION FOR SUMMARY JUDGMENT***

In 1972 Congress amended the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 900 *et seq*.  Congress preserved negligence claims against vessels and provided for recovery by injured stevedores "in accordance with the provisions of section 933 of this title." 33 U.S.C. § 905(b).  Section 905(b) "did not specify the acts or omissions of the vessel that would constitute negligence." Scindia Steam Navigation, Ltd. v. De los Santos, 451 U.S. 156, 165; 101 S.Ct. 1614, 1621 (1981).

In Scindia, the U.S. Supreme Court agreed and affirmed the Ninth Circuit Court of Appeal's reversal because "the District Court erred in granting summary judgment." Id. at 178-179.  The District Court thought there was no triable fact, whereas the Court of Appeals held there existed a triable fact as to whether the shipowner knew, or should have known, of the alleged conditions on

the vessel. Id. at 178. The Court of Appeals held there "were several material facts in the dispute that were for a jury to resolve." Id. at 164.

The triable facts in Scindia were whether the shipowner had a duty to intervene "where the danger to longshoremen arises from the malfunctioning of the ship's gear being used in the cargo operations." Id. at 175. In Scindia, the ship knew of the malfunctioning winch for two days prior to the accident; consequently, there was a ship's duty to warn the stevedore because the notice to the longshoremen enables them to make the decision to use, or not use, the defective winch. Id. It is for the stevedore to decide "in the first instance" whether to undertake the risk associated with an appurtenance in a state of disrepair. Id.

The ship's duty also includes "work space to be used in the stevedoring operations; and if [the shipowner] fails **at least** to warn the stevedore of the hidden danger which [is] known to him in the exercise of reasonable care, he has breached his duty and is liable if his negligence causes injury to a longshoreman." Id. at 167 (emphasis added). The vessel is liable for injuries to longshoremen, if the shipowner (a) knows, or should know, by the exercise of reasonable care that there is a risk to the longshoremen, and (b) the shipowner fails to exercise that reasonable care to protect the longshoremen. Id. at 163.

Defendant urges the Court to liberally apply Scindia to the Plaintiff's factually distinct cause of action. In Scindia, the scope of the stevedoring duties concerned the stowage of cargo, i.e., the loading or offloading of cargo and the use of the ship's appurtenances during those procedures. Id. at 159. Although Defendant Kent Line has mis-characterized Plaintiff's facts, nonetheless Scindia does not preclude liability of a vessel's negligence when it arises at sea. Id. at 163. That is, a vessel does have an affirmative duty to provide notice of hazards when known because the

non-disclosure of a hazard gives rise to a latent danger to the longshoremen and in the absence of notice vessel negligence could follow. Id. Defendant's cursory argument tries to focus the Court's attention on the stevedoring offloading operations on the day of the accident and simultaneously obfuscates the Movant's responsibility for disclosing what occurred at sea. Plaintiff is confident that the Court will distinguish the vessel's duty at sea versus the dockside Scindia duties, and astutely perceive the genuine issues of material fact hidden by Movant's argument, which need to be resolved by the fact finder.

Defendant further misstates that the master of the vessel, Captain Biggs, "refused to" appear for a deposition. (Defendant's Exhibit "C" at 60-62). Actually, Captain Biggs stated, according to Mr. Crouse, that "[h]e didn't see any reason to come down because he didn't remember anything happening of any significance [on June 23, 2000][1]. (Plaintiff's Exhibit "E" at 63). Defendant Kent Line failed to produce the Chief Officer, "Magic," who had the exclusive duty to inspect the cargo at sea. (Plaintiff's Exhibit "E"at 79:2-3, 9-21).

Defendant Kent Line cites Governali v. American Tempering Inc., 1988 WL 3843 (E.D. Pa.) as applicable to rebut Plaintiff's Rule 56(f) argument. In Governali, the court denied the plaintiff's request for a jury instruction on the "missing witness" rule, an instruction that the jury could draw an adverse inference against the defendant for not producing a witness. (emphasis added). In denying Plaintiff's request for an instruction the Court reasoned: "no one knew where he could be located." Id. at *3.

The instant case is significantly distinguishable from the "missing witness" rule in Governali, because Governali was applicable to a jury instruction at trial. In contrast, the application of the

---

[1] It is reiterated Mr. Crouse is speculating from the ship's log, he was not on this voyage.

Governali rule here would enable Defendant Kent Line employees, who are the only witnesses to what occurred aboard the vessel while at sea, to escape the discovery process. Conveniently Movant Kent Line designated a 30 (b)(6) deponent, Captain Crouse, who was not on the voyage.

Furthermore, Defendant Kent Line failed to timely request reconsideration of the Court's Order of May 1, 2003, wherein, if the depositions of witnesses: Captain Ian Biggs, Adamiak Maciej (a/k/a Magic) and Zbigniew Soja do not occur during discovery those individuals will be precluded from testifying at trial. (Local Rule 7.1(g)). Moreover, Mr. Crouse testified concerning the complicated manner in which Kent Line employs officers and crew [2]. Apparently, Kent Line is a division of a parent company, or of related corporation(s). Sufficient disclosure has not been forthcoming from Kent Line concerning whether Captain Biggs and Magic, although allegedly to be no longer in the employment of Defendant Kent Line, these witnesses may indeed still have an association with a business entity under the Kent Line umbrella, like Mr. Crouse.

The ship's log denotes increasing wind speeds from June 10, 2000 through June 12, 2000. (Ship's log at KL071 - KL073). Captain Sammons testified that the captain told him the "vessel experienced fair weather for the entire voyage" and further, the captain did not file a Letter of Marine Protest. (Plaintiff's Exhibit "B" at 17). Yet, on June 10, 2000 the captain altered the vessel's heading to 230 degrees True solely because the vessel was "shipping seas on foc'sle & [starboard]

---

[2]One business card of Mr. Crouse states, he is the "Fleet Manager, Container / Breakbulk Division" for **Kent Line International Limited**. (Plaintiff's Exhibit "E," Crouse Deposition Exhibit "Crouse 23"). Concurrently, he was employed as a General Manger and reported to **"Combined Operations Group**,**"** but worked for **"Ocean Services Limited."** (Plaintiff's Exhibit "E" at 249-250). But he also stated that he received a paycheck from **"Irving Transportation Services"**, in addition was "Fleet Manager / Offshore Support" for **"Atlantic Towing Limited."** Id. Interestingly, Mr. Crouse claims to be able to contact the inaccessible witness Captain Biggs and "Magic." Id. at 251:7-19.

4

bow." (Ship's log KL071).

Because at sea cargo inspections cannot reveal potential latent hazards since most cargo cannot be visually inspected at sea, under stormy weather conditions a Letter of Marine Protest would provide notification of potential cargo shifting to the stevedores. (Plaintiff's Exhibit "E" at 93:15-24, 94:1-16, 95:18-24, 96:1-17). Captain Sammons' survey and Mr. Levy's survey reported various amounts of cargo damage, it follows that the occurrence of the cargo damage occurred during the voyage and most likely under stormy, rather than calm sea conditions.

If the stevedore boss had known of the stormy weather, his duty would be to provide notice to the longshoremen. Further, Captain Sammons, who was the surveyor hired by Defendant Trans Ocean in this case, stated in his survey that the cargo damage reported by Trans Ocean "vastly understates the damages . . . ." (Plaintiff's Exhibit "A," Exhibit 6, p. 2). Furthermore, a survey by Defendant Kent Line categorized the ship's log and the heavy weather before noting the absence of a sea protest. (Exhibit "M," ¶ 4, p. 2). This survey Seaspan Marine Consultants, Inc. was completed at the behest of Movant/Defendant Kent Line. Consequently, the inference raised by this document not only suggests that a protest should have been filed, but also amounts to a tacit admission. The declarant, Seaspan Marine Consultants, Inc., was engaged by Movant/Defendant Kent Line.

Another ship's log entry mentions a damaged spreader at hold #3 that was used to load and offload cargo from the vessel's holds. (Ship's Log, June 16, 2000, KL077; Exhibit M, ¶ 3). Even though stevedores generally use their own spreaders, they sometimes use the vessel's spreader; therefore under that circumstance, the spreader would be an appurtenance of the vessel[3]. Movant

---

[3] The U.S. Supreme Court held, in Scindia, that "[t]he shipowner thus has a duty with respect to the condition of the ship's gear, equipment, tools, and work space **to be used in the stevedoring operations**." Id. at 167. (emphasis added).

5

Kent Line, strategically, chose not divulge whether, or not, the spreader itself was a ship's appurtenance. The record of fact also denotes a misuse of a short "hook" used with the ship's crane #3, the crane obviously is an appurtenance of the vessel. (Plaintiff's Exhibit "E" at 81). Notably, it was in cargo hold #3 that the Plaintiff was injured.[4] A through reading of Defendant's <u>Motion for Summary Judgment</u> and its <u>Reply to Plaintiff's Answer to the Motion for Summary Judgment</u> reveal no discussion of the damaged #3 spreader or the failing #3 hook associated with ship's crane #3, rather all Defendant's allegations posit dockside <u>Scindia</u> duties.

**CONCLUSION**

In light of the foregoing facts of record and previous submissions to this Honorable Court coupled with the unavailability of the Master, Chief Mate and the sole cargo inspector of the vessel, all of whom retain exclusive knowledge of the vessel's at sea operations, it is respectively requested that the Defendant's Motion for Summary Judgment be denied.

                                              **Respectfully submitted,**

**DATE:**                                        **THOMAS MORE HOLLAND**
                                                   **Attorney for Plaintiff**

---

[4] At the risk of rehashing, it warrants reiteration: the importance of the spreader and hook issues is it may have a causal relationship to the failure to follow warning letter, dated May 18, 2000, from Dick Klompe of Kent Line International that the shore cranes, not the ship cranes, should be used to remove specific cargo from hold #1. (Plaintiff's Exhibit "H"). Mr. David Cole, a marine safety expert, has analyzed the facts of record in light of the above circumstances. (Plaintiff's Exhibit "I").