IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSEPH MARINO, | : | |
|     Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| KENT LINE INTERNATIONAL, LTD., | : | |
| et al., | : | No. 02-4488 |
|     Defendants. | : | |

**MEMORANDUM AND ORDER**

    Plaintiff Joseph Marino, a longshoreman, brings this suit alleging that Defendants' negligence led to a maritime accident in which Plaintiff's foot was crushed by a steel beam in the cargo hold of a ship. Five of the six named Defendants have moved for summary judgment. For the reasons set out below, the Court will grant these motions. In addition, the Court will dismiss the remaining Defendant from the case for lack of service of process.

**I. BACKGROUND**

    The following facts are undisputed. On June 22, 2000, the M/V KENT VOYAGEUR, owned by Defendant Voyageur Shipping ("Voyageur") and operated by Defendant Kent Line International ("Kent Line"), docked in Gloucester, New Jersey. (Discovery Doc. KL083 (Ship's Log of June 22, 2000).) The ship was carrying a cargo of steel beams and other construction-related equipment from Antwerp and had a final destination of Fairless Hills, Pennsylvania. (Pl. Ex. H (Memorandum from Dick W. Klompe, Kent Line International (May 18, 2000).) On the evening of June 22, James McLaughlin, a representative of the stevedore Defendant Trans Ocean Maritime Services ("Trans Ocean"), inspected the ship for the purposes of determining whether Trans Ocean's longshoremen could commence unloading the cargo. (McLaughlin Dep. at 13-14,

101.) McLaughlin noted that the steel beams in the ship's cargo hold #3 had been jostled during the voyage and that they were no longer neatly stacked or tied together in bundles, but he decided that these conditions would not prevent the longshoremen from beginning their work. (McLaughlin Dep. at 101-103.) Accordingly, unloading commenced on the evening of June 22. (Levy Dep. Ex. 2 (Stevedore Log of June 22, 2000).)

At 7:00am on June 23, 2000, Trans Ocean began unloading cargo from holds #1, #2, and #3. (Levy Dep. Ex. 3 (Stevedore Log of June 23, 2000).) The cargo in hold #1 was unloaded with a shore-based "Kocks" crane from 7:40am until noon. (*Id.*; *see also* Discovery Doc. KL084 (Ship's Log of June 23, 2000).) Also that morning, Plaintiff Joseph Marino, a longshoreman employed by Trans Ocean, was unloading steel beams from cargo hold #3. (Compl. at ¶¶ 7-8.) At approximately 8:30am, one of these beams became unbalanced and fell upon Plaintiff's foot, seriously injuring him. (Compl. at ¶ 9.)

In addition to Kent Line, Voyageur, and Trans Ocean, Plaintiff alleges that his injuries were caused by the negligence of: (a) Kent Line's general agent Inchcape Shipping ("Inchcape"), which was responsible for managing the KENT VOYAGEUR's dockside activities; (b) Trans Ocean's consultant Holt Oversight and Logistical Technologies ("Holt"); and (c) an employee of Holt, Joseph Levy.[1]  With the exception of Joseph Levy, all of the named defendants have filed motions for summary judgment. Each of these motions is analyzed below, as is Plaintiff's motion for a default judgment against Mr. Levy.

---

[1] Plaintiff also asserted a claim against Maureen Levy, another Holt Employee. At oral argument, however, Plaintiff's counsel agreed to dismiss Ms. Levy from the case.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the record discloses no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). In reviewing the record, "a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994). The moving party bears the burden of showing that the record reveals no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *See* FED. R. CIV. P. 56(c); *Anderson*, 477 U.S. at 247. Once the moving party has met its burden, the non-moving party must go beyond the pleadings to set forth specific facts showing that there is a genuine issue for trial. *See* FED. R. CIV. P. 56(e); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). "There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249. "Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." *Williams v. Borough of W. Chester*, 891 F.2d 458, 460-61 (3d Cir. 1989).

## III. MOTION FOR SUMMARY JUDGMENT OF KENT LINE INTERNATIONAL ON ITS OWN BEHALF AND ON BEHALF OF VOYAGEUR SHIPPING[2]

---

[2] Although Kent Line seeks summary judgment on behalf of two distinct defendants, the legal standard for each of these parties is identical, as discussed in Part III.A. Thus, Kent Line and Voyageur are considered jointly for the purposes of summary judgment.

**A. Duties Owed by Ship Owners to Longshoremen**

For approximately twenty-five years, ship owners were liable under federal common law for injuries suffered by longshoremen during the unloading of cargo. *See Seas Shipping Co. v. Sieracki*, 328 U.S. 85 (1946). In 1972, however, Congress passed the Longshore and Harbor Workers Compensation Act ("LHWCA"). Pub. L. 92-576, 86 Stat. 1251, codified at 33 U.S.C. §§ 901-950. The LHWCA eliminated the great majority of causes of action against ship owners by precluding injured longshoremen from suing on the basis of a ship's unseaworthiness. *See* 33 U.S.C. § 905(b). Instead, the LHWCA instituted a system of worker's compensation whereby an injured longshoreman would receive compensation and benefits from the federal government but would not be able to sue his employer, the ship's owner, or the owner's agents unless the owner or agent were actually negligent regarding the injured longshoreman.[3] *Id.* The LHWCA did not specify what acts or omissions would constitute negligence on the part of these actors.

The Supreme Court defined the post-LHWCA negligence of ship owners in *Scindia Steam Navigation, Ltd. v. De los Santos*, 451 U.S. 156 (1981). In *Scindia*, the Court held that there were three duties of care owed by a ship owner to longshoremen. Of these, the duties relevant to the instant case are: (1) The "turnover duties," which include (a) the duty to ensure that the ship and its equipment are in reasonably safe condition and (b) the corollary "duty to warn" the stevedoring company if the ship or its equipment poses a latent threat to the longshoremen, *id.* at 166-67; and (2) the "active control duty," which imposes a duty of care on the owner vis-a-vis the areas of the ship that remain under the owner's active control during

---

[3] Technically, the LHWCA limits negligence actions against employers and "the vessel." 33 U.S.C. § 905(b). The term "vessel" is defined to include the ship's owner and the owner's agents. 33 U.S.C. § 902(21).

cargo operations. *See Scindia*, 451 U.S. at 167 (holding that owner owes no duty in areas "within the confines of the cargo operations that are assigned to the stevedore").[4]

Importantly, the Supreme Court has held that the duty to warn applies only to hidden hazards that a "competent stevedore" would not anticipate "in the competent performance of his work." *Howlett v. Birkdale Shipping Co.*, 512 U.S. 92, 98-99 (1994). This holding was based upon the purpose of the LHWCA, which was to transfer the primary responsibility of protecting longshoremen from shipowners, who generally do not oversee cargo operations, to stevedores, who are in the best position to prevent injuries to longshoremen. *Id.* at 101. Thus, the Court held that longshoremen generally may not recover damages from shipowners for injuries caused by cargo. *See id.* at 104 ("For the purposes of delineating the scope of a shipowner's turnover duty, then, the cargo stow is separate and distinct from other aspects of the ship.").

Regarding the active operations duty, the Third Circuit has held that in order for this duty to apply, "the vessel must have substantially controlled or been in charge of (i) the area in which the hazard existed, (ii) the instrumentality which caused the injury, or (iii) the specific activities the stevedore undertook." *Davis v. Portline Transportes Maritime Internacional*, 16 F.3d 532, 540 (3d Cir. 1994). If active control is found, ordinary standards of negligence apply. *Id*. at 537.

**B. Kent Line Did Not Breach Its Duties**

---

[4] Scandia also identified a "duty to intervene," which requires the owner to alert the stevedore to any latent dangers of which the owner becomes aware after unloading has begun. *See Scindia*, 451 U.S. at 167-178. The parties agree that this duty is not implicated by the instant case.

Plaintiff alleges that Kent Line violated both its active operations duty and its duty to warn Trans Ocean of latent on-board dangers. Each of these duties is discussed below.

### 1. *Kent Line Did Not Breach Its Duty To Warn*

Plaintiff alleges four separate breaches of Kent Line's duty to warn. First, Plaintiff claims that Kent Line negligently failed to oversee the loading of the steel beams into cargo hold #3, with the result that such loading may have been executed improperly. This argument, however, is completely frivolous, for the Supreme Court has explicitly held that a ship's owner has no duty to oversee the loading of cargo by stevedores. *See Howlett*, 512 U.S. at 100 (rejecting argument that owner is required to make reasonable inspection of cargo); *see also Scindia*, 451 U.S. at 168 ("[W]e cannot agree that the vessel's duty to the longshoreman requires the shipowner to inspect or supervise the stevedoring operation."). In addition, the Third Circuit has held that even if such a duty were to be created (i.e., by contract), it would not inure to the benefit of longshoremen who were injured while unloading the improperly-loaded cargo. *Derr v. Kawasaki Kisen K.K.*, 835 F.2d 490, 493 (3d Cir. 1987) ("[T]he shipowner has no duty to supervise or inspect cargo loaded or unloaded by stevedores and therefore may not be held liable for injuries arising out the stevedore's failure to perform his job properly.").

Second, Plaintiff claims that Kent Line was aware that the KENT VOYAGEUR's on-board crane was damaged but failed to notify Trans Ocean of this fact. This argument is based upon a June 16, 2000, log entry from Saint John's, Newfoundland that states: "Commenced discharging no.3 (steel plate) using ship's crane with 1 [illegible]. About 1-2 meters from the dock the hook slip [sic] out because the hook is short and not holding well causing the steel plate

to drop into the dock and bend the spreader." (Discovery Doc. KL077 (Ship's Log of June 16, 2000).) The entry goes on to state that this problem was resolved when the stevedore began to use a longer hook. Plaintiff claims that this log entry indicates that the on-board crane was defective or damaged. On the contrary, however, the entry clearly states that the problem was not with the crane, but with the use of an incorrect hook. In addition, as discussed more fully in the following paragraph, there is absolutely no evidence on record from which a jury could infer that the crane involved in the June 16 incident caused—or was in any way related to—the incident in which Plaintiff was injured. Thus, Plaintiff's argument fails to provide any evidence from which a jury could determine either that Kent Line failed to warn Trans Ocean of a defect in the ship's equipment or that such a "defect" would be material to this case.

      Third, Plaintiff argues that Kent Line negligently failed to inform Trans Ocean that certain pieces of cargo in the #1 hold were too heavy to be unloaded with the ship's crane. Plaintiff argues that the failure to inform Trans Ocean of this fact led Trans Ocean to use the on-board crane to lift overweight cargo, which caused the ship to list, which in turn caused the steel beams to topple and injure Plaintiff. There are, however, several substantial problems with this argument, the most glaring of which is that the sole document upon which Plaintiff bases his claim is a memorandum from Kent Line to, inter alia, Trans Ocean, warning Trans Ocean about the heavy cargo. (Pl. Ex. H (Memo from Dick W. Klompe, Kent Line International, to Jeff Gillespie and Joe Levy of Trans Ocean (May 18, 2000).) In addition, the evidence is clear that Trans Ocean was not using the on-board crane at the time of Plaintiff's injury, and there is no evidence whatsoever that Trans Ocean attempted at *any* time to lift the overweight cargo with the on-board crane. (*See* Levy Dep. Ex. 3 (Stevedore Log of June 23, 2000); Discovery Doc.

KL084 (Ship's Log of June 23, 2000).) Finally, the only evidence that the ship ever listed is Plaintiff's unsupported assertion that he felt it do so—an assertion that is completely refuted by the ship's various technical log books (*see* Kent Line Reply Br. at 6 and documents cited therein) and the fact that Plaintiff has not been able to produce a corroborating witness from among the dozens of people who were on the ship at the time. A mere assertion is not sufficient grounds to warrant denial of summary judgment, *see, e.g., S.E.C. v. Hughes Capital Corp.*, 124 F.3d 449, 456 (3d Cir. 1997) (upholding district court's grant of summary judgment despite plaintiff's disputed factual assertions), and Plaintiff has therefore failed to present sufficient evidence to defeat summary judgment regarding his claim that Kent Line negligently failed to advise Trans Ocean to use a land-based crane.

      Finally, Plaintiff argues that Kent Line negligently failed to inform Trans Ocean that the KENT VOYAGEUR had encountered stormy weather en route to Gloucester. Plaintiff claims that Trans Ocean should have filed a document known as a Notice of Protest, which would have informed all interested parties about the weather conditions and therefore about the possibility of the cargo having shifted. Kent Line's failure to do so, Plaintiff argues, may be considered a breach of the duty to warn the stevedore about latent hazards on board the ship. This argument, however, fails as a matter of law, for two reasons. First, under the LHWCA and *Howlett*, shifting cargo is not among the hazards of which a ship owner is required to inform a stevedore. *See Howlett*, 512 U.S. at 101-104. Instead, the relevant law places the burden of handling shifted cargo upon the stevedore, who is assumed to have skill in such matters. *Id*. at 101. Second, even if Plaintiff were able to show that shifting cargo gave rise to a duty to warn, which it does not, that duty would have been obviated by Trans Ocean's actual observation—prior to

8

unloading—of the cargo having shifted. (McLoughlin Dep. at 102-103.) In other words, even if Kent Line had breached its duty, this breach did not cause Plaintiff's injury because Trans Ocean was already aware of the shifted cargo when Plaintiff began unloading it. Thus, Kent Line is entitled as a matter of law to summary judgment on this aspect of Plaintiff's negligence claim.

In sum, Plaintiff provides no evidence from which a reasonable jury could determine that Kent Line either violated its duty to warn or caused Plaintiff's injuries, and there are no material facts in dispute regarding this claim except for those raised by Plaintiff's bare assertions and mischaracterizations of the evidence. Accordingly, the Court grants Kent Line's motion for summary judgment regarding the duty to warn.

### 2. Kent Line Did Not Breach Its Active Operations Duty

Plaintiff alleges that Kent Line violated its active operations duty by (a) taking on ballast during cargo operations, thus causing the ship to list and thereby causing the steel beams in cargo hold #3 to tip over, and (b) sacrificing safety measures in an attempt to rush the unloading process.[5] Neither of these arguments, however, is supported by the facts in evidence. First, the

---

[5] Plaintiff's counsel raised this argument—and the document supporting it—for the first time at oral argument, less than three weeks before trial was scheduled to begin. Normally, the Court would not address such an untimely argument, but because the claim is meritless Defendants face no prejudice from its consideration at the present time. The Court will not, however, consider Plaintiff's separate argument that the KENT VOYAGEUR was negligently allowed to become stuck in mud, and that the ship listed as a result. This claim is based entirely upon an affidavit of Plaintiff's expert witness, stating, without any factual basis whatsoever, that such a series of events "may" have occurred. (Pl. Ex. I (Aff. of David E. Cole).) This is, on its face, a purely speculative statement, and the Court will not allow such speculation to be used as "evidence" merely because it is offered under the guise of expertise. *See In re USN Communications, Inc.*, No. 02-2865, 2003 WL 1551287, at *1 (3rd Cir., Mar. 25, 2003) ("It was well within the District Court's prerogative as finder of fact to choose not to rely on the speculative testimony of appellant's experts . . . ."). In addition, even if the expert report were

ship's ballast log clearly states that the ship was not taking on ballast at the time of the accident, and Plaintiff presents not a shred evidence to the contrary. (*See* Kent Line Reply Br. at 6 and documents cited therein.) Second, as discussed previously, there is no factual evidence that the ship listed during the unloading of cargo hold #3. Finally, Plaintiff's argument regarding Kent Line's attempt to rush the unloading process in Gloucester is based entirely upon a single document which, despite Plaintiff's counsel's misleading representations to the Court, does not relate in any way, shape, or form, to the unloading of the KENT VOYAGEUR in Gloucester. Instead, it is a series of emails to and from employees of Kent Line's agent Inchcape, some of which mention the "trickle down" delay that the KENT VOYAGEUR suffered in being unloaded at Fairless Hills, Pennsylvania as a result of problems that arose in Fairless Hills with respect to *an entirely different ship*, the M/V CATHARINE OLDENDORFF. (Email of April Hale, Inchape Shipping, to Dick Klompe, Kent Line (June 27, 2000).) There is nothing in this document from which any reasonable factfinder could infer that Kent Line played an active role in the unloading of the KENT VOYAGEUR in Gloucester, as would be required by *Scindia* and *Davis*, nor can any inference be drawn regarding Kent Line's safety procedures in Gloucester. Thus, Plaintiff has not provided even a scintilla of evidence in support of his active operations claim. Accordingly, Kent Line's motion for summary judgment is granted.

**IV. MOTION FOR SUMMARY JUDGMENT OF INCHCAPE SHIPPING**

---

construed as evidence, it hypothesizes that the ship listed when Trans Ocean switched from using the ship-based crane to the land-based crane. This switch occurred at 7:40am, well before Plaintiff claims that he felt the ship list. (Discovery Doc. KL084 (Ship's Log of June 23, 2003).)

At the time of Plaintiff's injury, Inchcape was Kent Line's general dockside agent. The liability standard for such general agents under the LHWCA is the same as for the ship owner itself. *See* 33 U.S.C. § 902(21) (including both owners and agents within definition of "vessel"). Thus, the duties owed to longshoreman by general agents are those duties set out in *Scindia*, as discussed above.[6] Specifically, Plaintiff alleges that Inchcape violated (a) its duty to warn Trans Ocean to use a land-based crane to unload the overweight cargo in hold #1, and (b) its active operations duty by rushing the unloading process in Gloucester so that the KENT VOYAGEUR could be moved along to its final destination.

As discussed previously regarding Kent Line, Plaintiff's claims are completely lacking in factual support. The sole document upon which Plaintiff bases his duty-to-warn claim is a memorandum from Kent Line to Inchcape, Trans Ocean, and others, warning Trans Ocean to use a land-based crane. (Pl. Ex. H (Memo from Dick W. Klompe, Kent Line International, to Jeff Gillespie and Joe Levy of Trans Ocean, inter alia (May 18, 2000).) When questioned at oral

---

[6] The parties' briefs originally relied upon the standard of liability set out in *Caldarola v. Eckert*, 332 U.S. 155, 158-59 (1947) and its progeny. *See, e.g., Gaynor v. Agwilines, Inc.*, 169 F.2d 612, 618 (3d Cir. 1948) ("[O]n the question [of] whether a general agent . . . [is] responsible for maritime torts committed . . . by members of the crew . . . the *Caldarola* case compels a negative answer."); *Parlady v. American-Hawaiian S.S. Co.*, 169 F.2d 619, 620 (3d Cir. 1948) ("[When] the possession or the vessel and its management and operation remain with the owner . . . the general agent does not owe a duty of care to third persons."). At oral argument, however, Inchcape agreed with the Court, and Plaintiff did not dispute, that the LHWCA effectively abrogated *Caldarola*. Thus, the Court will apply the LHWCA standard, as interpreted by *Scindia*. Nonetheless, the Court notes the blatant falsity of Plaintiff's vehement assertions that *Parlady* "never discussed a general agent or duty" and that its ruling was dicta. (Pl. Br. of Sept. 8, 2003, at 10.) The *Parlady* court *did* discuss the liability of general agents, not in dicta, but as its basis for upholding the district court's ruling. *Parlady*, 169 F.2d at 620 (holding that district court's analysis of general agent's duty was "well taken"). While the Court will not embarrass Plaintiff's counsel by detailing within this Memorandum his constant misrepresentations of fact, his repeated mischaracterization of Third Circuit caselaw bears mention in the event that Plaintiff reasserts this claim in future proceedings.

argument regarding the specific duty to warn to which this memorandum gave rise, Plaintiff's counsel stated his belief that Inchcape was legally obligated to *re*-send this memorandum to Trans Ocean, apparently to provide Trans Ocean with the same notice that it had already received. Plaintiff has not, however, provided any caselaw to support this counter-intuitive proposition, nor has the Court's research uncovered any such precedent. Accordingly, the Court rejects Plaintiff's attempt to require a ship owner's agent to re-warn the stevedore of an alleged hazard regarding which the stevedore was already aware. In addition, Plaintiff has no evidence that Inchcape's alleged failure to warn caused Plaintiff's injury, for it is undisputed that Trans Ocean was not using the on-board crane to unload overweight cargo at the time of Plaintiff's injury (Discovery Doc. KL084 (Ship's Log of June 23, 2003)), and there is no evidence, beyond Plaintiff's solitary assertion contrary to all relevant documentary evidence, that the ship listed at the time of his injury. (*See* Kent Line Reply Br. at 6 and documents cited therein.) In sum, Plaintiff has failed to present any material facts to contradict the showing made by Inchcape that it neither violated its duty to warn nor caused Plaintiff's injury. Accordingly, the Court grants Inchcape's motion for summary judgment regarding Plaintiff's duty-to-warn claim.

Plaintiff's active operations claim is similarly lacking in factual support. This claim is based entirely upon the same series of emails, discussed previously in the context of Kent Line, that do not in any way demonstrate or imply that Inchcape actively controlled unloading operations at Gloucester. Thus, the Court finds that Plaintiff has produced no evidence in support of his claim against Inchcape and therefore grants summary judgment.

## V. MOTION FOR SUMMARY JUDGMENT OF SLS, INC. d/b/a HOLT OVERSIGHT AND LOGISTICAL TECHNOLOGIES ON BEHALF OF TRANS OCEAN MARITIME SERVICES

As Plaintiff's employer, Trans Ocean is immune from suit for work-related injuries.[7] 33 U.S.C. § 905. In apparent recognition of this fact, Plaintiff has attempted to assert a state-law claim against Trans Ocean under *Laidlow v. Hariton Mach. Co.*, 790 A.2d 884 (N.J. 2002), in which the New Jersey Supreme Court permitted certain employee personal-injury suits against otherwise immune employers. *Laidlow*, however, is completely irrelevant to the instant case, for the New Jersey worker's compensation statute upon which *Laidlow* is based explicitly excludes longshoremen. N.J. STAT. ANN. § 34:15-36 (excluding from coverage any worker who is eligible for compensation under LHWCA). As the New Jersey courts have noted, "a New Jersey maritime employee is limited to seeking compensation under the [LHWCA]." *Street v. Univ. Maritime*, 693 A.2d 535 (N.J. Super. App. Div. 1997). Thus, Plaintiff cannot evade the employer-suit prohibitions of the LHWCA by alleging an inapplicable state-law cause of action, and Trans Ocean is entitled to summary judgment on this claim.

## VI. MOTION FOR SUMMARY JUDGMENT OF SLS, INC. d/b/a HOLT OVERSIGHT AND LOGISTICAL TECHNOLOGIES ON ITS OWN BEHALF

Plaintiff alleges that Holt, through its employee Joseph Levy, owed a duty to Plaintiff to inspect and maintain the safety conditions on the KENT VOYAGEUR. The evidentiary basis of

---

[7] The only exception to this rule is in cases where the employer acts with the specific intent to injure its employee. *See, e.g., Sample v. Johnson*, 771 F.2d 1335, 1346 (9th Cir. 1985). Plaintiff has not asserted a specific intent claim, but even if he were to do so, there is not a shred of evidence on record that Trans Ocean intended to harm Plaintiff.

this assertion is twofold:  (1) Levy received the Kent Line memorandum, discussed previously, regarding the use of the land-based crane; and (2) Levy was a safety consultant for Trans Ocean.

The Court has twice fully addressed the issue of the Kent Line memorandum and will not do so again here.  Suffice it to say that Levy's alleged failure to heed the memorandum—even *if* this constituted a breach of the duty of care to Plaintiff—cannot be shown to have a causal relationship to Plaintiff's injury because the ship-based crane was not used to unload overweight cargo, and there is no evidence that the ship ever listed.

Plaintiff's second argument, that Levy was a safety consultant for Trans Ocean, is based upon blatant mischaracterizations of Levy's deposition transcript.  The main exchange to which Plaintiff points as evidence that Levy was responsible for on-ship safety actually reads as follows:

> Q:  What were the problems that [you were directed by Trans Ocean] to oversee?
> A:  Most of the problems involved inventory, but weren't limited to that.
> Q:  Did the problems you were initially assigned include safety?
> A:  Safety is a part of everyone's job, Mr. More.

(Levy Dep. at 20.)  Contrary to Plaintiff's assertion, the statement that "safety is a part of everyone's job" neither connotes nor gives rise to a reasonable inference that Levy was a safety consultant.  In fact, Levy stated during his deposition that he was responsible for making sure that the *cargo* was safe and accounted for.  (*See* Levy Dep. at 20, 76.)  His job did not even require him to board the ships (Levy Dep. at 82.), much less to conduct the thorough below-deck inspection that Plaintiff alleges should have been conducted.  In short, there is nothing in the deposition transcript that indicates that Levy's position included oversight of longshoremen's

safety. As such, there is no evidence that Levy, and thereby Holt, owed a duty of care to the Plaintiff.[8]

### VII. PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AGAINST JOSEPH LEVY

Plaintiff has moved for a default judgment against Joseph Levy, arguing that Levy was properly served with process and has failed to file an answer to the Complaint. Levy responds that he was never properly served with process.

Plaintiff's process server attempted to serve Joseph Levy by delivering a summons and complaint to Holt's offices in Gloucester, NJ. It is undisputed, however, that Levy did not work at this location and that Plaintiff's counsel was informed of this fact immediately after the summons was delivered. (Holt Ex. E (Aff. of Linda M. Handy).) Thus, service was never properly effected. Accordingly, Plaintiff's motion for default judgment is denied.

In addition, after being informed of this service dispute during a phone conference on September 3, 2003, the Court granted Plaintiff an extension of the service deadline and directed Levy's counsel to provide Plaintiff's counsel with Levy's home address, which he did. Nonetheless, at oral argument on October 1, 2003, the Court was informed that Plaintiff still had not effected service. In response to the Court's questioning regarding whether Plaintiff had good cause for his failure to serve, Plaintiff's counsel claimed that the Clerk of Court had never provided counsel with a summons. Counsel admitted, however, that he had made no effort to contact the Clerk after requesting the summons on September 3. The Court finds, therefore, that

---

[8] Because the Court finds that Levy owed no duty of care to Plaintiff, the Court does not reach Holt's alternative argument that Levy was a borrowed servant of Trans Ocean.

Plaintiff does not have good cause for his failure to serve Joseph Levy within the extended service deadline that was granted on September 3. *See Petrucelli v. Bohringer & Ratzinger,* 46 F.3d 1298, 1307 (3d Cir. 1995) (upholding district court's dismissal of suit in light of counsel's "half-hearted" attempt to effect service). Accordingly, and in light of the prejudice that would result from serving Mr. Levy with a summons barely two weeks before the commencement of trial, the Court dismisses the claim against Joseph Levy pursuant to FED. R. CIV. PROC. 4(m).[9]

**VI. CONCLUSION**

Congress enacted the LHWCA to compensate injured longshoremen and limit the liability of stevedores, ship owners, and agents. In the instant suit, Plaintiff has attempted to evade the limitations of the LHWCA by bringing multiple causes of action based solely upon assertions, allegations, speculation, and misstatements. Even when construing the record in the light most favorable to Plaintiff, the only defendant whose actions could *possibly* be deemed negligent is Plaintiff's employer, against whom suit is prohibited; the remainder of the action is without factual basis and untenable. Accordingly, the Court now grants Defendants' motions for summary judgment. An appropriate Order follows.

---

[9] In addition, the Court reiterates its holding that Joseph Levy did not, as a matter of law, owe a duty of care to Plaintiff. Thus, even if Plaintiff demonstrated good cause for his failure to serve, the Court would grant summary judgment to Mr. Levy on the grounds stated above in Part VI.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSEPH MARINO, | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| KENT LINE INTERNATIONAL, LTD., | : | |
| et al., | : | No. 02-4488 |
| Defendants. | : | |

**ORDER**

**AND NOW**, this      day of **October**, **2003**, upon consideration of the motions for summary judgment filed by Defendants Kent Line International, Inchcape Shipping, and SLS, Inc. d/b/a Holt Logistical Oversight and Technology, the responses thereto, and the oral arguments of October 1, 2003, it is hereby ORDERED as follows:

1. Defendant Kent Line International's motion for summary judgment of behalf of itself and on behalf of Voyageur Shipping (Document No. 38) is **GRANTED**;

2. Defendant Inchcape Shipping's motion for summary judgment (Document No. 42) is **GRANTED**;

3. Defendant SLS, Inc. d/b/a Holt Oversight and Logistical Technologies' motion for summary judgment of behalf of itself and on behalf of Trans Ocean Maritime Services, Inc. (Document No. 44) is **GRANTED**;

4. Plaintiff's motion for default judgment against Joseph and Maureen Levy (Document No. 41) is **DENIED**;

5. Plaintiff's claims against Joseph Levy are **DISMISSED** for lack of service of process;

6. Pursuant to the request of Plaintiff's counsel at the oral argument of October 1, 2003, Maureen Levy is **DISMISSED** from the case.

7. The Clerk of Court is directed to close this case.

**BY THE COURT:**

_____
**Berle M. Schiller, J.**