## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| JOSHEPH MARINO, | : | CIVIL ACTION |
|  | : |  |
| Plaintiff, | : |  |
|  | : |  |
| v. | : |  |
|  | : | Civil Action No.  02-CV-4488 |
| KENT LINE INTERNATIONAL, et al., | : |  |
|  | : |  |
| Defendants. | : |  |
|  | : |  |

## ORDER

AND NOW, this _____ day of _____, 2003, upon

consideration of Defendants' Motion in Limine and Memorandum of Law in Support

Thereof to preclude expert testimony from David E. Cole, it is hereby ORDERED and

DECREED that the motion is GRANTED.  David E. Cole shall not be permitted to offer

expert opinion testimony at trial.


BY THE COURT


_____

The Honorable Berle M. Schiller

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSHEPH MARINO, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | Civil Action No.  02-CV-4488 |
| KENT LINE INTERNATIONAL, et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |

## MOTION IN LIMINE AND MEMORANDUM
## OF LAW IN SUPPORT THEREOF OF DEFENDANTS
## KENT LINE INTERNATIONAL AND VOYAGEUR SHIPPING
## LIMITED TO PRECLUDE EXPERT TESTIMONY FROM DAVID E. COLE

Defendants, Kent Line International ("Kent Line") and Voyageur Shipping

Limited ("Voyageur") (collectively, "Defendants"), by and through their attorneys, Fox

Rothschild, LLP, hereby submit this motion in limine and memorandum of law in support

thereof, to preclude David E. Cole ("Cole") from offering expert testimony at trial, as

follows:

I.    **INTRODUCTION**

On May 9, 2003, plaintiff, Joseph Marino ("Plaintiff"), served a purported expert

report from Cole, who rendered certain opinions on the damages allegedly suffered by

Plaintiff.  A true and correct copy of Cole's report (the "Cole Report") is attached as

Exhibit "A" hereto.  Plaintiff subsequently served on Defendants a supplemental expert

report from Cole ("the "Supplemental Cole Report").  A true and correct copy of the

Supplemental Cole Report is attached as Exhibit "B" hereto.  The Supplemental Cole

Report concurs with the original Cole Report.  Finally, Plaintiff submitted an affidavit signed by Cole, dated September 5, 2003 (the "Cole Affidavit").  A true and correct copy of the Cole Affidavit is attached as Exhibit "C" hereto.  The Cole Affidavit concurs with the Cole Report and the Supplement Cole Report.  The Cole Report, the Supplemental Cole Report and the Cole Affidavit are collectively referred to as "Cole's Expert Reports."  The opinions contained in Cole's Expert Reports can be summarized into the following areas:

1.    Defendants improperly conducted ballasting operations, by using a vessel crane instead of a shore crane, thereby causing injury to Plaintiff;

2.    Defendants failed to exercise ordinary care in inspecting the vessel's cargo, which resulted in injury to Plaintiff; and

3.    Defendants failed to properly file a protest warning of the danger posed by the vessel's cargo.

See generally, Exhibits "A", "B" and "C."

Cole's Expert Reports are flawed in several respects.  First, Cole has no relevant knowledge or experience that could possibly qualify him as an expert in this matter.  Further, his analysis is hopelessly flawed because it is based on faulty data and premised on incorrect assumptions.  Moreover, Cole's expert opinion in this matter is little more than the guesswork of a man who has no experience or factual basis to reach any reliable opinions in this case.  Accordingly, the Court should not allow Cole to testify at trial.

## II.   STANDARD FOR ADMISSION OF EXPERT TESTIMONY

The admission of expert opinion testimony is governed by Federal Rule of

Evidence 702, which provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. The Supreme Court has charged district courts with the responsibility

of acting as gatekeepers to exclude unreliable expert testimony. See Kumho Tire Co.,

Ltd. V. Carmichael, 526 U.S. 137 (1999); Daubert v. Merrell Dow Pharmaceuticals, Inc.,

509 U.S. 579 (1993). As set forth below, Cole's Expert Reports do not measure up to the

standards required to admit expert testimony.


## III.   COLE IS NOT QUALIFIED

Cole does not have the necessary experience or qualifications to render an expert

opinion in this case. Specifically, in the Cole Report, Cole states that he has a bachelor of

science degree in marine transportation and a juris doctorate degree. See Exhibit "A", at

1. Further, Cole states that he has spent twenty (20) years on active duty as a

commissioned officer with the United States Coast Guard. See id. However, despite

these credentials, Cole does not state that he has ever served aboard a commercial vessel

as either a Master or stevedore. See generally, Exhibit "A." Thus, Cole's credentials do

not qualify Cole to render an opinion about the practices aboard a commercial vessel, or the duties of either a Master or a stevedore.  Accordingly, he is not qualified to testify as an expert in this matter under Rule 702.

## IV.     COLE'S ANALYSIS IS DEEPLY FLAWED AND SPECULATIVE

Cole's Expert Reports are filled with incorrect assumptions and sheer ignorance of the facts of this case.  His analysis is shockingly incomplete and inaccurate.  Set forth below are the most glaring problems with Cole's Expert Reports:

### A.     Cole's Opinion On The Ballasting On The Vessel

The Cole Affidavit states that the ballasting procedure used on the vessel was improper and, thus, led to the shifting of the cargo that allegedly caused Plaintiff's injury. See Exhibit "C" at ¶ 9.  Cole makes this statement despite the fact that his expert reports are silent as to any analysis of the ballasting operations or the stability of the vessel.  In fact, the only evidence concerning the stability of the vessel, and the ballasting operation was provided by Captain Kevin Crouse ("Crouse") who testified that the ballasting operation was not an operation that would cause any sudden movement of the vessel.  See Crouse Dep. Tr. at 180-181.  Moreover, Crouse testified that the vessel was in a stable condition as indicated by the vessel's stability records.  See id. at 178, 179.

Contrary to Crouse's testimony, Cole asserts that the ballasting operation caused a sudden movement of the vessel.  Specifically, Cole states that the vessel, "**may** have been positioned on the river bottom during the off loading operations and . . . consequently . . .

was freed from being stuck in the muck at the water's bottom" through the use of vessel cranes instead of shore cranes. See Exhibit "C" at ¶¶ 11-12 (emphasis added). Cole further asserts that this caused the shifting of the cargo, which resulted in Plaintiff's alleged injury. See id. at ¶ 12-13. This conjecture is completely unsupported by any facts, notwithstanding that Cole has been provided with ample vessel documentation that included the vessel's draft, the amount of cargo onboard, the amount of cargo discharged, the record of ballast operations and the location of the berth. Basis data, regularly relied upon by mariners, in the form of tide tables, provides the height of the tide at any particular time. Yet, Cole has failed to even refer to the draft of the ship, the depth of the water at the Transocean terminal or the state of the tide at the time of the accident. Accordingly, any argument that the vessel improperly conducted ballasting operations is based purely upon speculation, which cannot serve as the basis for an expert opinion under Rule 702.

**B.    Defendants Had No Duty To Inspect The Cargo**

The Cole Report asserts that Defendants acted negligently by failing to properly inspect the cargo onboard their vessel. See Exhibit "A", at p. 3. A key element of negligence is the finding of a duty owed by the defendant to the plaintiff. See Stagl v. Delta Airlines, Inc., 117 F.3d 76, 79 (2d Cir. 1997). This element is routinely applied in maritime cases. See Pettit v. Celebrity Cruises, Inc., 153 F. Supp.2d 240 (S.D.N.Y. 2001).

The Third Circuit, in <u>Derr v. Kawasaki Kissen KK</u>, 835 F.2d 490 (3d Cir. 1987)

<u>cert.</u> <u>Denied</u> 486 U.S. 1007 (1988), has held that a "ship owner has no duty to supervise

or inspect *cargo loaded or unloaded* by stevedores; therefore, a ship owner may not be

held liable for injuries arising out of the stevedores failure to perform this job properly.

<u>See</u> <u>Derr</u>, 835 F.2d at 493 (emphasis added).  Thus, Cole's opinion that Defendants had a

duty to inspect the cargo of the vessel after the stevedores loaded it, is contrary to Third

Circuit case law, and cannot serve as the basis for expert testimony under Rule 702.


    **C.**    <u>**Defendants Alleged Duty To File A Protest**</u>

The Cole Affidavit asserts that that Defendants "had a duty to file a protest" based

on Cole's reading of the vessel's logbook.  <u>See</u> Exhibit "C" at ¶ 6.  Cole purports that the

vessel's logbook states, "signs of changes in the status of the cargo." <u>See</u> <u>id.</u> From that

entry he concludes that the cargo may have shifted and that accordingly a protest should

have been filed.  The fact is that Cole misrepresents what the actual log entry is.  The true

log entry reads, "hold inspected, no signs of changes in the status of cargo." <u>See</u> Def.

Sur-Reply, at p. 4.  Thus, the premise for Cole's opinion is fatally flawed, and cannot

serve as the basis for an expert opinion under Rule 702.

## V.    **CONCLUSION**

For the foregoing reasons, Cole should not be permitted to testify as an expert in this matter.  He sorely lacks the necessary qualifications, and his analysis is wholly suspect.  Accordingly, Defendants respectfully request that the Court exercise its discretion as the gatekeeper to preclude Cole from testifying at trial.

Respectfully submitted,

A. Robert Degen, Esquire
I.D. No. 19336
**FOX ROTHSCHILD LLP**
2000 Market Street, Tenth Floor
Philadelphia, PA  19103-3291
Telephone:  (215) 299-2766
Telecopier:  (215) 299-2150

Attorneys for Defendants
Kent Line International, LTD.
and Voyageur Shipping, LTD.

**EXHIBIT "A"**

RECEIVED MAY 0 9 2003

Telephone

**(504) 347-8683**
(504) 340-8942
FAX# (504) 348-0434



**DAVID E. COLE**
COMMANDER USCG (ret)
**EXPERT WITNESS**
CONSULTANT IN ADMIRALITY
AND MARITIME

*MAILING ADDRESS:*
*P.O. BOX #99*
*MARRERO, LOUISIANA*
*70073 - 0099*

April 20. 2003

Mr. Thomas More Holland
Attorney at Law
Grace Hall
1522 Locust Street
Philadelphia, Pennsylvania  19102

Re: Marino v. Trans Ocean Maritime

Dear Mr. Holland:

At your request, I have reviewed the material provided, and hereby submit the following report. The material provided is listed in Enclosure One (1). In addition, I reviewed the history of the MV KENT VOYAGEUR on the Internet site of the United States Coast Guard.

I am an independent marine consultant. I hold a B.S. in Marine Transportation from the State University of New York Maritime College, which is one of the state-operated Merchant Marine Academies. I also have a J.D. from Loyola University at New Orleans, Louisiana. I pursued graduate courses in Transportation Management from my undergraduate alma mater. I also hold an unlimited Third Mate's license and an unlimited Able Seaman's certificate.

I spent 20 years on active duty as a commissioned officer with the United States Coast Guard, with 18 of those years being within the marine safety specialty. This program consists of the inspection of commercial vessels, the licensing of merchant marine personnel, and the investigation of marine casualties to determine cause and appropriate disciplinary measures, where necessary. I have spent the bulk of my time, since 1973, in the investigation of casualties, which includes the grounding of vessels, allisions, collisions, fires, explosions, sinkings, capsizings, personal injuries and deaths. I have continued this endeavor following my retirement from the Coast Guard in 1987. I am enclosing a copy of my resume.

My experience includes formal education in cargo loading and stowage and ship stability, and the analysis of cargo related casualties over the course of my career.

1

I charge $100 per hour, plus expenses, for professional services rendered. Where travel outside the greater New Orleans, Louisiana, area is involved, I assess a daily rate of $600 per day, plus expenses.

My opinions are based on my training, education and experience in obtaining and holding a mate's license and unlimited Able Seaman's certificate, in service aboard vessels and in the inspection and examination of vessels, and the investigation of thousands of marine casualties to determine cause. My experience is in excess of 35 years.

It is my understanding that Mr. Joseph Marino was employed as a longshoreman on June 23, 2000, on board the MV KENT VOYAGEUR while that vessel was discharging a cargo of various steel products at Pier 7A, Gloucester City, New Jersey. At approximately 8:45 a.m. on that date, Mr. Marino was rigging slings to unload steel beams from #3 hold when the beams shifted and rolled onto his right leg and foot. As a result, he sustained injury.

The MV KENT VOYAGEUR is a 488 foot long general cargo freight vessel registered in Barbados. She is fitted with four cargo holds with a house aft. At all times relevant in this report, she was generally engaged in carrying steel cargoes from Europe to North American ports, and returning to Europe with lumber.

The KENT VOYAGEUR had loaded a cargo of various steel products, including steel beams, plates, tubes, pipes, rolled coils and wire strand at Antwerp, Belgium, departing there June 7, 2000. Before arriving at Gloucester City, the vessel called at St. John's, Newfoundland (Canada), on June 15th, and New Haven, Connecticut, on June 20th, where part of the cargo was unloaded.

On its arrival at Gloucester City on June 22, 2000, an open-hatch survey was performed by Mr. W. D. Sammons, a surveyor from the National Cargo Bureau, Inc. (NCB). Captain Sammons stated that the cargo of steel beams in holds #2 and #3 did not have the appearance of having been secured, and noted that a great number of beams were tripped, turned on their sides, distorted and bent. He also noted broken banding on this cargo.

Captain Sammons inquired of the Master of the KENT VOYAGEUR about the weather encountered enroute, and was informed the ship had met fair weather. The Master stated he had not filed a Letter of Protest. The vessel's Deck Log indicated that heavy seas were encountered in the period from June 9th to June 12th.

A Letter of Protest was subsequently filed on the vessel's arrival at the Novolog Terminal at Fairless Hills, New Jersey, the next discharge port following Gloucester City. This Letter alleged damage caused by the stevedore to cargo destined for Gloucester City which was over-carried to Novolog.

2

Mr. Dick Klompe, of Kent Line, sent a message via e-mail to Mr. David Reid of the Novolog terminal on June 8, 2000, expressing concern about the stowage of the cargo. Inchcape Shipping Services, the vessel's agent at Gloucester City, was a copied addressee of this e-mail.

It is my opinion that the stowage of this cargo was not done in accordance with the proper standard of care, prudent seamanship and marine safety. This was a neglect of such principles on the part of the vessel's Master and owner.

The loading of cargo is done by longshoreman. However, this is done under the supervision of the ship's officers. This will typically be the Chief Mate, though the Master bears the ultimate responsibility. The ship is responsible for seeing that cargoes are not stowed such that damage results from the stow itself. The ship also has a responsibility to ensure the cargo stowage is in keeping with the stability requirements of the vessel. A primary consideration in a ship's stability and its structural integrity is that the cargo blocks remain intact and not be permitted to shift.

Dunnage is a primary means of providing for the integrity of the cargo block. Dunnage is used, among other reasons, to shore up cargo where space exists between the sides of the cargo hold and the cargo itself, evenly distribute the weight, and to provide a solid support for the cargo

The ship's Master has the ultimate responsibility to ensure that the cargo is properly stowed and his ship ready for sea. This duty arises for the safety of his ship and crew, and also for the safety of any individuals which may be exposed to any hazards presented by the improper stowage. Ships have been sunk or capsized because of improper cargo stowage. It is imperative that the ship's officers supervise the loading of the cargo, and it is not proper to rely on the longshoremen alone.

It is my opinion the Master of the KENT VOYAGEUR failed to see to the ordinary care due his ship, cargo and crew, and all persons that would be effected by this. This included the obligation to inform affected persons about any possible hazards presented by the stow in view of the heavy weather encountered enroute.

This would be particularly true in consideration of the concerns expressed by Mr. Klompe.

It is my opinion that the Inchcape had notice of the concerns of the Kent Line representative and would be obligated to inform affected persons.

The opinions expressed in this report are based on my review of the material and the application of my knowledge and experience to that material, recognizing that conflict often exists between the accounts of the witnesses and various items of documentation. This report is not an attempt to address the credibility of witnesses nor to resolve the conflicts, unless such can be done within the intrinsic evidence presented.

It should be remembered that each event and fact situation must be examined separately and within the overall context of the specific incident itself. Unless stated otherwise, the analysis and opinions stated herein cannot necessarily be applied to other incidents and situations.

I would appreciate the opportunity to review any additional material which might be made available, and reserve the right to amend my opinion, and/or this report, if that should become the case.

Sincerely,

David E. Cole

ENCLOSURE ONE (1)

## MATERIAL PROVIDED AS OF APRIL 20, 2003

1.  Deposition transcripts of:

    Joseph Marino
    Kevin Crouse
    Shawn Allison
    James McLaughlin
    George Ulmer

2.  Inchcape Shipping Services Statement of Account for Kent Line

3.  Port Log Book - MV KENT VOYAGEUR - November 28, 1999 to May 27, 2001

4.  Photographic prints and copies of various color and black/white photographs

5.  Survey Report No. 5912/2000 of Seaspan Marine Consultants, Inc.

6.  Survey Report No. 5918/2000 of Seaspan Marine Consultants, Inc.

7.  Loading Condition Summaries - MV KENT VOYAGEUR -

8.  Ballast Sounding Book - MV KENT VOYAGEUR - June 21 through June 24, 2000

9.  Ballast Operation Records - MV KENT VOYAGEUR - pages 13 and 14

10. Stevedore Working Reports - Traaans Ocean Maritime Services - June 22 and 23, 2000

11. Inchcape Shipping Services File NUmber 144731

12. Inchcape Shipping Service Statement of Fact - June 22 through June  26, 2000

13. Deck Log Abstracts - MV KENT VOYAGEUR - Voyage #0804

14. Trans Ocean Maritime Services Accident Report dated June 23, 2000

15. Employer's First Report of  Injury

16. Specification sheet - MV KENT VOYAGEUR

17. General Arrangement Finished Plan - MV KENT VOYAGEUR

18. Deck Log - MV KENT VOYAGEUR - June 1 through June 30, 2000

19. Engine Log - MV KENT VOYAGEUR - June 1 through June 30, 2000

**EXHIBIT "B"**

Telephone

**(504) 347-8683**
(504) 340-8942
FAX# (504) 348-0434



**DAVID E. COLE**
COMMANDER USCG (ret)
EXPERT WITNESS
CONSULTANT IN ADMIRALITY
AND MARITIME

*MAILING ADDRESS:*
*P.O. BOX #99*
*MARRERO, LOUISIANA*
*70073 - 0099*

July 14, 2003

Mr. Thomas More Holland
Attorney at Law
Grace Hall
1522 Locust Street
Philadelphia, Pennsylvania  19102

Re: Marino v. Trans Ocean Maritime

Dear Mr. Holland:

Since I provided my report of April 20, 2003. I have had the opportunity to review additional material consisting of:

Deposition of Joseph Levy
Complete survey report of Captain W.D. Sammons
ISO/ISM materials provided by Kent Line
Coastal Marine Survey Report

It remains my opinion that Kent Line and Inchcape had a responsibility to provide notice of hazards which exist, or which might exist, to effected persons. In this instance that would be stevedores that would be entering the cargo holds and unloading the vessel.

Kent Line has established procedures pertaining to when it provides agency services itself. This includes ensuring the port call is without incident.

Kent Line also recognizes its responsibility for the proper stowage of handling of cargo and places the responsibility for this on the Master, Chief Officer and deck watch officers. This includes the care and custody of the cargo, the conduct of cargo operations and the monitoring of all conditions germane to safety   during cargo handling.

Kent Line further states that the safety of the ship and all personnel must be of prime consideration at all times. The Chief Officer is responsible for ensuring that cargo is properly

lashed and secured. Watch Officers are required to visit cargo holds during their watch, and that the deck is to be attended during cargo operations.

I would appreciate the opportunity to review any additional material which might be made available, and reserve the right to amend my opinion, and/or this report, if that should become the case.

Sincerely,

David E. Cole



# DAVID E. COLE
### COMMANDER, USCG (ret.)
## CONSULTANT IN ADMIRALTY
## AND MARITIME



Telephone:
**(504) 340-8942**
**(504) 347-8683**
**FAX (504) 348-0434**

Mailing Address:
**POST OFFICE BOX #99**
**MARRERO, LOUISIANA**
**70073-0099**

PAGE 1 OF 3

## *RESUME OF WORK EXPERIENCE*

**PROFESSIONAL EXPERIENCE:**

**OCTOBER 1989 TO PRESENT DATE**

SERVE AS CONSULTANT IN ADMIRALTY AND MARITIME MATTERS TO LAW FIRMS, INSURANCE COMPANIES AND INDIVIDUAL OWNERS AND OIL COMPANIES. PROVIDE SUPPORT IN CIVIL LITIGATION INVOLVING GENERAL MARITIME SAFETY, COLLISION AND NAVIGATION, INCLUDING RADAR NAVIGATION, PERSONAL INJURY, DEATH, REGULATORY ANALYSIS AND RULES OF THE ROAD. QUALIFIED AS EXPERT WITNESS IN FEDERAL AND STATE COURTS.

---

**MAY 1988 TO OCTOBER 1989**            **LATHAM AND ASSOCIATES, INC.**
                                       **HARAHAN, LOUISIANA**

ENGAGED AS MARINE SURVEYOR AND CONSULTANT. RESPONSIBLE FOR THE DEVELOPMENT OF SAFETY PROGRAMS FOR THE COMMERCIAL AND RECREATIONAL BOATING COMMUNITIES.

---

**JUNE 1986 TO JULY 1987**            **8TH COAST GUARD DISTRICT**
                                      **NEW ORLEANS, LOUISIANA**

DISTRICT HEARING OFFICER-RESPONSIBLE FOR ASSESSMENT OF CIVIL PENALTIES FOR VIOLATION OF LAW OR REGULATION BASED UPON REPORTS SUBMITTED BY VARIOUS COAST GUARD UNITS, AND EVIDENCE SUBMITTED IN CONTRADICTION BY ALL SEGMENTS OF U S AND FOREIGN MARINE INDUSTRY. REQUIRED KNOWLEDGE OF ALL APPLICABLE PROVISIONS OF CODE OF FEDERAL REGULATIONS, U.S. CODE AND REVISED STATUTES, AS WELL AS AWARENESS OF CURRENT TRENDS AND CONDITIONS WITHIN VARIED SEGMENTS OF MARINE COMMUNITY.

---

**SEPTEMBER 1982 TO JUNE 1986**            **USCG MARINE INSPECTION OFFICE**
                                           **NEW ORLEANS, LOUISIANA**

SENIOR INVESTIGATING OFFICER-RESPONSIBLE FOR ALL INVESTIGATIONS OF MARINE CASUALTIES AND ACTS OF MISCONDUCT, NEGLIGENCE, INCOMPETENCE AND VIOLATION OF LAW BY MARINE INDUSTRY PERSONNEL. REPRESENTED U.S. COAST GUARD BEFORE ADMINISTRATIVE LAW JUDGE IN SUSPENSION AND REVOCATION HEARINGS. ALSO SERVED AS CIVIL RIGHTS OFFICER AND SAFETY OFFICER.

RESUME OF WORK EXPERIENCE – DAVID E COLE                                    PAGE 2 OF 3

**JULY 1978 TO SEPTEMBER 1982**                     **SECOND COAST GUARD DISTRICT**
                                                    **ST. LOUIS, MISSOURI**

CHIEF, COMMERCIAL VESSEL SAFETY-COORDINATED AND SUPERVISED THE COMMERCIAL VESSEL SAFETY PROGRAM CARRIED OUT BY 15 FIELD OFFICES THROUGHOUT THE INLAND RIVER SYSTEM. REQUIRED KNOWLEDGE OF COAST GUARD REGULATIONS AND POLICIES PERTAINING TO MATERIAL INSPECTION OF ALL COMMERCIAL VESSELS, LICENSING OF MARINE PERSONNEL AND THE INVESTIGATION OF CASUALTIES AND PERSONNEL MISCONDUCT. ASSISTED DISTRICT COMMANDER IN STREAMLINING THE CASUALTY REPORTING SYSTEM WHICH IS NOW 46 C.F.R.4. SERVED AS MEMBER OF MARINE BOARD OF INVESTIGATION INTO COLLISION OF MN "SUMMIT VENTURE" WITH TAMPA'S SUNSHINE SKYWAY BRIDGE. INVESTIGATED SINKING OF U.S. COAST GUARD BUOY TENDER IN ICEBOUND RIVER.

**JULY 1975 TO JULY 1978**                          **USCG MARINE SAFETY OFFICE**
                                                    **HUNTINGTON, WEST VIRGINIA**

EXECUTIVE OFFICER - SECOND IN COMMAND OF FIELD UNIT RESPONSIBLE FOR ALL U.S. COAST GUARD ACTIVITIES WITHIN AREA CONTAINING MOST OF WEST VIRGINIA, EASTERN KENTUCKY AND SOUTHERN OHIO. COMMENDED FOR EFFORTS DURING FLOOD RELIEF OPERATION WHEREIN OVER 100 LIVES WERE SAVED. CONDUCTED FORMAL INVESTIGATION INTO EXPLOSION AND FIRE ABOARD 8 BARGE GASOLINE TOW, AS WELL AS DISASTER CONTROL ACTIVITIES DURING INCIDENT. RESPONSIBLE FOR WELFARE AND TRAINING OF ALL MEMBERS OF UNIT IN AREA RIFE WITH PETROLEUM AND CHEMICAL FACILITIES.

**JUNE 1972 TO JULY 1975**                          **USCG MARINE INSPECTION OFFICE**
                                                    **NEW YORK, NEW YORK**

SENIOR INVESTIGATING OFFICER AND HULL INSPECTOR- INSPECTED ALL TYPES OF OCEAN-GOING VESSELS AND TANK BARGES, INCLUDING FOREIGN-FLAG PASSENGER LINERS, FREIGHTERS AND TANKERS TO ENSURE COMPLIANCE WITH U.S. AND FOREIGN SAFETY REGULATIONS. INVESTIGATED MARINE CASUALTIES AND ACTS OF NEGLIGENCE DURING THE SHIPPING BOOM OF THE VIETNAM ERA.

**APRIL 1970 TO JUNE 1972**                         **USCGC KLAMATH**
                                                    **SEATTLE, WASHINGTON**

OPERATIONS OFFICER, NAVIGATOR-RESPONSIBLE FOR ALL ASPECTS OF OPERATIONS ON THIS HIGH ENDURANCE COAST GUARD CUTTER, INCLUDING SEARCH AND RESCUE, MILITARY READINESS, OCEANOGRAPHIC AND METEOROLOGICAL OBSERVATIONS, LAW ENFORCEMENT AND NAVIGATIONAL ASSISTANCE TO MARINERS AND AIRCRAFT. CUTTER MADE NUMEROUS PATROLS THROUGHOUT THE NORTH PACIFIC OCEAN, INCLUDING ALASKA AND JAPAN AND TWO PERIODS OF EXERCISES WITH THE U.S. NAVY IN SAN DIEGO, CALIFORNIA.

RESUME OF WORK EXPERIENCE - DAVID E COLE                              PAGE 3 OF 3


**APRIL 1967 TO APRIL 1970**                         **USCG MARINE INSPECTION OFFICE**
                                                     **SEATTLE, WASHINGTON**

HULL INSPECTOR, LICENSE EXAMINER-INITIAL TOUR OF DUTY AND PERIOD OF TRAINING IN MARINE INSPECTION. BECAME FULLY QUALIFIED IN HULL MATERIAL INSPECTION AND LICENSING PROCEDURES. SERVED AS RESIDENT INSPECTOR AT MAJOR SHIPYARD.

## EDUCATION:

J.D. - LOYOLA UNIVERSITY OF NEW ORLEANS SCHOOL OF LAW-DECEMBER 1987

EXTENSIVE GRADUATE WORK IN TRANSPORTATION MANAGEMENT, 1972-1974 STATE UNIVERSITY OF NEW YORK MARITIME COLLEGE, NEW YORK, NEW YORK

B.S. - MARINE TRANSPORTATION, SUNY MARITIME COLLEGE, 1967. LICENSED DECK OFFICER AND ABLE SEAMAN UNLIMITED.

## ADDITIONAL EXPERIENCE AND TRAINING:

INDUSTRY TRAINEE, AMERICAN WATERWAYS OPERATORS, INC.
DALE CARNEGIE COURSE IN EFFECTIVE SPEAKING
OFFSHORE OIL TECHNOLOGY, USL, LAFAYETTE, LOUISIANA
TOASTMASTERS INTERNATIONAL
      PAST CLUB PRESIDENT (8-CLUBS)
      PAST AREA GOVERNOR
TULANE ADMIRALTY LAW INSTITUTE
LAW CLERK/ASSISTANT TO ATTORNEY-HILLEREN, BAINS AND SMITH LAW FIRM
PUBLISHED ARTICLE - THE FISHBOAT MAGAZINE

## MEMBER:

AMERICAN BAR ASSOCIATION
LOUISIANA BAR ASSOCIATION
NEW ORLEANS BAR ASSOCIATION
MARITIME LAW ASSOCIATION OF THE UNITED STATES
SOUTHEASTERN ADMIRALTY LAW INSTITUTE
TECHNICAL INFORMATION EXCHANGE FOR MARINE PROFESSIONALS
PROPELLER CLUB
ASSOCIATION OF TRIAL LAWYERS OF AMERICA
LOUISIANA TRIAL LAWYERS ASSOCIATION
SOCIETY OF NAVAL ARCHITECTS AND MARINE ENGINEERS

**EXHIBIT "C"**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSEPH MARINO | § | |
| **Plaintiff,** | § | |
| v. | § | |
| | § | |
| KENT LINE INTERNATIONAL | § | |
| d/b/a    VOYAGEUR SHIPPING LTD., et al. | § | CIVIL ACTION NO: 02-CV-4489 |
| **Defendants.** | § | |
| | § | |

## AFFIDAVIT OF DAVID E. COLE

I, David E. Cole, hereby state under oath subject to the laws of purgery:

1.    Pursuant to the request of Thomas More Holland, Esquire I have reviewed the record and the original motion for summary judgment by Kent Line and the recent reply arguments from Defendant Kent Line in support of its motion for summary judgment.

2.    Significantly I have reviewed the May 18, 2000 memo from Kent Line representative, Dick W. Klompe. I do not have a recollection of receiving or reviewing that document from Mr. Holland early in this litigation.  It is my understanding that Mr. Holland is presenting it to the Court in opposition to summary judgment as Plaintiff's Exhibit H, this was exhibit number 9 to Mr. Crouse's deposition, Plaintiff 's Exhibit E.

3.    The subject of the memo is Kent Voyageur Voy. 2005-Gloucester City.

4.    Prominently  presented in the lower portion of the document is the caution that the stow weighs in excess of the capacity of the vessel cranes and that the shore crane should be utilized instead of the vessel cranes.

5.    Also of significance in this memo [Plaintiff's Exhibit H] is that it was directed to Joseph Levy.  It is my understanding that Joseph Levy is a Defendant in this action and that he was employed by Defendant Holt.  The memorandum was also copied to four individuals from Defendant Inchcape Shipping. One



ALL-STATE LEGAL®    PLAINTIFF'S EXHIBIT

of these individuals is named Shawn.  It is believed that Shawn is Shawn Allison the 30(b)(6) deponent presented by Defendant Inchcape. Inchcape of course was acting as the vessel's agent.

6.  In my opinion Kent Line had the duty to file a protest for the "signs of change in the status of cargo" captions log KL073 6/12/00, copy attached.

7.  In this manner Kent Line's crew and its agent Defendant Inchcape would have been on notice and would have more likely been made known to the stevedore.

8.  Mr. Crouse states in deposition while reading the ship's log (dated June 10, 2000-June 14, 2003 Exhibit E) that wind speeds were increasing from force 6 up to force 10. June 12th at force 6 the cargo had noticeably switched upon an open hatch survey.  The coupling of wind speeds and noticed cargo shifting, viewed from the main deck, would give rise to a reasonable expectation that lower stowed cargo would have shifted.  Under the circumstances a letter of Marine Protest should have been issued by Captain Biggs. (Crouse Depo, pp. 64-66, Exhibit E).

9.  While the mathematic calculations of Mr. Crouse are accurate it is my opinion that one and one half degree list will result in noticeable movement of the vessel. This is especially true in light of Plaintiff's Exhibit H.  It is more than conceivable or coincidental that the list occurred and was attributable to the utilization of the cranes on the vessel rather than the shore cranes as Mr. Klompe cautioned Defendant Joseph Levy the agent of Defendant Holt and others in the memorandum of May 18, 2000 (Plaintiff's Exhibit H).

10.  The calculations of Mr. Crouse assume only normal circumstances.  The calculations of stability by Mr. Crouse apparently ignored the facts of record: the e-mail dated 6/24/00 at 17:55 David Reid concerning how low the tide was during the durations of the vessel's stay. There are no facts that reveal whether Mr. Crouse gave any consideration to the result of Mr. Joseph Levy not assuring compliance with the caution of Mr. Klompe (Exhibit H).

11.  Based upon my experience and expertise and my interpretation of these record facts Mr. Crouse gave no consideration of the fact that the vessel may have been positioned on the river bottom during the off loading operations; and that consequently the vessel was freed from being stuck in the muck at the water's bottom after the unloading began when the unloading process changed from the dock cranes to the vessel cranes.

12.  In other words, the switching from shore cranes to vessel cranes which is documented in the record ship log 6/23/00; KL084- caused what is known as

heeling moment.  Specifically this phrase heeling moment means that the vessel would list as the weight is moved outboard from the center line.

13.    This was caused by the utilization of the vessel crane especially since the change in the utilization of the vessel crane occurred immediately after the shore crane was being used and significant weight in the cargo was in the process of being removed.  Certainly this cause and effect was not contemplated by Mr. Crouse.

14.    Furthermore in my opinion it was important for Defendant Kent Line to control the ships gear and equipment by making more clear the importance that ship crane would not be used.

15.    Appended hereto is a copy of my resume.


DAVID E. COLE

SUBSCRIBED AND SWORN TO
BEFORE ME ON THIS 5th DAY
OF September ,2003

NOTARY PUBLIC

NOTARIAL SEAL
JAMILA BELLAMY, Notary Public
City of Philadelphia, Phila. County
My Commission Expires May 13, 2006




# DAVID E. COLE
### *COMMANDER, USCG (ret.)*
## CONSULTANT IN ADMIRALTY
## AND MARITIME

Telephone:
**(504) 340-8942**
(504) 347-8683
FAX (504) 348-0434

Mailing Address:
**POST OFFICE BOX #99**
**MARRERO, LOUISIANA**
**70073-0099**

PAGE 1 OF 3

## *RESUME OF WORK EXPERIENCE*

**PROFESSIONAL EXPERIENCE:**

**OCTOBER 1989 TO PRESENT DATE**

SERVE AS CONSULTANT IN ADMIRALTY AND MARITIME MATTERS TO LAW FIRMS, INSURANCE COMPANIES AND INDIVIDUAL OWNERS AND OIL COMPANIES. PROVIDE SUPPORT IN CIVIL LITIGATION INVOLVING GENERAL MARITIME SAFETY, COLLISION AND NAVIGATION, INCLUDING RADAR NAVIGATION, PERSONAL INJURY, DEATH, REGULATORY ANALYSIS AND RULES OF THE ROAD. QUALIFIED AS EXPERT WITNESS IN FEDERAL AND STATE COURTS.

---

**MAY 1988 TO OCTOBER 1989**                       **LATHAM AND ASSOCIATES, INC.**
                                                   **HARAHAN, LOUISIANA**

ENGAGED AS MARINE SURVEYOR AND CONSULTANT. RESPONSIBLE FOR THE DEVELOPMENT OF SAFETY PROGRAMS FOR THE COMMERCIAL AND RECREATIONAL BOATING COMMUNITIES.

---

**JUNE 1986 TO JULY 1987**                         **8TH COAST GUARD DISTRICT**
                                                   **NEW ORLEANS, LOUISIANA**

DISTRICT HEARING OFFICER-RESPONSIBLE FOR ASSESSMENT OF CIVIL PENALTIES FOR VIOLATION OF LAW OR REGULATION BASED UPON REPORTS SUBMITTED BY VARIOUS COAST GUARD UNITS, AND EVIDENCE SUBMITTED IN CONTRADICTION BY ALL SEGMENTS OF U S AND FOREIGN MARINE INDUSTRY. REQUIRED KNOWLEDGE OF ALL APPLICABLE PROVISIONS OF CODE OF FEDERAL REGULATIONS, U.S. CODE AND REVISED STATUTES, AS WELL AS AWARENESS OF CURRENT TRENDS AND CONDITIONS WITHIN VARIED SEGMENTS OF MARINE COMMUNITY.

---

**SEPTEMBER 1982 TO JUNE 1986**                    **USCG MARINE INSPECTION OFFICE**
                                                   **NEW ORLEANS, LOUISIANA**

SENIOR INVESTIGATING OFFICER-RESPONSIBLE FOR ALL INVESTIGATIONS OF MARINE CASUALTIES AND ACTS OF MISCONDUCT, NEGLIGENCE, INCOMPETENCE AND VIOLATION OF LAW BY MARINE INDUSTRY PERSONNEL. REPRESENTED U.S. COAST GUARD BEFORE ADMINISTRATIVE LAW JUDGE IN SUSPENSION AND REVOCATION HEARINGS. ALSO SERVED AS CIVIL RIGHTS OFFICER AND SAFETY OFFICER.

RESUME OF WORK EXPERIENCE -- DAVID E COLE                                    PAGE 2 OF 3

**JULY 1978 TO SEPTEMBER 1982**                    SECOND COAST GUARD DISTRICT
                                                   ST. LOUIS, MISSOURI

CHIEF, COMMERCIAL VESSEL SAFETY-COORDINATED AND SUPERVISED THE COMMERCIAL VESSEL
SAFETY PROGRAM CARRIED OUT BY 15 FIELD OFFICES THROUGHOUT THE INLAND RIVER SYSTEM.
REQUIRED KNOWLEDGE OF COAST GUARD REGULATIONS AND POLICIES PERTAINING TO MATERIAL
INSPECTION OF ALL COMMERCIAL VESSELS, LICENSING OF MARINE PERSONNEL AND THE
INVESTIGATION OF CASUALTIES AND PERSONNEL MISCONDUCT. ASSISTED DISTRICT COMMANDER
IN STREAMLINING THE CASUALTY REPORTING SYSTEM WHICH IS NOW 46 C.F.R.4. SERVED AS MEMBER
OF MARINE BOARD OF INVESTIGATION INTO COLLISION OF MN "SUMMIT VENTURE" WITH TAMPA'S
SUNSHINE SKYWAY BRIDGE. INVESTIGATED SINKING OF U.S. COAST GUARD BUOY TENDER IN
ICEBOUND RIVER.

**JULY 1975 TO JULY 1978**                         USCG MARINE SAFETY OFFICE
                                                   HUNTINGTON, WEST VIRGINIA

EXECUTIVE OFFICER - SECOND IN COMMAND OF FIELD UNIT RESPONSIBLE FOR ALL U.S. COAST
GUARD ACTIVITIES WITHIN AREA CONTAINING MOST OF WEST VIRGINIA, EASTERN KENTUCKY AND
SOUTHERN OHIO. COMMENDED FOR EFFORTS DURING FLOOD RELIEF OPERATION WHEREIN OVER
100 LIVES WERE SAVED. CONDUCTED FORMAL INVESTIGATION INTO EXPLOSION AND FIRE ABOARD 8
BARGE GASOLINE TOW, AS WELL AS DISASTER CONTROL ACTIVITIES DURING INCIDENT. RESPONSIBLE
FOR WELFARE AND TRAINING OF ALL MEMBERS OF UNIT IN AREA RIFE WITH PETROLEUM AND
CHEMICAL FACILITIES.

**JUNE 1972 TO JULY 1975**                         USCG MARINE INSPECTION OFFICE
                                                   NEW YORK, NEW YORK

SENIOR INVESTIGATING OFFICER AND HULL INSPECTOR- INSPECTED ALL TYPES OF OCEAN-GOING
VESSELS AND TANK BARGES, INCLUDING FOREIGN-FLAG PASSENGER LINERS, FREIGHTERS AND
TANKERS TO ENSURE COMPLIANCE WITH U.S. AND FOREIGN SAFETY REGULATIONS. INVESTIGATED
MARINE CASUALTIES AND ACTS OF NEGLIGENCE DURING THE SHIPPING BOOM OF THE VIETNAM
ERA.

**APRIL 1970 TO JUNE 1972**                        USCGC KLAMATH
                                                   SEATTLE, WASHINGTON

OPERATIONS OFFICER, NAVIGATOR-RESPONSIBLE FOR ALL ASPECTS OF OPERATIONS ON THIS HIGH
ENDURANCE COAST GUARD CUTTER, INCLUDING SEARCH AND RESCUE, MILITARY READINESS,
OCEANOGRAPHIC AND METEOROLOGICAL OBSERVATIONS, LAW ENFORCEMENT AND NAVIGATIONAL
ASSISTANCE TO MARINERS AND AIRCRAFT. CUTTER MADE NUMEROUS PATROLS THROUGHOUT THE
NORTH PACIFIC OCEAN, INCLUDING ALASKA AND JAPAN AND TWO PERIODS OF EXERCISES WITH THE
U.S. NAVY IN SAN DIEGO, CALIFORNIA.

RESUME OF WORK EXPERIENCE - DAVID E COLE

PAGE 3 OF 3

APRIL 1967 TO APRIL 1970        **USCG MARINE INSPECTION OFFICE SEATTLE, WASHINGTON**

HULL INSPECTOR, LICENSE EXAMINER-INITIAL TOUR OF DUTY AND PERIOD OF TRAINING IN MARINE INSPECTION. BECAME FULLY QUALIFIED IN HULL MATERIAL INSPECTION AND LICENSING PROCEDURES. SERVED AS RESIDENT INSPECTOR AT MAJOR SHIPYARD.

## EDUCATION:

J.D. - LOYOLA UNIVERSITY OF NEW ORLEANS SCHOOL OF LAW-DECEMBER 1987

EXTENSIVE GRADUATE WORK IN TRANSPORTATION MANAGEMENT, 1972-1974 STATE UNIVERSITY OF NEW YORK MARITIME COLLEGE, NEW YORK, NEW YORK

B.S. - MARINE TRANSPORTATION, SUNY MARITIME COLLEGE, 1967. LICENSED DECK OFFICER AND ABLE SEAMAN UNLIMITED.

## ADDITIONAL EXPERIENCE AND TRAINING:

INDUSTRY TRAINEE, AMERICAN WATERWAYS OPERATORS, INC.
DALE CARNEGIE COURSE IN EFFECTIVE SPEAKING
OFFSHORE OIL TECHNOLOGY, USL, LAFAYETTE, LOUISIANA
TOASTMASTERS INTERNATIONAL
       PAST CLUB PRESIDENT (8-CLUBS)
       PAST AREA GOVERNOR
TULANE ADMIRALTY LAW INSTITUTE
LAW CLERK/ASSISTANT TO ATTORNEY-HILLEREN, BAINS AND SMITH LAW FIRM
PUBLISHED ARTICLE - THE FISHBOAT MAGAZINE

## MEMBER:

AMERICAN BAR ASSOCIATION
LOUISIANA BAR ASSOCIATION
NEW ORLEANS BAR ASSOCIATION
MARITIME LAW ASSOCIATION OF THE UNITED STATES
SOUTHEASTERN ADMIRALTY LAW INSTITUTE
TECHNICAL INFORMATION EXCHANGE FOR MARINE PROFESSIONALS
PROPELLER CLUB
ASSOCIATION OF TRIAL LAWYERS OF AMERICA
LOUISIANA TRIAL LAWYERS ASSOCIATION
SOCIETY OF NAVAL ARCHITECTS AND MARINE ENGINEERS

## CERTIFICATE OF SERVICE

I, David T. Garnes, hereby certify that the foregoing was served this 3ʳᵈ day

of October, 2003, via hand delivery, upon the following:


Thomas More Holland, Esquire
Law Offices of Thomas More Holland
Grace Hall
1522 Locust Street
Philadelphia, PA  19102

Anne Michelle Higgins, Esquire
Rawle & Henderson
Widener Building
1 South Penn Square
Philadelphia, PA 19107


Attorney for Plaintiff
Joseph Marino

Attorney for Defendant
Inchcape Shipping



Faustino Mattioni, Esquire
Mattioni, Ltd.
399 Market Street
2ⁿᵈ Floor
Philadelphia, PA  19106

Attorney for SLS, Inc.


DAVID T. GARNES, ESQUIRE