LAW OFFICES OF THOMAS MORE HOLLAND
BY: **THOMAS MORE HOLLAND**
IDENTIFICATION NO.: 43517
1522 LOCUST STREET
GRACE HALL
PHILADELPHIA, PA 19102
(215) 592-8080

### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOSEPH MARINO** | § | |
|       **Plaintiff,** | § | |
|   **v.** | § | |
| | § | |
| **KENT LINE INTERNATIONAL** | § | |
| **d/b/a  VOYAGEUR SHIPPING LTD., et al.** | § | **CIVIL ACTION NO: 02-CV-4488** |
|       **Defendants.** | § | |

### PLAINTIFFS' PROPOSED POINTS FOR CHARGE

### JURY INSTRUCTION # 1

Plaintiff,  Joseph Marino, a longshore worker, seeks damages under the Longshore and

Harbor Workers' Compensation Act for personal injuries suffered while working aboard the vessel

KENT LINE VOYAGEUR, owned and operated by Defendant Kent Line.  Plaintiff, Joseph Marino,

claims that Plaintiff's injuries were caused  by the negligence of Defendants Kent Line, Inchcape,

SLS, Inc., (Holt) and Joseph Levy.

33 U.S.C.A. § 905(b). See Rodriguez v. Compass Shipping Co., 451 U.S. 596, 603, 101 S.Ct. 1945,
1950, 68 L.Ed.2d 472 (1981).

**JURY INSTRUCTION # 2**

The Federal Longshore and Harbor Workers' Compensation Act provides that in the event an employee covered by the Act is injured by the negligence of a vessel, that employee is entitled to recover damages merely to cover for those injuries, but may also bring simultaneous action against the vessel for damages not recoverable under the Longshore and Harbor Workers' Compensation Act.

See 33 U.S.C.A. § 905(b).

## JURY INSTRUCTION # 3

## LEGAL CAUSE

In order to prove the essential elements of Plaintiff's claim, the burden is upon Plaintiff,

Joseph Marino, to establish by a preponderance of the evidence in the case the following facts:

First: That Plaintiff Joseph Marino is a worker covered by the Longshore and Harbor Workers'

Compensation Act;

Second: That Plaintiff Joseph Marino was injured while working on a vessel in navigable

waters of the United States;

Third: That Defendant Kent Line was negligent in one or more of the particulars alleged; and

Fourth: That Defendant Kent Line's negligence was a factual cause of some injury and

consequently damage was sustained by Plaintiff Joseph Marino.


Since the longshore or harbor worker's claim against the defendant is essentially a common
law claim for negligence, the "proximate cause" form of submission is retained as opposed to the
"legal cause" concepts that are appropriate in FELA and Jones Act cases. See Federal Marine
Terminals, Inc. v. Burnside Shipping Co., 394 U.S. 404, 415, 89 S.Ct. 1144, 1150, 22 L.Ed.2d
371 (1969) (shipowner's duty to exercise reasonable care gave rise to cause of action for any
damages proximately caused by breach); Manning v. M/V Sea Road, 417 F.2d 603 (5th
Cir.1969) (vessel owner for damages "legally caused" by negligence).

33 U.S.C.A. § 903(a) limits coverage of the Act to injuries "occurring upon the navigable
waters of the United States (including any adjoining pier, wharf, dry dock, terminal, building
way, marine railway, or other adjoining area customarily used by an employer in loading,
unloading, repairing, dismantling, or building a vessel)." In order to be a "navigable water," the
body of water must function as a continuous interstate highway for commerce and must be
capable of floating logs, boats, and rafts. See Rizzi v. Underwater Construction Corp., 84 F.3d
199, 202 (6th Cir.), cert. denied, 519 U.S. 931, 117 S.Ct. 302, 136 L.Ed.2d 220 (1996).

## JURY INSTRUCTION # 4

## SECTION 905(b) NEGLIGENCE CHARGE

If you find that the Plaintiff, Joseph Marino, was covered by the LHWCA at the time of his injury, then you must determine whether Plaintiff's injury was caused by the negligence of the Defendant Kent Line, the owner and operator of the vessel KENT VOYAGEUR. The Defendant does not owe Plaintiff the duty to provide a seaworthy vessel; the Defendant is liable only if he was guilty of negligence, which was the legal cause of the Plaintiff's injury.

Negligence is the failure to exercise reasonable care under the circumstances. A vessel operator such as Defendant Kent Line must exercise reasonable care before the Plaintiff's employer, the stevedore, began its operations on the vessel. This means that the Defendant must use reasonable care to have the vessel and its equipment in such condition that an expert and experienced stevedore would be able, by the exercise of reasonable care, to carry on its work on the vessel with reasonable safety to persons and property. This means that the Defendant must warn the Plaintiff's employer, the stevedore, of a hazard on the ship, or a hazard with respect to the ship's equipment, if:

The Defendant knew about the hazard, or should have discovered it in the exercise of reasonable care, and

The hazard was one which was likely to be encountered by the Plaintiff's employer in the course of his operations in connection with the Defendant's vessel, and

The hazard was one which the Plaintiff's employer did not know about, and which would

-4-

not be obvious to or anticipated by a reasonably competent stevedore in the performance of his work. Even if the hazard was one about which the Plaintiff's employer knew, or which would be obvious or anticipated by a reasonably competent stevedore, the Defendant must exercise reasonable care to avoid the harm to Plaintiff, if the hazard was one which Defendant knew or should have known, or the Plaintiff's employer would not or could not correct and the Plaintiff could not or would not avoid.

The standard of care which a vessel operator owes to the Plaintiff after the Plaintiff's employer began its operations on the vessel is different.

If, after the Plaintiff's employer began operations on the vessel, and the Defendant actively involved itself in those operations, the Defendant is liable if it failed to exercise reasonable care in doing so, and such failure was the cause of Plaintiff's injuries.

If, after the plaintiff's employer began operations on the vessel, the Defendant maintained control over equipment or over an area of the vessel on which the Plaintiff could reasonably have been expected to go in the performance of his duties, the Defendant must use reasonable care to avoid exposing the Plaintiff to harm from the hazards the Plaintiff reasonably could have been expected to encounter from such equipment or in such area.

If, after the Plaintiff's employer began its operations on the vessel, the Defendant learned that an apparently dangerous condition existed (including a condition which existed before the Plaintiff's employer began its operations) or has developed in the course of those operations, the Defendant vessel owner must use reasonable care to intervene to protect the Plaintiff against injury from that condition, only if the Plaintiff's employer's judgment in continuing to work in the face of such a condition was so obviously improvident that the

Defendant should have known that the condition created an unreasonable risk of harm to the Plaintiff. In determining whether the Plaintiff's employer's judgment is "so obviously improvident" that the Defendant should have intervened, you may consider that the Plaintiff's employer has the primary duty to provide a safe place to work for Plaintiff and its other employees, and that the Defendant ordinarily must justifiably rely upon the Plaintiff's employer to provide his employees with a reasonably safe place to work. In determining whether the defendant justifiably relied upon the decision of the Plaintiff's employer to continue the work despite the condition, you should consider the expertise of the Plaintiff's employer, the expertise of the Defendant, and any other factors which would tend to establish whether the Defendant was negligent in failing to intervene into the operations of the Plaintiff's employer.

   1. This sentence does not appear in the Scindia decision (see footnote 10, post) but appears warranted from a number of subsequent lower court decisions. See, e.g., Pluyer v. Mitsui O.S.K. Lines, Ltd., 664 F.2d 1243 (5th Cir.1982); Griffith v. Wheeling-Pittsburgh Steel Corp., 657 F.2d 25 (3d Cir.1981); Harris v. Reederei, 657 F.2d 53 (4th Cir.1981); Moore v. M.P. Howlett, Inc., 704 F.2d 39 (2d Cir.1983). The language selected should not conflict with the rule that the shipowner has no duty to anticipate the negligence of the stevedore. See, e.g., Polizzi v. M/V Zephyros II Monrovia, 860 F.2d 147 (5th Cir.1988). The Supreme Court has held, for example, that the exercise of reasonable care does not require the ship-owner to supervise the ongoing operations of the loading stevedore (or other stevedores who handle the cargo before its arrival in port) or to inspect the completed stow. Howlett v. Birkdale Shipping Co., S.A., 512 U.S. 92, 114 S.Ct. 2057, 129 L.Ed.2d 78 (1994), on remand, 1995 WL 27104 (E.D.Pa.1995). In Howlett, the Supreme Court dealt with the turnover duty to warn of latent defects in the cargo stow and cargo area, and held that the duty is a narrow one.
   2. Scindia Steam Navigation Co. v. De Los Santos, 451 U.S. 156, 101 S.Ct. 1614, 68 L.Ed.2d 1 (1981); Randolph et al. v. Laeisz, 896 F.2d 964 (5th Cir.1990).

## JURY INSTRUCTION # 5

Plaintiff Joseph Marino contends that Defendant vessel KENT VOYAGEUR's conduct was negligent, in that defendant vessel KENT VOYAGEUR failed to exercise ordinary care under the circumstances. Specifically, plaintiff Joseph Marino claims that defendant vessel KENT VOTAGEUR was negligent in one or more of the following particulars:

a.    failure to issue a Letter of Marine Protest because of the stormy weather at sea;

b.    failure to issue a Letter of Marine Protest because the cargo hold ventilation was restricted/regulated during the periods of stormy weather;

c.    failure to issue a Letter of Marine Protest because the cargo had shown signs of shifting during the stormy weather at sea;

d.    whether the Captain, Ian Biggs, of the vessel KENT VOYAGEUR mislead the stevedore services by reporting fair weather on the voyage, rather than the stormy weather;

e.    whether the cargo hatch inspections while at sea were performed in a reasonable manner, and whether these inspections were in conformity with Kent Line's policies and/or the industry standard, and whether the industry standard is reasonable; and

f.    whether the vessel's ship log entries were made credibly and contemporaneously with the events on the vessel.

An injured long shore or harbor worker cannot bring an unseaworthiness claim, but is limited to a claim for negligence against the vessel. 33 U.S.C.A. § 905(b). See Randall v. Chevron U.S.A., Inc., 13 F.3d 888, 895 (5th Cir.), cert. denied, 513 U.S. 994, 115 S.Ct. 498, 130 L.Ed.2d 408 (1994), overruled on other grounds, Bienvenu v. Texaco, Inc., 164 F.3d 901 (5th Cir.1999).

## JURY INSTRUCTION # 6

———

Defendant Kent Line owes a duty of using ordinary care in providing plaintiff Joseph Marino a safe place to work. This duty means that defendant Kent Line must be responsible for conditions in existence when the stevedore operations begin, but is under no duty to supervise such operations.

Thus, as to conditions existing when the workers began work on board the ship, you may find that defendant Kent Line was negligent in its turnover duties, if you find the following:

First: That defendant Kent Line knew of, or by the exercise of reasonable care could have discovered, the condition on board ship that led to plaintiff Joseph Marino's injury, or if Defendant Kent Line attempted to obscure a dangerous condition by not credibly and contemporaneously making entries into the ship's log;

Second: That defendant Kent Line knew or should have known that the unreported condition would pose an unreasonable risk of harm to workers not on the voyage, but would later be working on board the ship; and

Third: That defendant Kent Line failed to exercise reasonable care to protect the longshore workers against that danger.


The standard of care which a vessel operator owes to the Plaintiff after the Plaintiff's employer began its operations on the vessel is different.  If after the Plaintiff's employer began operations on the vessel and the Defendant actively involved itself in those operations, then the Defendant is liable, if

First: That Defendant failed to exercise reasonable care in doing so, and such failure was the

cause of Plaintiff's injuries.

Second:    That if after the plaintiff's employer began operations on the vessel, the Defendant maintained control over equipment or over any area of the vessel on which the Plaintiff could reasonably have been expected to go in the performance of his duties, then the Defendant must use reasonable care to avoid exposing the Plaintiff to harm from the hazards the Plaintiff reasonably could have been expected to encounter from such equipment or in such area.

If, after stevedoring operations have begun, defendant Kent Line learns of unsafe conditions on board ship, and it appears that the stevedore will not remedy the unsafe condition, then defendant Kent Line must cause the unsafe condition to be remedied or must halt the stevedoring operation. Thus, after the stevedoring operation was begun, you may find defendant Kent Line negligent if you believe:

First: That defendant Kent Line knew of the condition on board ship that led to plaintiff Joseph Marino's injury;

Second: That defendant Kent Line knew or should have known that the condition would pose an unreasonable risk of harm to workers working on board ship; and

Third: That defendant Kent Line failed to exercise reasonable care to protect the workers against that danger, by causing the condition to be remedied or by halting the stevedoring operation.

This instruction is based upon the formulation developed by the court in Johnson v. A/S Ivarans Rederi, 613 F.2d 334 (1st Cir.1980), cert. dismissed, 449 U.S. 1135, 101 S.Ct. 959, 67 L.Ed.2d 325 (1981). See also Callen v. Oulu O/Y, 711 F.Supp. 244, 248 (E.D.Pa.1989).

In Scindia Steam Navigation Company Ltd. v. De Los Santos, 451 U.S. 156, 160-61, 101 S.Ct. 1614, 1618-19, 68 L.Ed.2d 1 (1981), the Supreme Court indicated a general preference for the

application of Sections 343 and 343A of the Restatement (Second) of Torts, although the opinion does not give a full endorsement of the holdings of those courts that had applied these sections. The Court in Scindia addressed the duty of a shipowner that has turned the ship over to the stevedoring operation. The Court commented:

> This duty [of the shipowner] extends at least to exercising ordinary care under the circumstances to have the ship and its equipment in such condition that an experienced stevedore will be able by the exercise of reasonable care to carry on its cargo operations with reasonable safety to persons and property, and to warning the stevedore of any hazards on the ship or with respect to its equipment that are known to the vessel or should be known to it in the exercise of reasonable care, that would likely be encountered by the stevedore in the course of his cargo operations and that are not known by the stevedore and would not be obvious to or anticipated by him if reasonably competent in the performance of his work ... if [the shipowner] fails at least to warn the stevedore of hidden danger which would have been known to him in the exercise of reasonable care, he has breached his duty and is liable if his negligence causes injury to a longshoreman. 451 U.S. at 166-67, 101 S.Ct. at 1622 (citations omitted).

See also Scala v. Moore McCormack Lines, Inc., 985 F.2d 680, 685 (2d Cir.1993) (approving instructions regarding shipowner's duty of care pursuant to 33 U.S.C.A. § 905(b), where instructions closely tracked Supreme Court's holding in Scindia Steam Navigation Co. v. De Los Santos, 451 U.S. 156, 166- 67, 172, 101 S.Ct. 1614, 1621-22, 1624, 68 L.Ed.2d 1 (1981)); Kakavas v. Flota Oceanica Brasileira, S. A., 789 F.2d 112, 119-20 (2d Cir.) (Friendly, J.), cert. denied, 479 U.S. 853, 107 S.Ct. 186, 93 L.Ed.2d 120 (1986) (reversing where jury instruction departed from standards set forth in Scindia); Evans v. Transportacion Maritime Mexicana S.S. "Campeche," 639 F.2d 848, 857-60 (2d Cir.1981) (finding trial court's charge was marred by three reversible errors: first, for charging as to shipowner's duty to provide "safe place to work" without adequately defining the limits of that duty; second, for paraphrasing Section 413 of the Restatement (Second) of Torts as an independent basis for liability; and third, for failing to inform the jury that, for purposes of shipowner anticipation, they could consider the stevedore's primary responsibility to correct unsafe conditions); Napoli v. Hellenic Lines, Ltd., 536 F.2d 505, 507-08 (2d Cir.1976) (adopting standard enunciated in Section 343A of Restatement (Second) of Torts, and holding district court erred in instructing jury that shipowner owed no duty to warn longshoremen of open and obvious dangerous condition).

## JURY INSTRUCTION # 7

_____A worker is covered by the Longshore and Harbor Workers Act if the worker is engaged in maritime employment and is injured at a place within the coverage of the act. These are two separate requirements.

See 33 U.S.C.A. § 902(3).

## JURY INSTRUCTION # 8

Plaintiff Joseph Marino, a longshoreman worker, seeks damages under the Longshore and Harbor

Workers' Compensation Act for personal injuries suffered while working aboard the vessel

KENT LINE VOYAGEUR, owned and operated by defendant Kent Line. Plaintiff Joseph

Marino claims that plaintiff's injuries were caused by the negligence of defendants Kent Line;

Inchcape; SLS, Inc. (Holt) and Joseph Levy.

33 U.S.C.A. § 905(b). See Rodriguez v. Compass Shipping Co., 451 U.S. 596, 603, 101 S.Ct.

1945, 1950, 68 L.Ed.2d 472 (1981).

# JURY INSTRUCTION # 9

The Federal Longshore and Harbor Workers' Compensation Act provides that in the event an employee covered by the Act is injured by the negligence of a vessel, that employee is entitled to recover damages for those injuries and may bring an action against the vessel.See 33 U.S.C.A. § 905(b).

## JURY INSTRUCTION # 10

A worker is engaged in "maritime employment" if the worker is a longshoreman or other person engaged in longshoring operations or any harbor-worker, including a ship repairman, shipbuilder, or ship-breaker. See 33 U.S.C.A. § 902(3).

## JURY INSTRUCTION # 11

In order to be a "navigable water," the body of water must function as a continuous interstate highway for commerce and must be capable of floating logs, boats, and rafts.

See United States v. Appalachian Elec. Power Co., 311 U.S. 377, 406, 61 S.Ct. 291, 299, 85 L.Ed. 243 (1940); Rizzi v. Underwater Construction Corp., 84 F.3d 199, 202 (6th Cir.), cert. denied, 519 U.S. 931, 117 S.Ct. 302, 136 L.Ed.2d 220 (1996).

## JURY INSTRUCTION # 12

An injury or damage is factually caused by an act, or failure to act, whenever it appears from the evidence in the case that the act or omission played a part in bringing about or actually causing the injury or damage, and that the injury or damage was either a direct result or a reasonably probable consequence of the act or omission.

See Edmonds v. Compagnie Generale Transatlantique, 443 U.S. 256, 99 S.Ct. 2753, 61 L.Ed.2d 521, rehearing denied, 444 U.S. 889, 100 S.Ct. 194, 62 L.Ed.2d 126 (1979). In Edmonds, the Supreme Court held that the stevedore company's negligence could not be imputed to the plaintiff and would not be used in apportioning fault in a longshore or harbor workers' case. To use the word "substantial" in the definition of proximate cause, in these circumstances, might be misleading.

## JURY INSTRUCTION # 13

In ordinary cases, the mere fact that an accident happens does not furnish evidence that it was caused by any person's negligence, and plaintiff Joseph Marino must point to some negligent act or omission on the part of defendant Kent Line.

If you find, however,

First, that injury to plaintiff Joseph Marino was proximately caused by an accident on board the vessel KENT VOYAGEUR;

Second, that at the time of the accident the cargo was under the exclusive control or management of defendant Kent Line so that defendant Kent Line had superior means for determining the cause of the accident; and

Third, that in the normal course of events the accident and ensuing injury would not have occurred without the negligence of the person having control and management of the cargo, then you may find that the accident and ensuing injury were caused by the negligence of defendant Kent Line.

Although you may so find, you are not compelled so to find. You should consider all facts and circumstances in evidence, and also the defendant's explanation. You are reminded that plaintiff Joseph Marino has the burden of proving defendant's negligence by a preponderance of the evidence.

The refusal of a res ipsa loquitur instruction is error if there is occasion for it. Olsen v. States Line, 378 F.2d 217 (9th Cir.1967).

## JURY INSTRUCTION # 14

By way of defense to plaintiff's claim, defendant Kent Line denies that there was any negligence on its part that proximately caused any injury or damage to plaintiff Joseph Marino. Defendant Kent Line also alleges that, if the accident was caused by negligence on the part of anyone, it was the negligence of plaintiff Joseph Marino or the negligence of plaintiff's employer, the stevedore company, that was the sole or only cause of the accident and of any consequent injury or damage to plaintiff Joseph Marino.

Unless you find that defendant Kent Line's negligence was the proximate cause of the accident, your verdict must be for defendant Kent Line. If the negligence of plaintiff Joseph Marino or of the stevedoring company or of any of its employees, including plaintiff Joseph Marino, was the sole or only cause of the accident, then the plaintiff is not entitled to recover from defendant Kent Line and your verdict must be for defendant Kent Line.

The defendant, like any party in any other civil case, is entitled to a specific instruction on its theory of the case, if the instruction is legally correct, supported by the evidence and brought to the court's attention in a timely request. See Chicago & N.W. Ry. v. Green, 164 F.2d 55, 61 (8th Cir.1947).

## **JURY INSTRUCTION # 15**

Defendant Kent Line further alleges that, even if it is found, from a preponderance of the evidence in the case, that there was some negligence on the part of defendant Kent Line, that was a factual cause of any injuries and consequent damages plaintiff Joseph Marino may have sustained, plaintiff Joseph Marino was, nevertheless, guilty of contributory negligence, reducing the amount plaintiff Joseph Marino would otherwise be entitled to recover.

Contributory negligence is fault on the part of a person injured, which cooperates in some degree with the negligence of another, and so helps to bring about the injury.

By the defense of contributory negligence, defendant Kent Line in effect alleges that, even though defendant Kent Line may have been guilty of some negligent act or omission that was one of the proximate causes, plaintiff Joseph Marino, by plaintiff's own failure to use ordinary care under the circumstances for plaintiff's own safety at the time and place in question also contributed one of the factual causes of any injuries and consequent damages plaintiff Joseph Marino may have suffered.

The burden is on defendant Kent Line, who alleges the defense of contributory negligence, to establish, by a preponderance of the evidence the claim that plaintiff Joseph Marino was also at fault, and contributed one of the proximate causes of any injuries and consequent damages plaintiff Joseph Marino may have sustained.

The maritime doctrine of comparative negligence is applied in cases between a longshore or harbor worker and a vessel. Johnson v. A/S Ivarans Rederi, 613 F.2d 334, 348 (1st Cir.1980), cert. dismissed, 449 U.S. 1135, 101 S.Ct. 959, 67 L.Ed.2d 325 (1981) (traditional admiralty

doctrine of comparative negligence applicable); Lopez v. A/S D/S Svendborg, 581 F.2d 319, 322 (2d Cir.1978) (comparative negligence applies to longshore worker's action); Serbin v. Bora Corp., 96 F.3d 66, 74-75 (3d Cir.1996) (obviousness of danger taken into account in apportioning comparative negligence); Gay v. Ocean Transport & Trading, Ltd., 546 F.2d 1233, 1237 (5th Cir.1977) (comparative negligence rather than contributory negligence is to be applied); Lawson v. United States, 605 F.2d 448, 453 (9th Cir.1979) (conceded negligence of ship repair contractor did not bar recovery by injured employee of contractors against owner of vessel on which injuries were sustained). But see Lewis v. Timco, Inc., 697 F.2d 1252, 1254 (5th Cir.1983) (comparative negligence not applicable in products liability case by longshore worker); Reichert v. Chemical Carriers, Inc., 794 F.2d 1557, 1558-59 (11th Cir.1986) (third-party ship owners not precluded from raising contributory negligence defense in suits by injured harbor worker).

## JURY INSTRUCTION # 16

In considering the claim of defendant Kent Line that plaintiff Joseph Marino was guilty of contributory negligence, you will bear in mind that plaintiff Joseph Marino is not chargeable with any negligent conduct of plaintiff's employer, the stevedore company, or of any of the plaintiff's fellow employees.

Plaintiff Joseph Marino is only chargeable with plaintiff's own conduct. So in connection with the defendant's claim of contributory negligence, you will consider only what plaintiff Joseph Marino did or failed to do at the time and place in question as shown by a preponderance of the evidence in the case.

See 33 U.S.C.A. § 905. See also Edmonds v. Compagnie Generale Transatlantique, 443 U.S. 256, 261, 99 S.Ct. 2753, 2757, 61 L.Ed.2d 521 (1979) (Act not intended to change judicially created admiralty rule that shipowner can be made to pay all damages not due to plaintiff's own negligence).

## JURY INSTRUCTION # 17

If you decide for plaintiff Joseph Marino on the issue of negligence, you must then fix the amount of money that will reasonably and fairly compensate plaintiff Joseph Marino for any of the following elements of damages proved by the evidence to have resulted from the negligence of defendant Kent Line:

1. The nature, extent and duration of the injury to plaintiff Joseph Marino.

2. The pain, discomfort, suffering disfigurement, disability and anxiety experienced and reasonably probable to be experienced in the future by plaintiff Joseph Marino as a result of the injury.

3. Reasonable expenses of necessary medical care, treatment and services rendered and reasonably probable to be incurred in the future plaintiff Joseph Marino.

4. Earnings that were lost by plaintiff Joseph Marino to date, and any decrease in earning power or capacity by plaintiff Joseph Marino in the future.


See 33 U.S.C.A. § 905(b).

## JURY INSTRUCTION # 18

You are to make your findings in accordance with the preponderance of the evidence in the case, and the law as given you in these instructions, without permitting any determination of yours to be influenced by the fact that compensation and medical expenses have been paid to plaintiff Joseph Marino under the provisions of the Longshore and Harbor Workers' Compensation Act.

Payments are made under that Act without any determination as to who, if anyone, may have been at fault. In other words, the same payments are made to the plaintiff under that Act, even though plaintiff Joseph Marino, and the employer and others may have been at fault, and are made if no one was to blame for the injury. The amount of compensation is fixed by the Act, and is based upon plaintiff's wages, and the estimated extent and duration of plaintiff's injuries, regardless of fault.

Neither the fact that payments have been made to plaintiff Joseph Marino under the Act nor the amount of the payments is to be considered by the jury in any way, in determining any issue as to fault or blame or liability or damage in this case.


See DeMedeiros v. Koehring Co., 709 F.2d 734, 739-40 (1st Cir.1983) (where evidence of receipt of workers' compensation benefits received, jury should have been told that plaintiff would have to repay benefits received out of award. However, the error was harmless when court clearly instructed jury not to reduce the award on account of benefits received); Riddle v. Exxon Transp. Co., 563 F.2d 1103, 1108 (4th Cir.1977) (cautionary instruction is sufficient to dissipate prejudice from showing that plaintiff's medical expenses have been reimbursed under compensation act).

**JURY INSTRUCTION # 19**

During the course of the litigation Defendant Kent Line was obligated by Court order to produce:

Captain Biggs and two other witnesses.

These people were on the voyage and were not produced for testimony.  Consequently Kent Line was precluded from having these witnesses testify at trial.  You may consider the absence of these witnesses as an indication that their testimony would have supported Plaintiff's theories and implicated Defendant Kent Line.

Governali v. American Tempering, Inc. 1988 WL 3843 (E.D.Pa.).

**JURY INSTRUCTION # 19**

Whether the agent, Defendant Inchcape, exercised control and to what extent it exercised control over the vessel and the stevedore operations is sufficient to impose liability on Defendant Inchcape.

<u>Caldarola  v. Eckert, et al.</u> 332 U.S. 155, 67 S.Ct. 1569.

**JURY INSTRUCTION # 20**

If you should find that plaintiff Joseph Marino is entitled to a verdict, and further find that the evidence in the case establishes either: (1) a reasonable likelihood of future medical expense, or (2) a reasonable likelihood of loss of future earnings, then it becomes the duty of the jury to ascertain the present worth in dollars of such future damage, since the award of future damages necessarily requires that payment be made now for a loss that will not actually be sustained until some future date.

Under these circumstances, the result is that plaintiff Joseph Marino will in effect be reimbursed in advance of the loss, and so will have the use of money that plaintiff Joseph Marino would not have received until some future date but for the verdict.

In order to make a reasonable adjustment for the present use, interest free, of money representing a lump-sum payment of anticipated future loss, the law requires you to discount, or reduce to its present worth, the amount of the anticipated future loss, by taking (1) the interest rate or return that plaintiff Joseph Marino could reasonably be expected to receive on an investment of the lump-sum payment, together with (2) the period of time over which the future loss is reasonably certain to be sustained.

Then reduce, or in effect deduct from, the total amount of anticipated future loss whatever that amount would be reasonably certain to earn or return if invested at such rate of interest over such future period of time. Include in the verdict an award for only the present-worth--the reduced amount--of anticipated future loss.

In determining future losses, you may consider such additional income as the evidence shows plaintiff Joseph Marino would have been likely to receive in the future, such as wage increases due to promotions, increased experience, merit raises, and increased productivity, if there is evidence concerning them.

As already explained to you, this computation is readily made by using the so- called "present-worth" tables, I have judicially noticed and received in evidence in this case.

Bear in mind that your duty to discount to present value applies to loss of future earnings or future medical expenses only. If you should find that plaintiff Joseph Marino is entitled to damages for future pain and suffering or future mental anguish, then such award is not subject to any reduction for the present use of such money.

See Monessen Southwestern Ry. v. Morgan, 486 U.S. 330, 108 S.Ct. 1837, 100 L.Ed.2d 349 (1988).

## JURY INSTRUCTION # 21

If you find for plaintiff Joseph Marino but also find that plaintiff Joseph Marino's own negligence was a cause of plaintiff Joseph Marino's injury, you must specify the percentage of negligence you attribute to plaintiff Joseph Marino.  For example, if you attribute to plaintiff Joseph Marino 10 percent of the total negligence which caused the plaintiff's injury, the amount you would otherwise award plaintiff Joseph Marino must be reduced by 10 percent. Of course, by using 10 percent as an example, I do not mean to suggest any figure to you. The percentage of plaintiff's negligence, if any, is for you to decide.

See Johnson v. A/S Ivarans Rederi, 613 F.2d 334, 348 (1st Cir.1980), cert. dismissed, 449 U.S. 1135, 101 S.Ct. 959, 67 L.Ed.2d 325 (1981) (traditional admiralty doctrine of comparative negligence applicable); Lopez v. A/S D/S Svendborg, 581 F.2d 319, 322 (2d Cir.1978) (comparative negligence applies to longshore worker's action); Serbin v. Bora Corp., 96 F.3d 66, 74-75 (3d Cir.1996) (obviousness of danger taken into account in apportioning comparative negligence); Gay v. Ocean Transport & Trading, Ltd., 546 F.2d 1233, 1237 (5th Cir.1977) (comparative negligence rather than contributory negligence is to be applied); Lawson v. United States, 605 F.2d 448, 453 (9th Cir.1979) (conceded negligence of ship repair contractor did not bar recovery by injured employee of contractors against owner of vessel on which injuries were sustained).  Reichert v. Chemical Carriers, Inc., 794 F.2d 1557, 1558- 59 (11th Cir.1986) (third-party ship owners not precluded from raising contributory negligence defense in suits by injured harbor worker).

## JURY INSTRUCTION # 22

The issues to be determined by you in this case, as between plaintiff Joseph Marino and defendant Kent Line, on the negligence claim, are these:

First: Was defendant Kent Line negligent in one or more of the particulars alleged?

If your unanimous answer to that question is "No," you will return a verdict for defendant Kent Line. If your unanimous answer is "Yes," you then have a second issue to determine, namely:

Second: Was the negligence of defendant Kent Line a factual [*legal*] cause of any injury and damage to plaintiff Joseph Marino?

If your unanimous answer to that question is "No," you will return a verdict for defendant Kent Line. If your unanimous answer is "Yes," than you must find the answer to a third question, namely:

Third: Was plaintiff Joseph Marino guilty of some contributory negligence?

If you should find, from a preponderance of the evidence in the case, that plaintiff Joseph Marino was not, then, having found in plaintiff Joseph Marino's favor in answer to the first two questions on the claim of negligence, you will proceed to determine the amount of plaintiff Joseph Marino's damages.

On the other hand, if you should find, from a preponderance of the evidence in the case, that

plaintiff Joseph Marino was guilty of some contributory negligence, and that plaintiff Joseph Marino's fault was a proximate cause of any injuries and damage that plaintiff Joseph Marino may have sustained, then you must compare the negligence of the parties, and on the form of verdict submitted, specify the percentage plaintiff Joseph Marino's own negligence contributed to the accident and ensuing injury. You will, as instructed, determine the total amount of plaintiff Joseph Marino's damages.

On the special verdict form that has been prepared for your convenience, there are blank spaces for you to write in your findings. Whatever amount, if any, you may find plaintiff Joseph Marino was at fault, the court will, after you render your verdict, reduce the total award of damages that you find proper by the percentage of plaintiff Joseph Marino's negligence, if any, that you may decide to insert.

**<u>JURY INSTRUCTION # 23</u>**

Directions: Your answer to each question must be unanimously decided by the jury. Please follow the directions as stated.

QUESTION NO. 1: Was defendant Kent Line, the owner of the M/V KENT VOYAGEUR, negligent?

ANSWER: Yes _____ No _____

QUESTION NO. 2: If so, did that negligence, in whole or in part, cause any injury and damage to plaintiff Joseph Marino?

ANSWER: Yes _____ No _____

QUESTION NO. 3: Was plaintiff Joseph Marino guilty of some contributory negligence?

ANSWER: Yes _____ No _____

Directions: If your answer to Question No. 3 is "No," do not answer Question No. 4 and go to Question No. 5; but, if your answer to Question No. 3 is "Yes," then answer Question No. 4.

QUESTION NO. 4: What part, if any, stated as a percentage, did plaintiff Joseph Marino's own negligence play in causing plaintiff's injury?

ANSWER: _____%

QUESTION NO. 5: What amount do you find, without any reduction for any negligence that you may find on plaintiff Joseph Marino's part, will fairly and adequately compensate plaintiff Joseph Marino for the injury plaintiff Joseph Marino received?

ANSWER: $_____

## JURY INSTRUCTION # 24

The plaintiff Joseph Marino claims that he was injured and sustained damage as a result of the negligent conduct of the defendant Inchcape; SLS, Inc. (Holt); Joseph Levy and Trans Ocean Maritime. The plaintiff has the burden of proving his claims.  If the defendant denies the plaintiff's claims and asserts as an affirmative defense that the plaintiff was negligent and that such negligence was a factual cause in bringing about the plaintiff's injuries, then the defendant has the burden of proving this affirmative defense.

Based upon the evidence presented at this trial, the only issues for you to decide in accordance with the law as I will give it to you, are:

First: Whether each defendant was negligent?

Second: Was that defendant's conduct a factual cause in bringing about harm to the plaintiff?

Third: Was the plaintiff negligent and was such negligence a factual cause in bringing about the plaintiff's injury?  Conduct is a factual cause of harm when the harm would not have occurred absent the conduct. An act is a factual cause of an outcome if, in the absence of the act, the outcome would not have occurred.

A defendant's negligent conduct need only be *a* factual cause of the plaintiff's harm. It does not need to be the only cause. The existence of other causes of the harm does not relieve the individual defendant from liability as long as the defendant's negligent conduct was a factual cause of the harm.

If you find that one of the alleged acts of a defendant was negligent and a factual cause of the harm, this is sufficient to subject that individual defendant to liability.  In order for the

conduct of a party to be a factual cause, the conduct must not be fanciful or

imaginary, but must have played a real role in causing the injury. Therefore, in determining

factual cause, you must decide whether the negligent conduct of the defendant was more than

an insignificant factor in bringing about any harm to the plaintiff. Under Pennsylvania law,

conduct can be found to be a contributing factor if the action or omission alleged to have

caused the harm was an actual, real factor, not a negligible, imaginary, or fanciful factor, or a

factor having no connection or only an insignificant connection with the injury. However, factual

cause does not mean it is the only, primary, or even the most important factor in causing the

injury. A cause may be found to be a factual cause as long as it contributes to the injury in a

way that is not minimal or insignificant.

   To be a contributing factor, the defendant's conduct need not be the only factor. The fact

that some other cause concurs with the negligence of the defendant in producing an injury

does not relieve the defendant from liability as long as the  negligence is a factual cause of the

injury.  The negligence of a defendant may be found to be a factual cause of a plaintiff's harm

even though it was relatively minor as compared to the negligence of other defendants or the

plaintiff.  In effect, the test for factual causation has been met when the conduct in question has

such an effect in producing the harm as to lead reasonable persons to regard it as one of the

contributing causes that is neither insignificant nor inconsequential considering all the

circumstances.

**SUBCOMMITTEE NOTE**
   It is not the prime directive of this committee to make new law, but simply to take
existing law as announced by our appellate courts and mold it into an understandable instruction
to guide jurors in a search for the elusive truth. In keeping with our mandate, we respectfully
suggest that the phrase "substantial factor" be reviewed to determine whether the American Law

Institute's rejection of "substantial factor" and adoption of "factual cause" is a change worthy of consideration, and that "substantial factor" language be deleted in all future charges. In addition, the committee uses "factual cause" in lieu of "legal cause." It is the committee's belief that the substitution of "factual cause" for "substantial factor" and "legal cause" would not change an essential element in the burden of proof charge or create a prejudice to any party. Our research has shown that "factual cause" is not a stranger to Pennsylvania law and, indeed, has been repeatedly referenced by our appellate courts. "Substantial factor" or "substantial contributing factor" is the epitome of vagueness and is in contest with "preponderance of the evidence" as well as "more likely true than not." "Substantial factor" pervades and confuses not only the plaintiff's burden but equally affirmative defenses as well. Does the "substantial factor" charge create semantic problems in a jury room during deliberation? Can the phrase be a cause for *Grainy v. Campbell,* 425 A.2d 379 (Pa. 1981) ("The rule in Pennsylvania as to when an actor whose negligence is a *factual cause* of plaintiff's harm is relieved of liability due to a second actor's subsequent negligence has *in general* followed the approach of the Restatement.") (emphasis added); *Dornon v. Johnston,* 218 A.2d 808 (Pa. 1966) ("a substantial factual cause"); *Zieber v. Bogert,* 747 A.2d 905, 908 (Pa.Super. 2000) ("a substantial factual cause"); *Althaus v. Cohen,* 710 A.2d 1147 (Pa.Super. 1998) ("a substantial factual cause"); *First v. Zem Zem Temple,* 686 A.2d 18, 21 (Pa.Super. 1996) ("the factual cause"); *Pascal v. Carter, M.D.,* 647 A.2d 231, 232 (Pa.Super. 1994) ("a substantial factual cause"); *Pachesky v. Getz,* 510 A.2d 776, 780 (Pa.Super. 1986) ("factual cause"); *Sullivan v. Wolson,* 396 A.2d 1230, 1234 (Pa.Super. 1978) ("a factual cause"); *Pegg v. General Motors Corp.,* 391 A.2d 1074, 1080 (Pa.Super. 1978) ("the factual cause of the harm"); *Pushnik v. Winky's Drive In Restaurants, Inc.,* 363 A.2d 1291, 1294 (Pa.Super. 1976) (six references to "factual cause"); *Klages v. General Ordnance Equipment Corp.,* 367 A.2d 304, 313 (Pa.Super. 1976) ("a factual cause"); *Bacsick v. Barnes,* 341 A.2d 157, 160 (Pa.Super. 1975) ("a factual cause"); *Frangis v. Duquesne Light Co.,* 335 A.2d 796, 798 (Pa.Super. 1975) ("factual causation," "factual cause"); *Noon v. Knavel, 339* A.2d 545, 549 (Pa.Super. 1975) ("a factual cause of those injuries"); *Lovrekovic v. Commonwealth,* 387 A.2d 685, 686 (Pa.Cmwlth. 1978) ("a factual cause"); *Benetz Inn v. Common-wealth,* 417 A.2d 294 (Pa.Cmwlth. 1980) ("its factual cause"); *Ganly's Pub & Deli v. Unemployment Comp. Bd. of Review,* 639 A.2d 1313, 1314 (Pa.Cmwlth. 1994) ("its factual cause," "the factual cause"). hung juries? Admittedly, the average juror doesn't bring to the jury room the dictionary definitions of "substantial," * but entertains the word in the context of "more than." A solution to this perplexing problem has been addressed by the American Law Institute Restatement (Third) of Torts, chapter 5, "Factual Cause," and provides:

**§ 26. Factual Cause**
An actor's tortious conduct must be a factual cause of another's physical harm for liability to be imposed. Conduct is a factual cause of harm when the harm would not have occurred absent the conduct. Tortious conduct may also be a factual cause of harm under § 27.

**" . . . Factual Cause"** is addressed in this Chapter and "proximate cause" in Chapter 6. This Chapter replaces Restatement Second, Torts §§ 430–433, 433B(1), and 434(1)(a) and (2)(a). Section 433A and the remainder of §§ 433B and 434, which addresses apportionment of liabil-ity by causation, are covered in Restatement Third, Torts: Apportionment of Liability § 27. In section b of chapter 5, the institute has concluded:

**b. "But-for" standard for factual cause.** The standard for factual causation in this sec-tion is familiarly referred to as the "but-for" test, as well as a "sine qua non" test. Both express the same concept: an act is a factual cause of an outcome if, in the absence of the act, the out-come would have not occurred. The institute then directed its attention to the multiple causes and concluded in section c of chapter 5:

c. **Tortious conduct need only be one of the factual causes of harm.** An actor's tor-tious conduct need only be a factual cause of the other's harm. The existence of other causes of the harm does not affect whether specified tortious conduct was a necessary condition for the harm to occur. Those other causes may be innocent or tortious, known or unknown, influenced by the tortious conduct or independence of it, but so long as the harm would not have occurred absent the tortious conduct, the tortious conduct is a factual cause. Recognition of multiple causes does not require modifying or abandoning the but-for standard in this section. Tortious conduct by an actor need be only one of the causes of another's harm. When there are multiple sufficient causes (see Comment i), each of which is sufficient to cause the plaintiff's harm, supplementation of the but-for standard is appropriate. See § 27.

\* **Substantial** 1. Of, relating to, or having substance; material. 2. True or real; not imaginary. 3. Solidly built, strong. 4. Ample; sustaining; *a substantial breakfast.* 5. Considerable in importance, value, degree, amount, or extent. 6. Possessing wealth or property; well-to-do. —n. 1. An essential. Often used in the plural. 2. A solid thing. Often used in the plural.
*The American Heritage College Dictionary, Third Edition*

**Substantial** 1. a: consisting of or relating to substance. b: not imaginary or illusory: REAL, TRUE c: IMPORTANT, ESSENTIAL 2. ample to satisfy and nourish: FULL <a – meal> 3. a: possessed of means: WELL-TO-DO  b. considerable in quantity: significantly large <earned a – wage> 4. firmly constructed: STURDY 5. being largely but not wholly that which is specified.
*Webster's Ninth New Collegiate Dictionary*

**Substantial** 1. Belonging to or having substance. 2. Real; true; not seeming or imaginary. 3. With regard to essential elements; corporeal; material. *The rainbow appears like a substantial arch in the sky.* 4. Having strong substance; strong; stout; solid; as a *substantial* fence. 5. Having property or possessions; wealthy; as, a *substantial* citizen. 6. Of considerable worth or value; vital; important; as, they agree on all *substantial* issues. 7. Of considerable size or amount; large; as, a *substantial* gift. 8. In philosophy, of, or having the nature of, substance. *substantial being;* a material being; one that has substance. *substantial damages;* a sum awarded by a jury intended to cover the real damage, instead of a nominal fee. *substantial right;* a constitutional or legal right. Syn. Hard, firm, compact, strong, stable, sound, real, valid, true, just, weighty, profound, grave, important. *Webster's New Twentieth Century Dictionary, Unabridged Second Edition*

It is the consensus that we must strive for a language that conveys a single and simple meaning that is understood by all our citizens. It has been the charge of this committee from its inception. We have not necessarily succeeded as well as one would like. We hope that this suggested change is viewed as a step toward better and clearer language usage.

# JURY INSTRUCTION # 25

The legal term "negligence," otherwise known as carelessness, is the absence of ordinary care that a reasonably prudent person would use in the circumstances presented here. Negligent conduct may consist either of an act or a failure to act when there is a duty to do so.  In other words, negligence is the failure to do something that a reasonably careful person would do, or doing something that a reasonably careful person would not do, in light of all the sur-rounding circumstances established by the evidence in this case. It is for you to determine how a reasonably careful person would act in those circumstances.


**SUBCOMMITTEE NOTE**
Pennsylvania law charges the trial judge with the duty of stating to the jury the correct applicable principles of law, defining the terms, and doing so in plain language that will be within the comprehension of the members of the jury. *Vaughn v. P.T.C.,* 209 A.2d 279 (Pa. 1965); *Archer v. Pennsylvania R.R. Co.,* 72 A.2d 609, 611 (Pa.Super. 1950). Judges and lawyers become attuned to the specialized vocabulary of the law, but such language may present a semantic morass to the jury resulting in more jury disagreement and confusion than is caused by controverted facts. The late Justice Bok urged that "jurors should be regarded as the ordinary human beings they are . . . and . . . they should be treated as neither geniuses nor morons." *Fisher v. Strader,* 160 A.2d 203, 205 (Pa. 1960). The draft definition, in broad encompassing language designed to be clear and easily understandable, is a refined distillate evolved from the definitive expressions set forth in innumerable cases and a variety of texts and other authorities. Negligence is the absence of ordinary care that a reasonably prudent person would exercise in the same or similar circumstances. *Martin v. Evans,* 711 A.2d 458 (Pa. 1998).  Negligence should not be classified in differing degrees, such as "slight," "ordinary," or "gross." This is to be distinguished from a classification of the measure or *degree of care* that an individual is required to exercise under varying circumstances in order to meet the test of due or reasonable care. But negligence either exists or is absent, and a jury should not be invited or tempted to speculate on the degree of negligence existing. No classification of degrees of negligence should be included in any instruction. That it appears quite frequently in instructions is apparent, and, in fact, even on occasion in an appellate opinion *(Corona v. Pittsburgh Ry. Co.,* 209 A.2d 425, 427 (Pa. 1965), where in discussing the distinction between wanton misconduct and negligence, the court, on two occasions, referred to "mere" negligence). The most recent comprehensive discussion of this issue of degrees of negligence appears in the case of *Cody v. Venzie,* 107 A. 383 (Pa. 1913) (but see *Ravis v. Shehulskie,* 14 A.2d 70 (Pa. 1940), which overrules the dicta in *Cody* that when a

gratuitous carriage is for the sole benefit of the guest, gross negligence on the part of the driver must be shown). In *Cody,* degrees of culpability were traced back to Roman law. Their adoption by the com-mon law and recognition in Pennsylvania law were acknowledged. However, after quoting a textwriter on negligence who stated that ". . . refinements (of the degree of negligence) can have no useful place in the practical administration of justice. Negligence cannot be divided into three compartments by mathematical lines. Ordinary jurors . . . are quite incapable of understanding such refinements" the court found it unnecessary to make any categorical expression on the question. *Cody,* above, at 384. It did discuss the relation between the duty involved and the standard of care required, while admitting that a term such as "slight negligence" is an inadequate characterization. The case of *Barney v. Foradas,* 451 A.2d 710 (Pa.Super. 1982), continues the use of degrees of negligence. The case arose prior to the effective date of the comparative negligence statute. Where the evidence showed that the plaintiff pedestrian failed to look as he crossed a four-lane highway between intersections, the lower court's entry of a nonsuit would be affirmed. The court cited with approval *Lavely v. Wolota,* 384 A.2d 1298 (Pa.Super. 1978), for the following:

[A] pedestrian crossing a highway within a business or residence district[,] at any other point other than a crosswalk, shall yield the right of way to vehicles upon the highway . . . A pedestrian who crosses a street between intersections is held to a higher degree of care than at street intersections, while the driver of a motor vehicle is held to a correspondingly lesser degree of care. 451 A.2d at 712, quoting 384 A.2d at 1300–1301. The preferable analysis would be to charge both parties with a duty of ordinary care under the circum-stances and enunciate that the circumstances of crossing between intersections are such that ordinary care in this case may be different from that required when crossing at an intersection.

## JURY INSTRUCTION # 26

Ordinary care is the care a reasonably careful person would use under the circumstances presented in this case. It is the duty of every person to use ordinary care not only for his or her own safety and the protection of his or her property, but also to avoid injury to others.  What constitutes ordinary care varies according to the particular circumstances and  conditions existing then and there. The amount of care required by the law must be in keeping with the degree of danger involved.


**SUBCOMMITTEE NOTE**
There are a number of words expressing the concept of watchfulness conveyed by this instruction (e.g., alertness, attention, caution, consideration, forethought, heed, precaution, prudence, regard, solicitude, vigilance), but the suggested synonyms all have variations in meaning and shadings that introduce unneeded complexities. The duty creating the obligation is best presented in the use of the simple word "care." In the majority of cases the standard of care is "ordinary care," or such care as is commonly used. *Maternia v. Pennsylvania R.R. Co.,* 56 A.2d 233, 235 (Pa. 1948). See *Martin v. Evans,* 711 A.2d 458, 462 (Pa. 1998). What constitutes ordinary care depends upon the facts of the case. *Potere v. Philadelphia,* 112 A.2d 100, 103 (Pa. 1955), overruled on other grounds, *Niederman v. Brodsky,* 261 A.2d 84 (Pa. 1970) *(Potere* set forth the proposition that a plaintiff could recover for mental suffering if that plaintiff sustained bodily injury, even though trivial or minor, and that injury is accompanied by fright or mental suffering. *Niederman* overruled this decision to the extent that it required a causal connection between the physical injuries sustained and the mental suffering to be established by medical testimony).
This instruction should not be used in cases wherein the measure of care required is different because of the nature of the operation or the character of the party involved whose conduct and duty is in question.

## JURY INSTRUCTION # 27

The court has already instructed you about what you may consider in determining whether the defendants were negligent, whether the plaintiff was contributorily negligent, and whether such negligence, if any, was a factual cause in bringing about the plaintiff's harm. If you find, in accordance with these instructions, that the defendants were negligent and such negligence was a factual cause in bringing about the plaintiff's harm, you must then consider whether the plaintiff was contributorily negligent. If you find that the plaintiff was contributorily negligent and such contributory negligence was a factual cause in bringing about the harm, then you must apply the Comparative Negligence Act, which provides in section 1:

The fact that a plaintiff may have been guilty of contributory negligence shall not bar a recovery by the plaintiff where such negligence was not greater than that causal negligence of the defendant, or defendants against whom recovery is sought, but any damages sustained by the plaintiff shall be diminished in proportion to the amount of negligence attributed to the plaintiff.

Just as the law provides that a plaintiff's damages should be diminished in proportion to the amount of negligence attributable to the plaintiff, so too it provides that an award should be divided among the defendants in proportion to their relative degrees of causal negligence.  If you find that more than one defendant is liable to the plaintiff, you must also apply section 2 of the Comparative Negligence Act, which provides:

Where recovery is allowed against more than one defendant, each defendant shall be liable for that proportion of the total dollar amount awarded as damages in the ratio of the amount of his causal negligence to the amount of causal negligence

attributed to all defendants against whom recovery is allowed.

Under this act, if you find that any defendant or more than one defendant was causally negligent and you find that the plaintiff was also causally negligent, it is your duty to apportion the relative degree of causal negligence between all of the defendants found negligent and the plaintiff. In apportioning the causal negligence you should use your common sense and experience to arrive at a result that is fair and reasonable under the facts of this accident as you have determined them from the evidence.

If you find that the plaintiff's causal negligence was greater than the combined causal negligence of those defendants you find to have been negligent, then the plaintiff is barred from recovery and you need not consider what damages should be awarded.

If you find that the plaintiff's causal negligence was equal to or less than the combined causal negligence of the defendants you find to have

been causally negligent, then you must set forth the percentages of causal negligence  attributable to the plaintiff and the percentage of causal negligence attributable to each of the defendants you find to have been causally negligent. The total of these percentages

must be 100 percent. You will then determine the total amount of damages to which the plaintiff would be entitled if he had not been contributorily negligent; in other words, in finding the amount of damages, you should not consider the degree, if any, of the plaintiff's fault. After you return your verdict, the court will reduce the amount of damages you have found in proportion to the amount of causal negligence you have attributed to the plaintiff.

To further clarify these instructions, the court will now distribute to each of you a verdict form containing specific questions.  At the conclusion of your deliberations, one **copy of this**

form should be signed by your foreman and handed to the court clerk; this will constitute your

verdict. The verdict form reads as follows:

Question 1:

Do you find that any of the defendants were negligent?

Defendant Inchcape:                     Yes ___ No ___

Defendant SLS, Inc. (Holt):             Yes ___ No ___

Defendant Joseph Levy:                  Yes ___ No ___

Defendant Trans Ocean Maritime:         Yes ___ No ___

    If you answer Question 1 "No" as to all defendants, the plaintiff cannot

recover and you should not answer any further questions and should return to the

courtroom.

Question 2:

Was the negligence of those defendants you have found to be negligent a factual cause of any

harm to the plaintiff?

Defendant Inchcape:                     Yes ___ No ___

Defendant SLS, Inc. (Holt):             Yes ___ No ___

Defendant Joseph Levy:                  Yes ___ No ___

Defendant Trans Ocean Maritime:         Yes ___ No ___

If you answer Question 2 "No" as to all defendants you have found to be negligent, the plaintiff

cannot recover and you should not answer any further questions

and should return to the courtroom.

Question 3:

Was the plaintiff Joseph Marino  contributorily negligent?

Yes ____ No ____

If you answer Question 3 "No," proceed to Question 5.

Question 4:

If you answered Question 3 "Yes," was the plaintiff's contributory negligence a factual

cause of any harm to him?

Yes ____ No ____

Question 5:

Taking the combined negligence that was a factual cause of any harm to the plaintiff

as 100 percent, what percentage of that causal negligence was attributable to each of the

defendants you have found causally negligent and what percentage was attributable to the

plaintiff?

1.      Percentage of causal negligence attributable to Defendant Inchcape

        (Answer only if you have answered "Yes" to Questions 1 and 2 for Defendant

        Inchacape).  _____%

2.      Percentage of causal negligence attributable to Defendant SLS, Inc. (Holt)

        (Answer only if you have answered "Yes" to Questions 1 and 2 for Defendant

        SLS, Inc. (Holt ).  _____%

3.      Percentage of causal negligence attributable to Defendant Joseph Levy

        (Answer only if you have answered "Yes" to Questions 1 and 2 for Defendant

        Joseph Levy).  _____%

4.      Percentage of causal negligence attributable to Defendant Trans Ocean.

        (Answer only if you have answered "Yes" to Questions 1 and 2 for Defendant

        Trans Ocean).  _____%

5.      Percentage of causal negligence attributable to the plaintiff Joseph Marino

        (Answer only if you have answered "Yes" to Questions 3 and 4).  _____%

Total 100%

        If you have found the plaintiff's causal negligence to be greater than 50 percent,

then the plaintiff cannot recover and you should not answer Question 6 and should

return to the courtroom.

Question 6:

State the amount of damages, if any, sustained by the plaintiff as a result of the accident, without

regard to and without reduction by the percentage of causal negligence, if any, that you have

attributed to the plaintiff.$_____.

        After you return your answers to these questions on the verdict form, signed by your

foreman, the court will determine the amount to be awarded to the plaintiff, if any, by reducing

the amount of damages found by you in proportion to the percentage of the plaintiff's causal

contributory negligence, if any. I again caution you that you are not to make this reduction

yourselves in reaching the amount of the plaintiff's damages, as set forth by you in answer to

Question 6.

**SUBCOMMITTEE NOTE**

Many hypothetical questions arise with the enactment of a simply worded statute such as the Comparative Negligence Act of 1976, now codified in section 7102 of the Judicial Code, 42 Pa.C.S. § 7102. These questions may seem all the more difficult to resolve if authority is sought from the experiences of the some 30 other jurisdictions that have adopted forms of comparative negligence, either by statute or by judicial decree. We believe, however, that use of other decisional law should be cautious, for several reasons. First, the Pennsylvania act is not accompanied by any legislative history; second, the Pennsylvania act, while similar to some other statutes, is unique in its total wording; third, there is no reason to believe that the General Assembly conducted an extensive review of similar statutes and decisions thereunder, or thought itself to be adopting the law of one state in preference to that of another.

Rather, we believe it appropriate to consider the Comparative Negligence Act solely on its own, as the legislature's expression that the all-or-nothing doctrine of contributory negligence, as it existed in Pennsylvania, should be replaced with a more equitable system of apportioning damages incurred in an accident according to the relative degrees of each party's negligence. Accordingly, the act should be considered as authoritative on those issues it specifically addresses; if the act does not specifically treat an issue, Pennsylvania decisional law and the policies underlying it should be the basis of interpretation. The decisional law of other jurisdictions should be considered only as a means of identifying competing policy considerations, but the ultimate resolution of any policy conflict should be a matter of Pennsylvania policy alone. In the absence of judicial guidance, we have endeavored to identify the significant issues that may arise under that act, and have suggested below appropriate resolutions. In framing the model charge, however, we have followed the basic principle incorporated throughout these instructions—presenting a legal issue in its simplest manner, eliminating as many sources of confusion as possible. Key to this approach is the combination of a general explanation of the effect of the act and the submission of special interrogatories.  The Pennsylvania Superior Court approved the use of this Suggested Standard Jury Instruction in *Peair v. Home Association of Enola Legion No. 75*1, 430 A.2d 665, 672 (Pa.Super. 1981): We have concluded that the jury should be informed of the consequence of its apportionment of negligence. We regard such information as essential if the jury is to be able to apply the equitable considerations and arrive at the compromises that are an inherent part of the jury system. Id., 430 A.2d at 671.

**Prospectivity**

As of this writing, the Pennsylvania Superior Court has held that the Comparative Negligence Act applies only to those causes of action arising on or after September 7, 1976. *Costa v. Lair,* 363 A.2d 1313 (Pa.Super. 1976).

**General Applicability**

The Pennsylvania act specifically applies to "actions . . . for negligence." Thus, the act does not apply to intentional torts, nor does it permit an intentionally tortious defendant to diminish a plaintiff's recovery by any negligence on his or her part. This result comports with common law, where contributory negligence was not a defense to an intentional tort. E.g., *Kasanovich v. George,* 34 A.2d 523, 525 (Pa. 1943). The act also has no applicability where it is agreed that the plaintiff was not contributorily negligent or the trial court has made that ruling as a matter of law.

In such cases, only section 2 of the act, providing for apportionment among joint tortfeasors, might be applicable. The principle that, as between joint tortfeasors, each must pay the injured plaintiff according to his or her relative degree of fault was reaffirmed by the Pennsylvania Supreme Court in *Boggavarapu v. Ponist,* 542 A.2d 516 (Pa. 1988). The act also does not apply where there is no reasonable basis on which to apportion fault. *Ball v. Johns-Manville Corp.,* 625 A.2d 650, 659 (Pa.Super. 1993); *Lee v. Pittsburgh Corning Corp.,* 616 A.2d 1045 (Pa.Super. 1992). In *Ball,* the superior court held that the trial court correctly refused to charge on apportionment in the absence of any testimony comparing the relative amounts of the asbestos products to which the plaintiff was exposed. In *Lee,* the court held that where the plaintiff's expert witness testified asbestos exposure was the sole cause of the plaintiff's lung cancer, and the defendant's expert witness testified it was solely due to cigarette smoking, and neither party provided any evidentiary basis on which to apportion the harm, it was error to allow the jury to apportion the harm. Where there is an evidentiary basis for apportioning harm between two or more defendants, refer to Instruction 6.24 entitled "Apportionment of Damages (Two or More Defendants)—Distinct Damages." The above instruction is appropriate for apportioning relative degrees of negligence, not percentages of harm attributable to the negligence of multiple defendants. For a recent decision that reviews comparative negligence, see *Allen v. Mellinger,* 784 A.2d 762 (Pa. 2001).

**Reckless Conduct**

Under Pennsylvania law, a plaintiff's contributory negligence does not bar recovery where the defendant's conduct constitutes "wilful or wanton misconduct." *Kasanovich v. George,* 34 A.2d 523 (Pa. 1943). This characterization (simplified in these instructions to "reckless conduct," Instruction 3.17) has been distinguished from negligence or gross negligence as different in kind, not merely in degree. E.g., *Turek v. Pennsylvania R.R. Co.,* 85 A.2d 845 (Pa. 1952). The question arises whether under the Comparative Negligence Act, a plaintiff's ordinary negligence may now be used to reduce a recovery based upon a defendant's reckless conduct. One author suggests that the problem be analyzed from the standpoint of whether the legislature intended its comparative negligence statute to ameliorate the harsh consequences of contributory negligence being a complete bar to recovery (in which case, the common-law rule would remain) or whether the legislature intended its statute to allocate responsibility totally on the basis of relative fault (in which case it would not). Schwartz, *Comparative Negligence* § 5.3, at 107–08 (1974). The problem gains further complexity by the use of "fault" rather than "negligence" in some statutes, and the failure to distinguish between "gross negligence" and "wanton misconduct." See *Bielski v. Schulze,* 114 N.W.2d 105 (Wis. 1962).  In Pennsylvania, however, the distinction between gross negligence and wanton or willful misconduct is one specifically based upon a defendant's intentions. In *Kasanovich v. George,* above, the court, after noting that contributory negligence was not a bar to recovery for a "wilful tort," held: "it must be understood . . . that wanton misconduct is something different from negligence however gross,—different not merely in degree but in kind, and evincing a different state of mind on the part of the tortfeasor. Negligence consists of inattention or inadvertence, whereas wantonness exists where the danger to the plaintiff, though realized, is so recklessly disregarded that, even though there be no actual intent, there is at least a willingness to inflict injury, a conscious indifference to the perpetration of the wrong." 34 A.2d at 525. Significantly, the court noted that its adoption of such a rule "is not in

conflict with the rejection in Pennsylvania of the doctrines of 'comparative negligence',", id., a statement that indicates the court's belief that wanton misconduct and negligence were not comparable. Because, therefore, Pennsylvania decisions define "reckless conduct" as an intentional act of defendant different from "negligence however gross," it is fair to conclude that the Comparative Negligence Act, dealing solely with the "negligence" of plaintiff and defendant, should not be read as legislative overruling of the settled rule of *Kasanovich v. George,* above. The Pennsylvania Superior Court declined the opportunity to address the question of the effect of the Comparative Negligence Act upon the doctrine of reckless conduct in *Emerick v. Carson,* 472 A.2d 1133, 1136 (Pa.Super. 1984), petition for allowance of appeal denied June 12, 1984. However, a panel of the Superior Court did address the issue and affirmed the continuing validity of *Kasanovich,* above, stating that "[w]e hold that when wilful or wanton misconduct is involved, comparative negligence should not be applied." *Krivijanski v. Union Railroad Co.,* 515 A.2d 933, 936 (Pa.Super. 1986). The Pennsylvania Superior Court emphasized the fact that the sole authority for allowing a jury to compare relative degrees of negligence derives from the Comparative Negligence Act, and does not arise as a natural outgrowth of the decisional law. In *Lewis v. Miller,* 543 A.2d 590 (Pa.Super. 1988), the plaintiff had been involved in an illegal drag race in which he was injured and sought damages from the person he was racing. Noting that the plaintiff's actions amounted to "wilful and wanton conduct," the court affirmed the lower court's compulsory nonsuit and opined that absent legislation similar to the Comparative Negligence Act, the jury would not be permitted to compare relative degrees of wantonness as between the parties. This analogy at once exposes the judiciary's unwillingness to expand the boundaries of the Comparative Negligence Act to include wanton conduct, and its insistence that allowing a jury to perform such a comparison must have a legislative origin.

**Rescue Doctrine**

Under the prior law of contributory negligence, a rescuer's contributory negligence was not held to diminish the rescuer's damage claim unless the rescuer's contributory negligence was legally manifested by rashness or wantonness. In a majority opinion of *Pachesky v. Getz,* 510 A.2d 776 (Pa.Super. 1986), the Superior Court, en banc, held that when a rescuer performs a rescue in a reasonable manner, the rescuer is entitled to full recovery from the negligent defendant for all damages occasioned thereby—but, when the rescuer acts unreasonably in performing a rescue, the relative causal negligence of the parties should be apportioned in accordance with the Comparative Negligence Act, 42 Pa.C.S. § 7102.

**Assumption of Risk**

This committee has recommended that no charge on assumption of risk be given, since the fictional concept of a plaintiff's consenting to being injured is, in reality, merely another way of stating that the plaintiff failed to exercise ordinary care for his or her own safety by unreasonably testing a known danger. Instruction 3.04. The issue is raised anew by the Comparative Negligence Act. When contributory negligence and assumption of risk were each a complete defense to an action based
on the defendant's negligence, the difference between the two concepts was one of degree, if not of semantics.

By eliminating the complete bar of contributory negligence, the legislature has determined that damages should be apportioned in accordance with each party's relative fault. It would defeat this

legislative

policy to permit the rephrasing of a plaintiff's lack of ordinary care into his or her unreasonably testing a

**6**

known danger, thereby resulting in a bar to his or her recovery without apportionment. Thus, commenta-tors

and case law decided to date uniformly hold that the doctrine of implied assumption of risk should be

merged into that of comparative negligence under an apportionment statute. Schwartz, *Comparative Neg-ligence,*

above, at section 9.4. This committee recommends such a merger.

It is important to note that there has evolved a subtle distinction between what is known as a "no duty"

concept, formerly considered a subcategory of assumption of risk, or what may be termed actual assump-tion

of risk. This distinction was carefully drawn in *Berman v. Radnor Rolls, Inc.,* 542 A.2d 525 (Pa.Super.

1988). The *Berman* court pointed out that the "no duty" concept only applies to "special relationship" situa-tions,

such as where a defendant is a possessor/owner of land and the plaintiff is a business invitee who is

injured on the defendant's land. In such a situation, it is possible to find that the owner of land owed no

duty to the business invitee where the danger was "known or obvious." Under this scenario, the Compara-tive

Negligence Act would still apply even where the defendant had a subjective awareness of the danger

involved yet only behaved negligently. This distinction appears to establish degrees of a plaintiff's subjec-tive

awareness of a danger, yet for purposes of applying the Comparative Negligence Act, the end result

will be the same. Whether labeled a "no duty" situation or one where the plaintiff "assumed the risk," the

*Berman* court makes it clear that the Comparative Negligence Act would still apply where the underlying

conduct of a plaintiff amounted to negligence, and did not amount to some higher "more culpable" conduct.

See also *Telga v. Security Bureau, Inc.,* 719 A.2d 372 (Pa.Super. 1998) (finding that the "no duty" rule did

not apply where a spectator at a football game incurred injuries by aggressive fans attempting to obtain a

football tossed into the stands, because the fans' actions were not a reasonably foreseeable risk).

# JURY INSTRUCTION # 28

Reckless conduct is intentional acting or failing to act in complete disregard of

a risk of harm to others that is known or should be known to be highly probable and with a

conscious indifference to the consequences. Reckless conduct is acting or failing to act

when existing danger is actually known and with an awareness that harm is reasonably certain

to result.


**SUBCOMMITTEE NOTE**
The courts have continued to define reckless conduct as the intentional doing of an act or failure to do
an act, which the actor has a duty to do, knowing or having reason to know of facts that would lead a rea-sonable
person to realize that his or her conduct not only creates an unreasonable risk of bodily harm to the
other, but also involves a high degree of probability that substantial harm will result. *Tyree v. City of Pitts-burgh,*
669 A.2d 487 (Pa.Cmwlth. 1995) (citing *Gaul v. Consolidated Rail Corp.,* 556 A.2d 892 (Pa.Super.
1989)).
The standard terms "wanton and wilful misconduct" imply criminality and are easily misunderstood by
laymen. Our case law is based not on these terms as commonly used, but on reckless disregard or conscious
indifference. The recommended language is intended to express existing principles in more digestible terms.
The courts have had continuing difficulty in considering the appropriate jury instructions where defen-dants'
negligent conduct is alleged to have been more reprehensible than that expressed in the terms of ordinary negligence. The phrases "wanton negligence" and "wilful negligence" have become inextricably
confusing and were frequently presented to juries in such manner as to be thoroughly incomprehensible.
Appellate language was frequently excerpted verbatim, obviously to eliminate the possibility of reversible
error, which did not increase the degree of lucidity. There is no merit to slavish addiction to such bromidic
expressions, as the Pennsylvania Supreme Court emphasized in *McCoy v. Vankirk,* 105 A.2d

112, 115 (Pa.

1954): "There is no rule that requires the employment of any set, stereotyped phrases in a charge. In the

interests of clarity it is much preferable that a Trial Judge not use abstract or ponderous law book terms

unintelligible to the average lay juror. Nor is it desirable that a judge charge with one eye on the jury and

the other metaphorically on the appellate court. A charge wholly devoid of technical exposition but window

clear in its succinct recital of the evidence, with instructions on alternate conclusions distillable from the

evidence, is more likely to produce a just verdict than one bristling with jurisprudence but empty of grasp-able

reality." Then quoting from an earlier Superior Court opinion by Judge Keller: ". . . we doubt the wis-dom

or advisability of a court's using abstruse legal terms to instruct a jury where their use is not absolutely necessary."

Yet the two concepts embodied in the terms "wilful negligence" and "wanton negligence" do have more

than a semantic difference. As pointed out in *Evans v. P.T.C.,* 212 A.2d 440, 443–44 (Pa. 1965), "wilfulness"

means that the actor *desired* to bring about the result that followed or realized that it was substantially

certain to ensue, whereas "wantonness" means that the defendant *acted* intentionally *without regard* to the

consequences, despite a known risk to another. See also *Frederick v. P.R.T. Co.,* 10 A.2d 576, 578 (Pa.

1940); *Wilson v. Pennsylvania R.R. Co.,* 219 A.2d 666, 671–73 (Pa. 1966).

It is suggested that the adjectival connection of "reckless" with "conduct," and "wilful" with "miscon-duct"

will serve to point out and clarify the distinction between the two terms in defining them for the jury.

In *Sullivan v. Wolson,* 396 A.2d 1230 (Pa.Super. 1978), the court, after quoting from Restatement (Second)

of Torts § 500, paraphrased the concept of reckless conduct as follows:

Thus, whether it is termed "reckless disregard," or "wanton misconduct," the basis of liability in tort is premised upon the actor intentionally doing an act creating a great risk of harm when the actor either (1) knows of the great risk, but consciously disregards it and proceeds,

**3.17**

or (2) had knowledge of facts which would lead a reasonable man to become aware of this risk in time for the actor reasonably to avoid the danger.

396 A.2d at 1236–37 (citations omitted).

As discussed at Instruction 3.03A, it is the subcommittee's continuing position that plaintiff's contrib-utory

negligence does not bar a recovery where the defendant's conduct is reckless independent of whether

the cause of action arose before or after adoption of the Comparative Negligence Act, 42 Pa.C.S. § 7102.

## JURY INSTRUCTION # 29

The plaintiff must prove to you that the defendant's conduct caused the plaintiff's damages. This is referred to as "factual cause." The question is: "Was the defendant's negligent conduct a factual cause in bringing about the plaintiff's damages?"

Conduct is a factual cause of harm when the harm would not have occurred absent the conduct. An act is a factual cause of an outcome if, in the absence of the act, the outcome would not have occurred.

A defendant's negligent conduct need only be a factual cause of the plaintiff's harm. It does not need to be the only cause. The existence of other causes of the harm does not relieve the defendant from liability as long as the defendant's negligent conduct was a factual cause of the injury. If you find that one of the alleged acts of a defendant was negligent and a factual cause of the harm, this is sufficient to subject that defendant to liability.

In order for conduct of a party to be a factual cause, the conduct must not be fanciful or imaginary, but must have played a real role in causing the injury. Therefore, in determining factual cause, you must decide whether the negligent conduct of the defendant was more than an insignificant factor in bringing about any harm to the plaintiff.

Under Pennsylvania law, conduct can be found to be a contributing factor if the action or omission alleged to have caused the harm was an actual, real factor, not a negligible, imaginary, or fanciful factor, or a factor having no connection or only an insignificant connection with the injury. However, factual cause does not mean it is the only, primary, or even the most important factor in causing the injury. A cause may be found to be a factual cause as long as it contributes to the injury in a way that is not minimal or insignificant. To be a contributing factor, the

defendant's conduct need not be the only factor. The fact that some other cause concurs with the

negligence of the defendant in producing an injury does not relieve the defendant from liability as

long as his own negligence is a factual cause of the injury. The negligence of a defendant may be

found to be a factual cause of a plaintiff's harm even though it was relatively minor as compared

to the negligence of other defendants. In effect, the test for factual causation has been met when

the conduct in question has such an effect in producing the harm as to lead reasonable persons to

regard it as one of the contributing causes that is neither insignificant nor inconsequential

considering all the circumstances.

**SUBCOMMITTEE NOTE**
Confusion has been generated, compounded, and perpetuated by various attempts to make clear to the
jury the ramifications of the distinction between a factual cause of an accident and a legal cause of an acci-dent.
In *Jeter v. Owens-Corning Fiberglas Corp.,* 716 A.2d 633 (Pa.Super. 1998), the Superior Court revis-ited
the question of legal cause. In that case the trial judge, in response to a jury question, read a *Webster's*
*Dictionary* definition of "substantial" as "considerable in quantity, significantly large." The Superior Court
held that this was not an accurate definition of "substantial" as used in the legal sense, and therefore this
instruction required a new trial. In explaining the legal definition of "substantial contributing factor," the
court reviewed the history since its inception into Pennsylvania law. The "substantial factor" test, initiated
with the Restatement (Second) of Torts § 431 (1965), was adopted in Pennsylvania in *Ford v. Jeffries,* 379
A.2d 111 (Pa. 1977). The Pennsylvania Supreme Court cited with approval the comment to Restatement
section 431, which stated that a substantial factor is "[conduct] that has such an effect in producing the
harm as to lead reasonable men to regard it as a cause, using that word in the popular sense." This defini-tion
does not require any quantification as long as the cause is significant or recognizable. If an event

is a

significant or recognizable cause, "it need not be quantified as considerable or large." Thus, the term "sub-stantial"

means only "significant." In *Jeter,* the Superior Court said that the proper evaluation is whether the conduct was "on the one hand, a substantial factor or a substantial cause or, on the other hand whether

the defendant's conduct was an insignificant cause or a negligible cause."

See also the subcommittee note at Instruction 3.28.

It is not sufficient merely to tell the jury that the negligence must have been a "cause," because there is

rarely a case where a properly named defendant has not, in some manner, "caused" the accident; however,

this is not to say that the conduct is the legal cause. For example, if a defendant negligently brings his or

her vehicle to a sudden stop at a traffic light, where the defendant is struck from the rear one minute later

by another defendant, the defendant's passenger's injuries have been "caused" by the defendant's conduct

of merely being on the road, but no court would say that his or her negligent conduct was the "legal cause"

of the accident.

On the other hand, it does not serve justice to make the above-stated common-sense proposition of legal

cause so cumbersome as to be unintelligible to all but the legally educated juror. For this reason most of the

usual legal phrases have been jettisoned from the charge on factual cause. The term "factual cause" is

retained to inform the jury that the plaintiff must also prove causation, and that not all causes are the

"legal cause." But "proximate cause," a term that attempts to give substance to the distinction between fac-tual

cause and legal cause, but which "means nothing to an ordinary jury," *Rodgers v. Yellow Cab Co.,* 147

A.2d 611, 617 (Pa. 1959), has been deleted. Similar synonyms such as "efficient cause" and "substantial

cause" have been rejected.

Also rejected are the unnecessarily confusing concepts of "foreseeability" and "natural and probable

consequence." To charge a jury that causation does not exist unless the defendant reasonably should have

"foreseen" the harm invites them to speculate about factors properly having no place in the consideration of

**2**

-56-

**3.25**

legal cause. For example, all persons would foresee that if they ignored a red light, an accident could result;

however, how many could foresee that as a result of that negligence, a motorist legally entering the inter-section

would suddenly stop, causing the following vehicle to swerve onto the sidewalk, hitting a telephone

pole, which landed on the plaintiff? See *Hoover v. Sackett,* 292 A.2d 461 (Pa.Super. 1972). Further confu-sion

invariably results if the same standard of foreseeability is used with respect to the personal injuries

sustained. "Natural and probable consequence" is merely another synonym for "foreseeability" and invites

the jury to the same speculation. The confusion is compounded by the consideration whether the jury

should look backward from the results, or forward from the initiating conduct. It is for these reasons that

the Restatement specifically rejects the concept of "foreseeability" as having relevance to the issue of legal

cause. Restatement (Second) of Torts § 435 (1965). In *Brown v. Tinneny,* 421 A.2d 839 (Pa.Super. 1980), it

was held that the trial judge had committed reversible error by reading Restatement (Second) of Torts

§ 435(2) almost verbatim to the jury as an instruction. Judge Spaeth, speaking for a three-member panel of

the Superior Court, stated that the section cited described the function of the judge, not the jury. The sec-tion

states that the defendant's conduct may be held not to be a legal cause of harm to another where after

the event and looking back from the harm to the actor's negligent conduct, it appears "to the court" highly

extraordinary that it should have brought about the harm. The appellate court analyzed the facts and

found that relief under section 435(2) was not available to the defendants in this case and, further, that

any decision regarding its applicability was a decision of the court.

Although the substantial factor test has been adopted exclusively by the Restatement and cited with

approval by Pennsylvania courts, Restatement (Second) of Torts § 431(a) (1965); *Whitner v. Lojeski,* 263

A.2d 889 (Pa. 1970), it has led to some confusion among jurors. Consequently, the subcommittee recom-mends

that the emphasis be on cause and that the definition of factual cause be so stated as to emphasize that it need not be so considerable or large as to be confused with the plaintiff's burden of proof, which is
considerably higher.
**3**

## JURY INSTRUCTION # 30

There may be more than one factual cause of the harm suffered by the plaintiff. When negligent conduct of two or more persons contributes concurrently to an occurrence or incident, each of these persons is fully responsible for the harm suffered by the plaintiff regardless of the relative extent to which each contributed to the harm. A cause is concurrent if it was operative at the moment of the incident, and acted with another cause as a factual cause in bringing about the harm.

**SUBCOMMITTEE NOTE**
This charge should be given whenever the joint negligence of more than one person is involved. A
defendant is not relieved from liability because another concurring cause is also responsible for producing
injury. If a jury could reasonably believe that a defendant's actions were a factual cause in bringing about
harm, then the fact that there is a concurrent cause does not relieve the defendant of liability. The question
of concurrent causes is one for the jury. *Powell v. Drumheller,* 653 A.2d 619 (Pa. 1995).
This charge incorporates both the Restatement and Pennsylvania law, requiring that the cause be "operative at the moment of the incident," but does not draw any distinction between "active" and "passive"
negligence on the part of one actor, as such a distinction is no longer valid. See *Flickinger Estate v. Ritsky,*
305 A.2d 40 (Pa. 1973), discussed in the note to Instruction 3.28. See also *Ford v. Jeffries,* 379 A.2d 111,
114–15 (Pa. 1977) (as long as the defendant's conduct has created or increased the risk that a particular
type of harm may be suffered by one in the same general class as the plaintiff, the manner in which that
harm occurs is immaterial, even if by intentionally tortious or criminal intervention where such is within
the scope of the risk).
The charge is also applicable on the issue of liability in comparative negligence situations, since the
comparative negligence statute deals solely with the allocation of damages once the plaintiff is determined

to be 50 percent or less comparatively negligent.

Note: This charge deals specifically with the conduct of "two or more persons." For situations in which the

conduct of more than one actor combines with one or more circumstances or force, such as an act of God,

see Instruction 3.27.

## JURY INSTRUCTION # 31

You will now retire to consider all of the evidence received in this trial in the light of the various factors I have presented to you and apply the law as I have given it to the facts as found by you. If you find that a defendant was negligent, and that the defendant's conduct was a factual cause of the harm to the plaintiff, your verdict must be in favor of the plaintiff and against the defendant.

However, if you find that the plaintiff was contributorily negligent, and that his negligence was a factual cause of his own injury, and that his negligence was greater than that of the combined negligence of the defendants, your verdict must be for the defendants. If you find that the defendants were not negligent, or that defendant's negligence was not a substantial factor in bringing about harm to the plaintiff, your verdict must be for the defendant.

If your verdict is in favor of the plaintiff, you must then determine what damage the plaintiff was and will be caused to suffer by reason of the defendant's negligence and return a verdict for the plaintiff in that amount.

**SUBCOMMITTEE NOTE**
This wrapup instruction, designed to be given at the end of the court's charge, specifically tells the jury
how their verdict shall be phrased after they have made their factual determination. Its concise specific
nature should eliminate any possibility of confusion or uncertainty as to the results of their findings.
The bracketed portion of the above instruction has been revised to accommodate the Comparative Neg-ligence
Act of 1976, Act of July 9, 1976, No. 152, 42 Pa.C.S.A. § 7102.

## JURY INSTRUCTION # 32

An employer may be liable for the negligent acts or omissions of his or her employee that were committed while the employee was engaged in furthering the interests, activities, affairs, or business of his employer.  In this case the defendants are sued as agent (Inchcape) for the vessel; Joseph levy and his employer SLS, Inc.(Holt) and Plaintiff's employer Trans Ocean at the time of the occurrence, which is denied by defendants.

It is for you to determine from the evidence in this case the nature of the relationship then and there existing between the four defendants. If you find from this evidence that defendant Joseph Levy was the employee of defendant SLS, Inc. (Holt) and was acting in furtherance of his employer's interests, activities,

affairs, or business, both defendants would be liable for any negligence of the Defendant Joseph Levy. If you find from the evidence that Defendant Joseph Levy was not the employee of Defendant SLS, Inc. (Holt) or was not acting in furtherance of his business at the time of the occurrence, then you could not find defendant SLS, Inc. (Holt) liable.

**SUBCOMMITTEE NOTE**
The trial judge should instruct the jury as to the criteria for determining the nature of the relationship.
Instruction 4.00A will serve in this respect. If scope of employment is an issue, the appropriate portion of
Instruction 4.05 may be used.

## JURY INSTRUCTION # 33

In this case it is admitted that the defendant Joseph Levy  was at the time of the occurrence acting as the employee of another defendant and was engaged in furthering the interests, activities, affairs, or business of that Defendant, then employer is liable for the negligence of his employee  occurring while the latter was acting in the course and within the scope of  his employment.

Therefore, if you find the defendant Joseph Levy to be liable, then you must find the defendant SLS, Inc. (Holt) also liable. If, however, you find the defendant Joseph Levy not liable, then you must find the other defendant not liable also.


**SUBCOMMITTEE NOTE**
Clearly there can be no liability on the principal if the agent is exonerated, and any instruction permit-ting
such result is basic fundamental and prejudicial error requiring reversal. *Matkevich v. Robertson,* 169
A.2d 91 (Pa. 1961); *McAleer v. Mascaro,* 170 A.2d 583 (Pa. 1961).

## JURY INSTRUCTION # 34

Defendant contends that Joseph Levy  was the employee of Defendant Trans Ocean.

Under certain circumstances, an employee of one employer who is loaned

to another can be considered the employee of the one to whom he or she is loaned. If you find

that Trans Ocean. had the right to control not only the work to be done by Joseph Levy, but also

the manner of performing the work, then Joseph Levy can be considered the employee of *Trans*

*Ocean.*

It is the right to control the manner of performing the work that is conclusive, even if the

right is not exercised. However, giving of directions or instructions from time to time as to the

work to be done [and the place where it is to be performed] does not render the person the

employee of the employer to whom he or she is loaned, unless the borrowing employer con-trols,

or has the right to control, the manner of performance of the work itself.

[Where an employee is loaned to another employer, the employee may be considered the

employee of both employers if:

(1) the employee is hired to carry on work that is of mutual interest to both employ-ers;

and to effect their common purpose, so that the employee's service to one

does not involve abandonment of service to the other; and

(2) where both employers maintain the right to control the manner in which the

employee performs the work.

If, however, you find that Joseph Levy was under the sole control of one defendant

and was serving the interests and purposes of that defendant only, only that defendant alone

can be the employer of Defendant Joseph Levy.

[Where one is engaged in the business of renting out trucks, automobiles, cranes, or any

other machine, and furnishes a driver or operator as part of the hiring, there is a factual

presumption that the operator remains the employee of his or her original employer, and unless

that presumption is overcome by evidence that the borrowing employer in fact assumes control

of the employee's manner of performing the work, the employee remains in the service of

the original employer.]

**SUBCOMMITTEE NOTE**
The above instruction is based on the principle of "loaned" or borrowed employees, which is explained
in detail in the Pennsylvania Supreme Court decision of *Mature v. Angelo,* 97 A.2d 59 (Pa. 1953). See also
*Collins v. Hand,* 246 A.2d 398 (Pa. 1968), as well as the Restatement of Agency, section 226, which was
cited with approval in the case of *Tonsic v. Wagner,* 329 A.2d 497 (Pa. 1974).
Where the facts are not in dispute, and the evidence leaves no sufficient ground for inconsistent infer-ences,
the question as to who is the servant's employer is a matter for the determination of the court. *Mature,* above. However, where the evidence presents an issue of fact, or different inferences can reason-ably
be drawn therefrom, the question is one for determination by the jury.
The borrowed servant issue often arises in construction cases involving the use of machinery. The lat-ter
part of the instruction is designed for use in those cases, since there is a factual (but rebuttable) pre-sumption
that the employee remains in the employment of the original employer. *O'Connell v. Roefaro,* 137
A.2d 325 (Pa. 1958).
The borrowed servant issue also arises in the medical malpractice context, as in *Collins,* for example,
where it is alleged that medical staff of a hospital were borrowed employees of the operating surgeon.
The court in *Collins* stressed that an employee furnished to another becomes the employee of the one to
whom he or she is loaned where the latter has the right to control not only the work to be done, but also the
manner of performing it. See also *Mullins v. Sun Co.* 763 A.2d 398 (Pa.Super. 2000) (petition for

reargu-ment

filed November 21, 2000). It is the right of control, not actual control, that determines whether an employee is a borrowed servant. *Mullins,* above. The giving of directions from time to time for the work

that the borrowing employer wishes to be done is not sufficient to impose vicarious liability. *Mature,* above;

*Collins,* above; *O'Connell,* above.

The Supreme Court in *Mature,* above, outlined facts that indicate that the employee remains the employee of his or her original master, which include that the original employer has the right to select the

employee to be loaned and to discharge the employee at any time and send another in his or her place, that

the loaned employee has the skill of a technician or specialist that the performance of the work requires,

that the hiring is at a rate by the day or hour, and that the employment is for no definite period. The mere

fact that the employee is skilled does not, in and of itself, establish that the original employer has retained

the right to control the manner of performance of the work assigned. *JFC Temps, Inc. v. Workers' Compen-sation*

*Appeal Board (Lindsay)*, 680 A.2d 862 (Pa. 1996). In *JFC Temps, Inc.,* above, the Supreme Court

found the employee was the responsibility of the borrowing employer for workers' compensation purposes,

despite the fact that the original employer hired the employee and had the sole right to terminate his

employment, since the borrowing employer directed the employee as to the specifics of the deliveries to be

made, directed miscellaneous odd jobs, completed time slips and evaluated the employee's performance,

and the employee reported to the borrowing employer daily and returned there at the end of the work day.

The fact that one incurs expenses normally associated with an employment relationship, such as wages,

unemployment compensation tax, workers' compensation insurance, and federal, state, and local taxes,

does not necessarily mean that one is an "employer." *English v. Lehigh County Auth.,* 428 A.2d 1343

(Pa.Super. 1981); *Wilkinson v. K-Mart,* 603 A.2d 659 (Pa.Super. 1992). The jury should be appropriately

charged under the specific factual circumstances as to the factors to be considered, although the true focus

must be on the right of control over the manner of performance of the work. *Wilkinson,* above.

The characterization of the employer, or the employee, as to who is considered his or her "employer" is
not dispositive. *English v. Lehigh County Auth.,* 428 A.2d 1343 (Pa.Super. 1981). However, "a workman can-not
be loaned to become the employee of another without the workman's consent." *Quick v. Allegheny Con-str.*
*Equip. Co.,* 65 A.2d 238 (Pa. 1949). The "consent" required, however, only that the employee submit to
the control and supervision of the borrowing employer; it is not required that the employee refer to the bor-rowing
employer as "my employer." Where the employee is unaware that his or her services are being per-formed
for another's benefit, however, he or she will not be deemed a borrowed employee, such as in the
*Quick* case, above, wherein the plaintiff was unaware that his original master had sold the equipment he
was using to another employer and was unaware he was unloading the equipment at the request of another.
It should also be noted that under some circumstances, both the lending employer and the borrowing
employer may have control over the servant so as to render each of them liable for the employee's conduct,
since the employee may have been transferred to carry on work that is of mutual interest to them and to

**2**

### 4.15

3 of 3

effect their common purpose, so that service to one does not involve abandonment of service to the other.
*Siidekum v. Animal Rescue League,* 45 A.2d 59 (Pa. 1946). The Supreme Court has cited, with apparent
approval, the Restatement (Second) of Agency, section 226, which provides, "A person may be the servant
of two masters, not joint employers, at one time as to one act, provided the service to one does not involve
abandonment of the service to the other." *Tonsic v. Wagner,* 329 A.2d 497 (Pa. 1974). The Supreme Court in
*Tonsic* specifically cited the comment to section 226, which provides:
. . . [A] single act may be done to effect the purposes of two independent employers. Since, how-ever,
the relation of master and servant is dependent upon the right of the master to control
the conduct of the servant in the performance of the service, giving service to two masters at
the same time normally involves a breach of duty by the servant to one or both of them. A per-son,

however, may cause both employers to be responsible for an act which is a breach of duty to one or both of them. He may be the servant of two masters, not joint employers as to the same act, if the act is within the scope of his employment for both . . .; he cannot be a servant of two masters in doing an act as to which an intent to serve one necessarily excludes an intent to serve the other.

The borrowed servant doctrine often arises in cases where a party is seeking workers' compensation

immunity. It should be noted that there are two distinct principles that may confer workers' compensation

immunity on an employer: (1) statutory employer status under section 52 of the Workers' Compensation

Act, 77 P.S. § 52; and/or (2) borrowed employee status. These two principles were discussed in the decision

of *Mathis v. United Engineers & Constructors, Inc.,* 554 A.2d 96 (Pa.Super. 1989).

The statutory employer doctrine under section 52 of the Workers' Compensation Act has five distinct

requirements, as set forth in the Supreme Court decision of *McDonald v. Levinson Steel Co.,* 153 A. 424

(Pa. 1930): (1) an employer who is under contract with an owner or one in the position of an owner,

(2) premises occupied by or under the control of such employer, (3) a subcontract made by such employer,

(4) part of the employer's regular business entrusted to such employer, and (5) an employee of such subcon-tractor.

Even if the statutory employer test cannot be met, a defendant can be immune under the borrowed

employee doctrine, which focuses on the right of control over the employee. *Mathis,* above. Although courts

sometimes use the term "statutory employer" in describing this doctrine, it should be noted that the test for

borrowed employees is distinct from the statutory employer standard under section 52. See *English v.*

*Lehigh County Auth.,* 428 A.2d 1343 (Pa.Super. 1981). For example, in *Wilkinson v. K-mart,* 603 A.2d 659

(Pa.Super. 1992), the Superior Court upheld summary judgment for a defendant on the basis that the

plaintiff was a borrowed employee of the defendant, and therefore the defendant was immune from suit as

an "employee" under the Workers' Compensation Act.

If there is no genuine issue of material fact as to the relationship, summary judgment may be appropri-ate.

For example, in *Mullins v. Sun Co.,* 763 A.2d 398 (Pa.Super. 2000), the Superior Court affirmed sum-mary

judgment in favor of a defendant subcontractor based on workers' compensation immunity, finding
that the plaintiff was the statutory employee of the defendant since the defendant had the right to control
the performance of the plaintiff's work under the contractual agreement, even if that right was not exer-cised.
However, if there are factual issues, the jury should be instructed and a special interrogatory given
in order to determine whether the person was the employee of the borrowing employer, without being
advised of the issue of workers' compensation immunity.

**3**

## JURY INSTRUCTION # 35

The plaintiff is entitled to recover damages for all injuries that the defendant's negligence was a factual cause in producing. The defendant's negligence need not be the sole cause of the injuries; other causes may have contributed to producing the final result. The fact that some other factor may have been a contributing cause of an injury does not relieve a defendant of liability, unless you find that such other cause would have produced the injury complained of independently of his negligence. Even though prior conditions or concurrent causes may have contributed to an injury, if the defendant's negligence was a factual cause in producing the injury, the defendant is liable for the full amount of damages sustained, without any apportionment or diminution for the other conditions or causes.

**SUBCOMMITTEE NOTE**
Earlier charges deal with concurrent negligence principles where more than one actor's conduct brings
about the harm suffered by the plaintiff. The division of liability responsibility has been covered heretofore.
It has been the consensus of the subcommittee, after a thorough review of the Pennsylvania Supreme
Court decisions, that issues of proximate cause, now termed factual cause, are best left to the jury. Accord-ingly,
the subcommittee has felt, in order to facilitate lay understanding of what at first blush appear to be
complex legal concepts, that proximate cause be reduced to its purest form in understandable language.
Since the concept of intervening or superseding cause is in reality nothing more than dressed-up lawyers'
talk, which means little when read to the average juror, we have abandoned such terminology and labeled
the concept just what it is—factual cause. See Instruction 3.28.
The doctrine of causation has been used by courts in a dual capacity—as to fact determinations of lia-bility
for injury and liability for an accident. Since liability for the accident is a prerequisite to liability for

the harm and the dual capacity promotes jury confusion, reference to "the accident" is omitted. See the sub-committee

note to Instruction 3.25. In many factual situations, it is not uncommon for a plaintiff to have had some complaints about physical distress in the past. With the emphasis on medical care, stresses of

modern living, both physical and mental, and coupled to a machine age, there are few who escape through

life without complaints being registered in a record of some form or another. This brings into focus the rel-evancy

of prior complaints of the same area of the body for which a plaintiff now seeks to hold the defen-dant

liable in damages. The trial court is first faced with the problem of admission of evidence of the prior

complaints by way of cross-examination of the plaintiff or through the introduction of record evidence. Sec-ondly,

the trial judge must then determine how such evidence, if admissible, is to be considered by the jury.

It is axiomatic that a tortfeasor is liable for all direct and proximate consequences of his or her unlawful

act. *Offensend v. Atlantic Ref. Co.,* 185 A. 745, 746–47 (Pa. 1936); Restatement of Torts § 461 (1934).

The rule that where tortfeasors are guilty of concurrent negligence, each is responsible for the full amount of the resulting damage, is equally applicable where one of the operative agencies, instead of being

a tortfeasor, is a force of nature. Restatement of Torts § 431 (1934). Although rulings on the admissibility of

evidence are left largely to the discretion of the trial judge, a preliminary determination must first be made

to ascertain if such evidence of prior complaints is to be connected by the defendant to the complaints

alleged to have originated from the defendant's conduct; otherwise such evidence would be irrelevant and

prejudicial. *Papa v. Pittsburgh Penn Ctr. Corp.,* 218 A.2d 783 (Pa. 1966). The mere assertion by a tortfeasor

that a plaintiff had prior complaints of a backache, for example, is not probative evidence necessarily.

Where, for example, a plaintiff alleges a herniated disc and there is evidence of prior back complaints, such

prior complaints should be excluded from evidence unless the defendant's evidence furnishes the jury with

an adequate basis for finding that independent of the defendant's negligence, the plaintiff's condition

would be the same today. Short of such showing by the defendant, such evidence would be

inadmissible.

## 6.30

The Supreme Court's standards in such situations clearly announce that the defendant is liable for the

plaintiff's entire present condition, even though a prior condition may have been a contributing cause to

the plaintiff's present complaints. *Majors v. Brodhead Hotel,* 205 A.2d 873 (Pa. 1965), and *DeMaine v.*

*Brillhart,* 303 A.2d 506 (Pa.Super. 1973).

That the tortfeasor is liable when there are non-accident concurrent causes is so even when there are

two or more substantial causes that combine to cause an event; if the defendant's negligence was one of

them, a plaintiff may recover although no one cause standing alone would have caused the injury or condi-tion

complained of. *Boushell v. J.H. Beers, Inc.,* 258 A.2d 682 (Pa.Super. 1969). Consequently, it would

appear that where prior complaints are shown, this fact standing alone does not relieve the defendant from

liability unless the defendant *shows* that such other cause would have produced the injury complained of

independently of his or her negligence. As stated by the Superior Court in *Boushell,* above, "[t]here may be

two or more substantial causes which combine to cause an event and, if the defendant's negligence was one

of those, the plaintiff may recover although no one cause standing alone would have caused the injury. To

escape liability, the defendant must show not only that the other causes contributed but, in addition, that

they would have brought about the injury without his wrongful act."

In *Collins v. Cement Express, Inc.,* 447 A.2d 987 (Pa.Super. 1982), the trial court failed to charge the

Standard Jury Instruction on concurrent cause. This was held reversible error. The case involved a preex-isting

condition including organic and mental problems that, according to the plaintiff, rendered him extremely susceptible to severe injuries from any future trauma.

The question in the case was whether that negligent conduct caused the injuries which appel-lant asserted. In such a situation, a specific charge as to concurring causes was necessary. See *Gradel v. Inouye,* 491 Pa. 534, 421 A.2d 674 (1980); *Hamil v. Bashline,* 481 Pa. 256, 392 A.2d 1280 (1978). See also Pennsylvania Supreme Court Committee for Proposed Standard Jury Instruction, Pa. SSJI (Civ) 6.30.

447 A.2d 987, 991.

While generally the plaintiff bears the burden of proof with respect to causation, an exception occurs
where two defendants have committed tortious conduct, but the harm suffered by the plaintiff was caused
by only one of them, and there is uncertainty as to which is responsible. Under these circumstances, the
burden of proof is shifted to the defendants to prove that their specific conduct did not cause the harm. *Sno-parsky*
*v. Baer,* 266 A.2d 707 (Pa. 1970), citing *Summers v. Tice,* 199 P.2d 1 (Cal. 1948), and adopting
Restatement (Second) of Torts § 433B.
**2**

## JURY INSTRUCTION # 36

If you find that any defendant's conduct was a factual cause of the harm the plaintiff is

alleged to have suffered and if you find that the conduct of any defendant was outrageous,

you may award punitive damages, as well as any compensatory damages, in order to punish

any defendant for his conduct and to deter the defendant and others from committing similar acts.

A person's conduct is outrageous when he acts with a bad motive or acts with reckless

indifference to the interests of others.

**SUBCOMMITTEE NOTE**
The instruction is based on Restatement of Torts § 908(1), which has been adopted as the Pennsylvania
rule for awarding punitive damages. *Chambers v. Montgomery,* 192 A.2d 355 (Pa. 1963). The Supreme
Court in *Chambers,* above, also cited with approval comment b to section 908: "Punitive damages are
awarded only for outrageous conduct, that is, for acts done with a bad motive or with reckless indifference
to the interests of others. . . ." Prior to the acceptance of this concise statement of the law, it had been held
that "[t]he award of additional exemplary damages must be based on 'malicious', 'wanton', 'reckless', 'will-ful',
or 'oppressive', conduct on the part of the defendant." *Hughes v. Babcock,* 37 A.2d 551, 554 (Pa. 1954).
The confusion wrought by such a string of adjectival qualifications on the defendant's conduct has been
eliminated by adoption of the Restatement's language.
Some members of the subcommittee expressed concern, however, with the definition of "reckless indif-ference
to the interests of others" in the punitive damage instruction, which duplicated that for "reckless
conduct" as found in Instruction 3.17. The members felt that the subcommittee should acknowledge that
punitive damages may not be awarded in every case in which Instruction 3.17 would apply. Even though
the Pennsylvania courts approved the Restatements' exact language and an award of punitive damages as
well as the amount is always within the jury's discretion, *People's Natural Gas Co. v. Millbury,*

2 Mona. 145
(1889); Restatement of Torts § 908, comment d (1977), the concern is real. Under a charge that gives pre-cisely
the same definition to both reckless conduct and to the type of conduct that would permit a punitive
damage award, the jury may feel they are compelled to award punitive damages when they find the defen-dant's
conduct is reckless or to not find the defendant's conduct reckless lest they must then award puni-tive
damages.
Consequently, the term "reckless indifference to the interests of others" is made a subordinate element
of the term "outrageous conduct" in the instruction to impart the idea that something more than reckless
conduct as defined in Instruction 3.17 is necessary in order to justify a punitive damage award. The result
is sufficient, although it is to be noted that the Superior Court in *Focht v. Rabada,* 268 A.2d 157 (Pa.Super.
1970), looked to the Restatement (Second) of Torts section 500 (1965), upon which Instruction 3.17 is
based, in order to determine whether the defendant's act came within the meaning of "reckless" as it
appears in comment b to Restatement of Torts section 908. The trial court did not err when it instructed
the jury on punitive damages in language almost verbatim from Instructions 14.00 and 14.02. *Rhoads v.
Heberling,* 451 A.2d 1378 (Pa.Super. 1982).

**JURY INSTRUCTION # 37**

You may also award punitive damages against Trans Ocean if you find that the

actions of Trans Ocean:

(1) were clearly outrageous;

(2) occurred during and within the scope of *[name of agent's]* duties; and

(3) were not committed to satisfy *[name of agent's]* personal ill will or malice, but

instead were committed with the intent to further *[name of principal's]* interests.


**SUBCOMMITTEE NOTE**
This instruction is taken from *Loughman v. Consol-Pennsylvania Coal Co.,* 6 F.3d 88, 101 (3d Cir.
1993), citing *Delahanty v. First Pennsylvania Bank, N.A.,* 464 A.2d 1243, 1264 (Pa.Super.
1983). It should
be preceded by Instruction 4.00A.
The Restatement (Second) of Torts section 909 provides for the imposition of punitive damages against
a principal for the outrageous acts of its agent if (1) the principal authorized the doing and the manner of
the act, or (2) the agent was unfit and the principal was reckless in employing him or her, or (3) the agent
was employed in a managerial capacity and was acting in the scope of his or her employment, or (4) the
principal or another agent of the principal employed in a managerial capacity ratified or approved the act,
or (5) the agent's act was foreseeable.
Pennsylvania, however, has declined to adopt this provision, which serves to limit a principal's liability
for punitive damages imposed for the torts of its agent. *Dean Witter Reynolds, Inc. v. Genteel,* 499 A.2d 637,
643 (Pa.Super. 1985), app. denied, 522 A.2d 1105 (Pa. 1987) and 523 A.2d 346 (Pa. 1987);
*Delahant*y, 464
A.2d at 1264; *Chuy v. Philadelphia Eagles Football Club,* 595 F.2d 1265, 1278 (3d Cir. 1979).
Pennsylvania has instead adopted a less restrictive standard. Id. Since 1886, the Pennsylvania
Supreme Court has provided that a principal may be held liable for punitive damages for the acts of its ser-vant,
as long as those acts were within the scope of his or her authority. See *Lake Shore & M.S.R. Co.*

*v.*

*Rosenzweig,* 6 A. 545, 553 (Pa. 1886); *Philadelphia Traction Co. v. Orbann,* 12 A. 816, 819 (Pa. 1888). Such

vicarious liability for punitive damages may be imposed, even in situations where a principal has neither

directed nor ratified the acts of its agent. *Shriner v. Moriarty,* 706 A.2d 1228, 1240 (Pa.Super. 1998), app.

denied, 729 A.2d 1130 (Pa. 1998); *Gerlach v. Pittsburgh Rys. Co.,* 94 Pa.Super. 121 (1928). While an early decision of the Pennsylvania Supreme Court urged that this rule must be applied with

great caution, *Funk v. H.S. Kerbaugh, Inc.,* 70 A. 953, 954 (Pa. 1908), this admonition has been interpreted

merely to mean that "the conduct of the agent who inflicts the injury complained of must be rather clearly

outrageous to justify the vicarious imposition of exemplary damages upon the principal." *Advanced Power*

*Sys., Inc. v. Hi-Tech Sys., Inc.,* No. 90-7952 (E.D. Pa. March 21, 1994), quoting *Bensalem v. Press,* 501 A.2d

331, 338 (Pa.Cmwlth. 1985); *Delahanty,* 464 A.2d at 1264; *Skeels v. Universal C.I.T. Credit Corp.,* 335 F.2d

846, 851–52 (3d Cir. 1964). "It is well settled that punitive damages will lie only in cases of outrageous

behavior, where defendant's egregious conduct shows either an evil motive or reckless indifference to the

rights of others. Punitive damages are appropriate when an individual's actions are of such an outrageous

nature as to demonstrate intentional, willful, wanton, or reckless conduct." *Slappo v. J's Dev. Assocs. Inc.*,

791 A.2d 409 (Pa.Super. 2002).

Both the Superior and Commonwealth Courts have held that punitive damages are not recoverable

against a municipality, and the Commonwealth Court has specifically held that a municipality may not be

held vicariously liable for punitive damages.

In *Feingold v. Southeastern Pennsylvania Transportation Authority,* 488 A.2d 284 (Pa.Super. 1985),

the court cited the Pennsylvania Supreme Court's 1847 decision in *Hermits of Augustine v. County of Phil-adelphia,*

7 Pa. L.J. 124 (1847), for the "general rule" that punitive damages are not recoverable against a

**14.01**

2 of 2

municipality, and noted that this rule has been followed by a majority of jurisdictions. The purposes to be

achieved by assessing punitive damages, the court noted, cannot be achieved where the party is a munici-pality
or agency thereof, because it is unlikely that municipal employees will be deterred by an award of
punitive damages against the municipality that employs them. The court added that the wealth of the
defendant is an inappropriate standard for computing punitive damages against a municipality that has
the power to tax, and the people who must bear the weight of such a punitive award are the same people
who are to benefit from making a public example of the wrongdoer. *Feingold,* 488 A.2d 292.
In *Bensalem v. Press,* 501 A.2d 331 (Pa.Cmwlth. 1985), the court followed *Feingold* in denying recovery
of punitive damages against a municipality directly, and further held that under the restrictive rule of
*Funk* (discussed above), "assessment of such damages against a municipality under a theory of vicarious
liability is prohibited." *Press,* 501 A.2d at 339.
**2**

## JURY INSTRUCTION # 38

(1) You now have all the rules of law to properly reach a verdict in this case. In a few minutes, you will begin your deliberations. Before you do so, I would like to give you a few final guidelines on conducting your deliberations and properly arriving at a verdict.

(2) My responsibility, as judge, is to decide all questions of law; therefore, you must accept and follow my rulings and these instructions as to matters of law. But I am not the judge of the facts. You, the jurors, are the only judges of the facts. So your responsibility is to consider the evidence and decide what are the true facts. By applying the rules of law as given to you, to the facts as you find them, you must determine whether the plaintiff has proven his claims.

(3) The decision in this case, as I am sure you understand, is a matter of considerable importance.  Your responsibility, as jurors, is to reach a verdict based on the evidence presented during the trial, and upon your evaluation of that evidence. You must consider all the testimony you have heard, and all the other evidence presented during this trial, in order to determine the facts.

(4) In deciding the facts, you may properly apply common sense and draw upon your own everyday practical knowledge of life. You should keep your deliberations free of any bias or prejudice. All parties have the right to expect you to consider the evidence conscientiously, and to apply the law as I have outlined it to you.

(5) Before you begin to deliberate, you should select one of your group to be the foreperson. The foreperson will announce the verdict in this courtroom after you have finished deliberating. If, during deliberations, you have a serious doubt about some portion of these instructions, write

-79-

your question in a note, signed by the foreperson. Give the note to the bailiff. The bailiff will give it to me for response. You should not, however, reveal to anyone how the jury stands numerically.

(6) The verdict should be rendered only after careful and thoughtful deliberations. In the course of your deliberations, you should consult with each other and discuss the evidence freely and fairly, in a sincere effort to arrive at a just verdict. It is your obligation to consider the evidence and the issues presented with a view toward reaching agreement, if you can do so without violating your own individual judgment. Each juror must decide this case for him- or herself, after examining the issues and the evidence with proper regard to the opinions of other jurors. Proper consideration of the issues before you means that you should be willing to reexamine your views and change your opinion, if convinced that it is erroneous; but you are not required to surrender an honest conviction as to the weight or effect of the evidence only because of another juror's opinion, or solely for the purpose of returning a verdict.

(7) Your verdict must represent the jury's considered, final judgment. While the view of every juror must be considered, your verdict need not be unanimous. A verdict rendered by five-sixths of the jury shall constitute the verdict of the entire jury. Five-sixths of twelve is ten. So when ten of you have agreed that you have reached a verdict, indeed, you have. You should tell the bailiff, and we will reconvene court to accept your verdict.

(8) Please keep in mind that this dispute between the parties is, for them, a most serious matter. They and the court rely upon you to give full and conscientious consideration to the issues and the evidence before you. Neither sympathy nor prejudice may influence your deliberations. You should not be influenced by anything other than the law and the

evidence in this case, together with your own judgment and evaluation of that evidence.

All parties stand equally before the court, and each is entitled to the same fair and

impartial treatment in your hands.

(9) In closing, I suggest that you will be able to deliberate more easily, and in a way that will

be better for all concerned, if each of you treats your fellow jurors and their views with

the same courtesy and respect as you want your views to be treated, and with the same

courtesy and respect as you would treat any other person in your everyday life.

You may begin your deliberations.


**SUBCOMMITTEE NOTE**
Creating the proper atmosphere and establishing an appropriate framework for the jury's deliberations
requires that the jurors be imbued with the importance and seriousness of their obligation. Each juror
must be impressed with his or her duty to do justice to the parties.
There is much that the jurors should know to preserve the integrity of trial by jury as guaran-teed
by the Constitution. To those acquainted with our judicial system, these principles and
the rules to promote it are well known. But jurors, their employment being temporary and
their prior acquaintance with the system being but casual, are often unacquainted with the
solemnity of their duties and have not a full comprehension of their scope. Wherever and
whenever possible, therefore, the judges of the lower courts should fully instruct them as to
the measure of their obligations and responsibilities . . . *Hostetler v. Kniseley,* 322 Pa. 248, 185
A. 300 (1936).
**2**

**20.00**
3 of 3
Recognizing that the jurors come from all walks of life and segments of the community, with widely
varied backgrounds and conditioning, they must be instructed in the orderly conduct of this experience in
the judicial process. Emphasizing their significant part in providing justice for their peers, and their
unique position in the judicial design, will aid in persuading the jurors to transcend any
superficial irrele-vant

considerations and to provide superior performance.

The Supreme Court has on numerous occasions stressed the considerations affecting the judge's charge

to the jury.

It is basic to a fair trial that the issues be clearly defined for a jury's intelligent understanding . . . A trial judge may properly define all pertinent questions of law, but if he fails to clarify the issues and the application of the law to the facts, a fair trial is not present. *Smith v. Clark,* 411 Pa. 142, 147, 190 A.2d 441 (1963).

The duty of a trial judge in charging a jury is two-fold: (1) he must make an accurate state-ment in plain language of the applicable principles of law, and (2) he must accurately, impar-tially, without prejudice to any litigant and without usurping the jury's function, assist the jury in applying these principles to the facts of the case before them. *Kimmel v. Yellow Cab Co.,* 414 Pa. 559, 563, 201 A.2d 417 (1964).

The obligation to commit to writing any communications between the deliberating jury and trial judge

has frequently been emphasized with the need to perfect a complete and accurate record. *Yarsunas v.*

*Boros,* 223 A.2d 696 (Pa. 1966). Informal private communications between the deliberating jury and the

trial judge, not in writing and not a verbatim part of the record, were condemned as an improper practice

that the court in *Kersey Manufacturing Co. v. Rozic,* 222 A.2d 713, 714–15 (Pa. 1966), commanded "must be

terminated."

The invitation to return for further instructions, if the jury deems them necessary, is included because

of the frequency of Supreme Court suggestions approving such procedure. See, e.g., *Reed v. Kinnik,* 132

A.2d 208, 211 (Pa. 1957).

The injunction to avoid any informal communications with the court is emphasized in view of the

severe condemnation by the Supreme Court of such infractions, and the danger of impairing confidence in

the court if such practice is tolerated. In *Glendenning v. Sprowls,* 174 A.2d 865, 866–67 (Pa. 1961), the

court stated:

It has been wisely stated that "Next to the tribunal being in fact impartial is the importance of its appearing so": *Shrager v. Basil Dighton, Ltd.* (1924), 1 K.B. 274, 284. This applies in a special way to the Judge and his relationship with the jury.

. . . [P]rivate communication by a Judge to or with the jury . . . is almost certain to create suspi-cions

and a belief of unfairness in the minds of many people. . . . Instructions to the jury must be given in open court in the presence of the parties or their counsel. There may be no private

communication of any kind or character between the judge and the jury, and if additional instructions are needed, they must be given in open court.

The passage of Act No. 107 (effective November 6, 1975) by the Pennsylvania legislature provides that

"in any civil case a verdict rendered by at least five-sixths of the jury shall be the verdict of the jury and

shall have the same effect as a unanimous verdict of the jury." 42 Pa.C.S. § 5104(b). Where the traditional

12-member jury is used, agreement by 10 of the 12 will constitute the jury's verdict. Where less than 12

jurors make up the jury, arithmetical application of this statute will result in a verdict by five-sixths of the

lesser number and the appropriate number should be inserted in the instruction.

**3**

Respectfully Submitted,

October 3, 2003                                          **By:**_____
Date                                                    Law Offices of Thomas More Holland
                                                        Thomas More Holland

*PROOF OF SERVICE*

       I, Thomas More Holland, Esquire, hereby certify that a true and correct copy of the foregoing *Points for Charge to the following parties, by hand delivery*:

The Honorable Berle M. Schiller
United States District Court for the
Eastern District of Pennsylvania
601 Market Street, Room 5918
Philadelphia, Pennsylvania 19106

United States District Court for the
Eastern District of Pennsylvania
Clerks Office
601 Market Street, 2nd Floor
Philadelphia, Pennsylvania 19106

       The following people received the document by regular mail:

Ann-Michele G. Higgins, Esquire
Rawle & Henderson LLP
The Widener Building
One South Penn Square
Philadelphia, PA 19107

A. Robert Degen, Esquire
Fox Rothschild O'Brien & Frankel
2000 Market Street - 10th floor
Philadelphia, PA 19103

Faustino Mattioni, Esquire
Mattioni, Ltd.
399 Market Street
2d Floor
Philadelphia, PA 19106

Mr. Joseph  Levy
615 Newton Avenue
Oaklyn, NJ 08107

Maureen Levy
118 Woodland Terrace
Oakland, NJ 09107


__October 3, 2003__
Date

_____
THOMAS MORE HOLLAND
Attorney for Plaintiff